**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANGIE BOUDREAUX and BARBARA WILLIAMS**, individually, and on behalf of all others similarly situated, | Lead Case No.: 5:23-cv-01498-DNH-ML |
|                   Plaintiffs, | |
|     vs. | **CONSOLIDATED CLASS ACTION** |
| **SYSTEMS EAST, INC.**, a New York Domestic Business Corporation | |
|                Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND ...................................................................................................2

    A. Procedural History ........................................................................................ 2

    B. The Settlement ..............................................................................................3

III. ARGUMENT ........................................................................................................4

    A. Legal Standards and *Grinnell* Factors...................................................... 4

    B. The Settlement Terms Are Substantively Fair, Adequate, and Reasonable............6

        1. Complexity, Expense, and Likely Duration of the Litigation
           (*Grinnell* Factor 1) ............................................................................6

        2. The Reaction of the Class (*Grinnell* Factor 2)...................................7

        3. The Stage of the Proceedings and the Amount of Discovery Completed
           (*Grinnell* Factor 3) ............................................................................7

        4. Plaintiffs Would Face Real Risks if the Case Proceeded
           (*Grinnell* Factors 4 and 5)................................................................8

        5. The Risks of Maintaining a Class Through Trial
           (*Grinnell* Factor 6) ............................................................................9

        6. Defendant's Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) .....10

        7. The Reasonableness of the Settlement in Light of the Possible Recovery and
           Attendant Litigation Risks (*Grinnell* Factors 8 and 9) ...................10

    C. The Remainder of the Rule 23(e)(2) Factors Support Preliminary Approval........12

        1. The Allocation Plan is Fair and Adequate ......................................12

        2. The Proposed Form and Method of Providing Notice to the Proposed Class
           Are Appropriate ...............................................................................12

        3. Attorneys' Fees, Expenses, and Service Awards.............................13

        4. The Parties Have No Additional Agreements...................................14

        5. Proposed Settlement Class Members are Treated Equitably ...........14

IV. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.................14

    A. The Settlement Class meets the Requirements of Rule 23(a)................15

        1. The Settlement Class is Sufficiently Numerous .............................15

        2. The Commonality Requirement is Met.............................................16

        3. The Typicality Requirement is Met .................................................17

        4. The Adequacy Requirement is Met and Plaintiffs Should be Provisionally
           Appointed as Settlement Class Representatives .............................18

5. Proposed Class Counsel Should be Provisionally Appointed as Class Counsel ................................................................................. 19

B. The Settlement Class Meets the Requirements of Rule 23(b)(3) ......................... 19

1. Common Questions Predominate Over Any Individual Questions ................ 20

2. A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy ........................................ 20

V. THE PROPOSED NOTICE IS THE BEST PRACTICABLE. ......................................... 21

VI. SCHEDULING AND FINAL FAIRNESS HEARING ................................................. 23

VII. CONCLUSION ...................................................................................................... 24

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **Page(s)**

*Almonte v. Marina Ice Cream Corp.,*
   No. 1:16-CV-00660 (GBD), 2016 WL 7217258 (S.D.N.Y. Dec. 8, 2016) ..............................5

*Amchem Prod., Inc. v. Windsor,*
   521 U.S. 591 (1997)........................................................................................................19, 20

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
   222 F.3d 52 (2d Cir. 2000)........................................................................................................19

*Carter v. Vivendi Ticketing US LLC,*
   No. SACV 22-01981-CJC (DFMx), 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) ...............6

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC,*
   504 F.3d 229 (2d Cir. 2007)......................................................................................................14

*Charron v. Pinnacle Grp. N.Y. LLC,*
   874 F.Supp.2d 179 (S.D.N.Y. 2012)......................................................................................9, 10

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974)................................................................................................ *passim*

*Cnty. of Suffolk v. Long Island Lighting Co.,*
   710 F.Supp. 1422 (E.D.N.Y. 1989) *aff'd,* 907 F.2d 1295 (2d Cir. 1990) ...............................15

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995)........................................................................................................16

*Dial Corp. v. News Corp.,*
   317 F.R.D. 426 (S.D.N.Y. 2016) ..............................................................................................12

*Ebin v. Kangadis Food Inc.,*
   297 F.R.D. 561 (S.D.N.Y. 2014) ..............................................................................................17

*Feder v. Elec. Data Sys. Corp.,*
   429 F.3d 125 (5th Cir. 2005) ....................................................................................................19

*Flynn v. New York Dolls Gentlemen's Club,*
   No. 13 Civ. 6530(PKC)(RLE), 2014 WL 4980380 (S.D.N.Y. Oct. 6, 2014).............................4

*Frank v. Eastman Kodak Co.,*
   228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................................17, 20

*Gaston v. FabFitFun, Inc.,*
   No. 2:20-cv-0953-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ..................................6

*Gilliam v. Addicts Rehab. Ctr. Fund,*
   No. 05 Civ. 3452(RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .....................................11

*Goldberger v. Integrated Res., Inc.,*
   209 F.3d 43 (2d Cir. 2000)..........................................................................................................5

*Green v. Wolf Corp.,*
   406 F.2d 291 (2d Cir. 1968)......................................................................................................21

*Hadel v. Gaucho, LLC,*
 No. 15 Civ. 3706 (RLE), 2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ...................................4

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ...................................................................................................21

*Hill v. County of Montgomery,*
 No. 9:14-cv-00933 (BKS/DJS), 2021 WL 2227796 (N.D.N.Y. June 2, 2021). .................4, 14

*In re AOL Time Warner, Inc.,*
 No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................8

*In re Austrian & German Bank Holocaust Litig.,*
 80 F.Supp.2d 164 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank,*
 236 F.3d 78 (2d Cir. 2001)...........................................................................................6, 8, 9,10

*In re Blackbaud, Inc., Customer Data Breach Litig.,*
 No. MDL 2972 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024).................6

*In re Patriot Nat'l, Inc. Sec. Litig.,*
 828 F.App'x 760 (2d Cir. 2020) ...............................................................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
 330 F.R.D. 11 (E.D.N.Y. 2019)...........................................................................................10, 12

*In re Initial Pub. Offering Sec. Litig.,*
 260 F.R.D. 81 (S.D.N.Y. 2009)..................................................................................................21

*Joel A. v. Giuliani,*
 218 F.3d 132 (2d Cir. 2000).................................................................................................5, 11

*Kommer v. Ford Motor Co.,*
 No. 1:17-cv-0296 (LEK/DJS), 2020 WL 7356715 (N.D.N.Y. Dec. 15, 2020) ......................14

*Marisol A. v. Giuliani,*
 126 F.3d 372 (2d Cir. 1997) ......................................................................................................17

*McBean v. City of New York,*
 228 F.R.D. 487 (S.D.N.Y. 2005) ...............................................................................................20

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
 339 U.S. 306 (1950).....................................................................................................................22

*Mullen v. Treasure Chest Casino, LLC,*
 186 F.3d 620 (5th Cir. 1999) .....................................................................................................17

*Paz v. AG Adriano Goldschmeid, Inc.,*
 No. 14CV1372 DMS (DHB), 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016).............................7

*Rossini v. Ogilvy & Mather, Inc.,*
 798 F.2d 590 (2d Cir. 1986).......................................................................................................20

*TBK Partners, Ltd. v. Western Union Corp.,*
 517 F.Supp. 380 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982) ....................................6

*Torres v. Gristede's Operating Corp.,*
 No. 04-CV-3316 PAC, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010), *aff'd,*
 519 F. App'x 1 (2d Cir. 2013) .....................................................................................................8

*Trinidad v. Breakaway Courier Sys., Inc.,*
   No. 05 Civ. 4116 RWS, 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) .....................................17

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011)..........................................................................................................16, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005)..........................................................................................5, 10, 13

## **STATUTES & RULE**          **Page(s)**

Fed. R. Civ. P. 23 .................................................................................................................16

Fed. R. Civ. P. 23(a) ...................................................................................................15, 17, 20
Fed. R. Civ. P. 23(a)(1)-(4) ............................................................................................. *passim*

Fed. R. Civ. P. 23(b)(3)............................................................................................15, 19, 20, 21
Fed. R. Civ. P. 23(b)(3)(A)-(D) ..............................................................................................21

Fed. R. Civ. P. 23(c)(2)...................................................................................................13, 21

Fed. R. Civ. P. 23(e) ......................................................................................................12, 22
Fed. R. Civ. P. 23(e)(1) ...................................................................................................13, 22
Fed. R. Civ. P. 23(e)(1)(B). ............................................................................................6, 14, 15
Fed. R. Civ. P. 23(e)(2) ........................................................................................................14
Fed. R. Civ. P. 23(e)(2)(D) ....................................................................................................14

Fed. R. Civ. P. 23(f)............................................................................................................10

## I.    INTRODUCTION

This case stems from a data security incident whereby an unauthorized party or parties gained unauthorized access to Defendant Systems East, Inc.'s ("System's East" or "Defendant") computer network and stole an encrypted database that contained the names and certain payment card information of approximately 209,328 Class Members (the "Data Security Incident").

Plaintiffs Angie Boudreaux and Barbara Williams ("Plaintiffs"), individually and on behalf of those similarly situated, collectively allege that the Data Security Incident involved an unauthorized party accessing, viewing, and exfiltrating their sensitive data. Defendant has and continues to deny Plaintiffs' allegations and claims of wrongdoing or liability of any kind related to the Data Security Incident. The Court consolidated Plaintiffs' cases by Order dated January 5, 2024 (ECF No. 12), and Plaintiffs filed the operative Consolidated Complaint on January 26, 2024 (ECF No. 18).

During the pendency of this case, the Parties informally explored and discussed the relevant factual and legal issues and the potential for early resolution of this matter. As such the Parties agreed to participate in mediation before retired Federal District Court Judge Wayne R. Andersen (Ret.) of JAMS on April 25, 2024. The Parties further requested that this Court stay all dates and deadlines pending the mediation. ECF No. 20. In advance of mediation, the parties exchanged informal discovery and detailed statements of their positions on the factual and legal issues in this matter.

On April 25, 2024, the Parties attended a full-day mediation session with Judge Andersen and were able to reach a settlement in principle during that session. Over the next several weeks the Parties continued to negotiate in order to reduce the terms of their settlement to a written

settlement agreement ("Settlement Agreement" or "SA"), attached as **Exhibit 1** to the Declaration of Rachele R. Byrd in Support of Preliminary Approval of Class Action Settlement ("Byrd Decl.").

The Settlement Agreement fairly takes into account the significant risks to both the Settlement Class and Defendant associated with pursuing this litigation further. Given the comparative strengths and weaknesses of Plaintiffs' claims and Defendant's defenses—as described *infra.*—as well as the inherent uncertainties of litigation, this Settlement is well within the scope of what is fair, reasonable, and adequate for the Settlement Class, and therefore should be approved by the Court.

## II.    BACKGROUND

### A.  Procedural History

This matter was initiated when Plaintiffs filed their respective actions: *Boudreaux v. Systems East, Inc.*, No. 5:23-cv-1498 (filed November 29, 2023), and *Williams v. Systems East, Inc.*, No. 5:23-cv-01571 (filed December 22, 2023). These actions asserted causes of action arising from the Data Security Incident, which exposed personal data belonging to Plaintiffs and the putative class, including their names and payment card information. On January 5, 2024, the Court consolidated the two actions. ECF No. 12. On January 26, Plaintiffs filed their Consolidated Class Action Complaint ("CAC"). ECF No. 18. Shortly thereafter, the Parties agreed to participate in private, class-wide mediation before Hon. Wayne R. Andersen (Ret.) on April 25, 2024, and on February 15, 2024, Defendant so notified the Court and requested that this matter be stayed pending mediation. ECF No. 20; *see also* Byrd Decl., ¶ 3. The Court granted the requested stay that same day. ECF No. 21.

On April 25, 2024, the parties participated in a full-day mediation session with Judge Andersen and reached a settlement in principle. Byrd Decl., ¶ 4. Over the weeks following the

mediation session, the Parties continued to negotiate the specific terms of the settlement and work toward reducing the settlement into the proposed Settlement Agreement. *Id*., ¶ 5. The proposed Settlement Agreement was reached at arm's-length and without collusion. *Id*., ¶ 6.

### B.  The Settlement

As described in further detail in the Settlement Agreement, Defendant will fund a non-reversionary cash settlement fund in the amount of $1,000,000 for the benefit of the 209,328 Settlement Class Members from which payments will be made for: (1) reimbursement for Out-of-Pocket Losses; (2) *pro rata* cash payments; (3) all notice and administration costs; (4) any service award payments approved by the Court; and (5) attorneys' fees and expenses as awarded by the Court. SA, ¶ 2.1. Settlement Class Members may submit claims to receive a payment of up to $8,000 in compensation for out-of-pocket losses reasonably traceable to the Data Security Incident. *Id.*, ¶ 2.3. Settlement Class Members may, instead, elect to receive a *pro rata* Alternative Cash Payment of approximately $75.00. *Id*., ¶ 2.4. This amount is subject to *pro rata* increase or decrease so as to consume the remaining amount of the Settlement Fund after payment of: (a) approved claims for Out-of-Pocket Losses, (b) notice and administration costs, (c) service award payments approved by the Court, and (d) attorneys' fees and expenses awarded by the Court. *Id*., ¶ 2.2. Settlement Class Members who submit claims for Out-of-Pocket losses will receive the larger of either their approved claim for Out-of-Pocket losses or a *pro rata* cash payment. *Id.*, ¶ 2.3.2.

Additionally, the Settlement requires Defendant to make significant improvements to its information security, the costs of which will be borne by Defendant separate and apart from the Settlement Fund and any other settlement benefits. *Id*., ¶ 2.6.

Finally, under the terms of the Settlement Agreement, Class Counsel may apply to the Court for an award of attorneys' fees not to exceed one-third (1/3) of the Settlement Fund ($333,333.33) and litigation costs and expenses in an amount not to exceed $15,000.00 and for service awards for the Representative Plaintiffs in an amount not to exceed $2,000.00 each. *Id.*, ¶ 7.2.

### III.    ARGUMENT

#### A.  Legal Standards and *Grinnell* Factors

District courts have the discretion to approve proposed class action settlements. *See Hill v. County of Montgomery*, No. 9:14-cv-00933 (BKS/DJS), 2021 WL 2227796, at *2 (N.D.N.Y. June 2, 2021). "If the settlement was achieved through experienced counsels' [sic] arm's-length negotiations, '[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Id.* (quoting *Massiah v. MetroPlus Health Plan Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *2 (E.D.N.Y. Nov. 20, 2012)). The purpose of preliminary approval is to simply allow notice to be issued to the class and for class members to either object to or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input. *Flynn v. New York Dolls Gentlemen's Club*, No. 13 Civ. 6530(PKC)(RLE), 2014 WL 4980380, at *1 (S.D.N.Y. Oct. 6, 2014). "Preliminary approval requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Hadel v. Gaucho, LLC*, No. 15 Civ. 3706 (RLE), 2016 WL 1060324, at *1 (S.D.N.Y. Mar. 14, 2016).

There are also practical purposes for conditional settlement class certification and appointment of class counsel, "including avoiding the costs of litigating class status while

facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing." *Almonte v. Marina Ice Cream Corp.*, No. 1:16-CV-00660 (GBD), 2016 WL 7217258, at *2 (S.D.N.Y. Dec. 8, 2016), citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting provisionally certifying a settlement class has practical purposes).

Class certification is appropriate under Rule 23(a) if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4). However, a district court must first "determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). Courts in this Circuit evaluate fairness, adequacy, and reasonableness according to the nine "*Grinnell* factors," which are:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3)  the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005), citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Finally, pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), before a court directs notice to the class, a court must be satisfied that it will likely be able to certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B).

### B.  The Settlement Terms Are Substantively Fair, Adequate, and Reasonable

#### 1.  Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor 1)

"Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Further, courts consistently hold that unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F.Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

Data breach cases, such as this one, can be factually complex, requiring protracted and costly litigation to resolve. They also typically face significant legal uncertainties, including pretrial motions, such as the potential granting of the motion to dismiss in this case, related appeals, obtaining class certification, and bringing and/or opposing a summary judgment motion. Although nearly all class actions involve a high level of risk, expense, and complexity, "[t]hese general risks are heightened in data breach cases like this one." *Carter v. Vivendi Ticketing US LLC*, No. SACV 22-01981-CJC (DFMx), 2023 WL 8153712, at *6 (C.D. Cal. Oct. 30, 2023). To date few data breach class actions have successfully obtained non-settlement class certification.  *See In re Blackbaud, Inc., Customer Data Breach Litig.*, No. MDL 2972 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification because the class was not ascertainable without individualized assessments); *Gaston v. FabFitFun, Inc.*, No. 2:20-cv-0953-

RGK-E, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."). This case is no different in that it would present risk at class certification with no guarantee that the Court would certify Plaintiffs' proposed Class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc*., No. 14CV1372 DMS (DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Defendant is represented by counsel well-versed in data breach litigation, and if litigation were to continue, Defendant is likely to continue aggressively litigating this matter pre-trial. Defendant has indicated it would continue to assert numerous defenses on the merits and either party could appeal the merits of any future adverse decision, further delaying Class members' potential recovery. In contrast, under the terms of the proposed Settlement, Settlement Class Members will receive prompt resolution and tangible benefits (discussed *supra*) and avoid the risks, uncertainties, expenses, and delay of continued litigation. It provides certainty where litigation does not and provides benefits to the Settlement Class as opposed to defeat and no recovery. Therefore, this *Grinnell* factor weighs in favor of preliminary approval of the proposed Settlement.

## 2. The Reaction of the Class (*Grinnell* Factor 2)

The second *Grinnell* factor looks at the reaction of the class. At preliminary approval, the Class has not yet received notice of the Settlement, so the overall Class's reaction to the settlement is undetermined. Plaintiffs are in favor of the Settlement and are not currently aware of any opposition to it. At final approval, the Court will have additional information, including Settlement Class Members' reactions.

## 3. The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor 3)

The third *Grinnell* factor focuses on "whether counsel had an adequate appreciation of the

merits of the case before negotiating." *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316 PAC, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010), *aff'd*, 519 F. App'x 1 (2d Cir. 2013), citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir.2004); *see also In re AOL Time Warner, Inc.*, No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) ("whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement"). Prior to trial, "negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d at 176 (internal quotation marks omitted).

Here, the Parties conducted targeted, informal discovery prior to engaging in private mediation to obtain the factual information they needed to evaluate the strengths and weaknesses of the claims and defenses. Byrd Decl., ¶ 4. Additionally, having drafted multiple pleadings and researched all of the issues and publicly available facts about the data security incident, Plaintiffs are well informed of the strengths and weaknesses of their claims. This knowledge allowed Plaintiffs and their counsel to assess the value of the Class's claims and the risks of continued litigation and determine that the Settlement is fair, reasonable, adequate, and in the Settlement Class Members' best interests. Byrd Decl., ¶ 14. Therefore, this *Grinnell* factor weighs in favor of preliminary approval.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

While Plaintiffs believe their case is strong, they also acknowledge the substantial risks they face if this matter continues to be litigated. In evaluating the fourth and fifth *Grinnell* factors regarding the risks of establishing liability and damages, courts "must only weigh the likelihood

of success by the plaintiff class against the relief offered by the settlement." *In re Austrian &*
*German*, 80 F.Supp.3d at 177 (internal quotations omitted).

There is no guarantee that Plaintiffs will prevail against Defendant's anticipated motion to
dismiss, let alone achieve class certification, prevail at summary judgment, and again at trial. Here
that concern was heightened prior to mediation. Plaintiffs learned through informal discovery that
addresses, card verification value ("CVV") numbers, and magnetic stripe data corresponding to
names, payment card numbers and expiration dates were not contained within the data set impacted
in the data security incident. Byrd Decl., ¶ 23. These facts increased the risk that a jury would not
find in Plaintiffs' favor at trial (or the Court at summary judgement).

After careful consideration and arm's-length negotiations, Plaintiffs and their counsel
concluded that the resulting Settlement alleviates these risks, and provides a substantial benefit to
the Settlement Class in as timely a fashion as possible. Therefore, these *Grinnell* factors favor
preliminary approval.

### 5. The Risks of Maintaining a Class Through Trial (*Grinnell* Factor 6)

The sixth factor evaluates the risk of maintaining the class status through trial. Courts must
take into account the possibility of decertification, and the greater the possibility of decertification,
the more this factor weighs in favor of settlement approval. *Charron v. Pinnacle Grp. N.Y. LLC*,
874 F.Supp.2d 179, 200 (S.D.N.Y. 2012).

Here, the putative Class has not yet been certified by the Court, therefore this determination
could only be reached after additional discovery, full briefing, and obtaining a ruling on class
certification. Were Plaintiffs' claims to survive to the motion to dismiss stage, Defendant would
oppose any motion for class certification, for various possible reasons, including its contention
that individualized issues predominate over common issues and that this action would not be

manageable as a class action.

Even if the Court certified a class, Defendant would likely challenge certification through a Rule 23(f) petition and/or move to decertify the class after further discovery and motion practice—necessitating additional briefing and time, with an uncertain result. The proposed Settlement eliminates these risks and their accompanying expenses and delays. Therefore, this *Grinnell* factor weighs in favor of preliminary approval.

### 6. Defendant's Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

Although Defendant might be able to withstand a greater judgment, this factor, "standing alone, does not suggest that the settlement is unfair." *Charron*, 874 F.Supp.2d at 201 (quoting *In re Austrian & German*, 80 F.Supp.2d at 178 n.9). Given the status of the case, the strengths and weakness of the claims, the appeals process, and protracted litigation generally, Plaintiffs and their counsel believe the proposed Settlement is fair, reasonable, adequate, and in the best interest on the Settlement Class. As such, this factor is neutral.

### 7. The Reasonableness of the Settlement in Light of the Possible Recovery and Attendant Litigation Risks (*Grinnell* Factors 8 and 9)

*Grinnell* factors eight and nine, regarding the range of reasonableness of the settlement in light of the best possible recovery and a possible recovery in light of the litigation risks, are often combined for analytical purposes. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 47-48 (E.D.N.Y. 2019). "[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion—and the judge will not be reversed if the appellate court concludes that the settlement lies within that range." *Wal-Mart Stores, Inc.*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d

Cir.1972)). Settlements are a percentage of the theoretical potential recovery, and "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

This $1,000,000.00 Settlement Fund provides immediate benefits to Settlement Class Members, including a cash reimbursement for Out-of-Pocket Expenses attributable to the Data Security Incident or a cash payment of approximately $75.00, subject to upward or downward *pro rata* adjustment. SA, ¶¶ 2.2-2.4. The notice and settlement administration costs and expenses will also be paid out of the Settlement Fund. SA, ¶ 2.1.3. The Settlement further involves Defendant implementing and maintaining information security improvements to protect the PII that remains in its possession, paid for by Defendant separately from and in addition to the Settlement Fund. SA, ¶ 2.6. Thus, when the Settlement benefits are weighed against the litigation risks and the risk of Plaintiffs and the Settlement Class collecting on any judgment, the proposed Settlement is more than reasonable.

Additionally, where a settlement assures immediate payment to class members—as this one does—and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" the settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814(MP), 2004 WL1087261, at *5 (S.D.N.Y. May 14, 2004)). Therefore, these *Grinnell* factors weigh in favor of preliminary approval.

Each of the non-neutral *Grinnell* factors weigh in favor of approval, and the Court should grant preliminary approval because the Settlement is facially "fair, adequate, and reasonable, and not a product of collusion." *Joel A.*, 218 F.3d at 138-39.

### C.  The Remainder of the Rule 23(e)(2) Factors Support Preliminary Approval

#### 1.  The Allocation Plan is Fair and Adequate

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate . . . . An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 40 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F.Supp.2d 319, 344 (S.D.N.Y. 2005)). The allocation plan does not need to be perfect. *Id.*

Here, the allocation plan is fair and adequate because each Settlement Class Member is eligible to receive the same benefits, specifically a cash payment for any out-of-pocket expenses they incurred due to the Data Security Incident, or an alternative *pro rata* cash payment. SA, § 2. This way, the Settlement treats each Settlement Class Member equally, while still accounting for the potential differences between Settlement Class Members who have already experienced out-of-pocket losses and those for whom such losses potentially remain in the future. *See generally In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 40 (E.D.N.Y. 2019) (collecting examples of approved allocation plans). A modest service award will be requested for all named Plaintiffs for their assistance in obtaining the benefits for the Class. *See Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (The decision of whether to award class representative a service award, and how much, is solely within the discretion of the court, and individual awards "have generally ranged from $2,500 to $85,000.").

#### 2.  The Proposed Form and Method of Providing Notice to the Proposed Class Are Appropriate

Pursuant to Rule 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal" prior to approving a settlement. Fed. R. Civ.

P. 23(e)(1). Further, Rule 23(c)(2) requires the Court to direct the best notice practicable, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005). While there are no rigid rules in determining compliance with Rule 23 or constitutional requirements, the settlement notice needs to "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

The proposed Notice Program does just that. As recited in the Settlement Agreement and described herein, the proposed notice will inform Settlement Class Members of the Settlement's substantive terms and their options—including remaining part of the Settlement Class, objecting to the Settlement, or opting out of the Settlement; how to submit claims to receive benefits; and how to obtain additional information and/or answers to frequently asked questions about the Settlement. The proposed Notice Program—consisting of (1) a Long Form Notice to be made available on the Settlement Website (SA, ¶¶ 3.2.2-3.2.3), and (2) an individual Short Form Notice for those Settlement Class Members for whom a physical address can be identified with reasonable effort, with any such notices returned as undeliverable being resent to the extent updated addresses can be identified with reasonable effort (SA, ¶ 3.2.1)—is designed to directly reach a very high percentage of Settlement Class Members. Byrd Decl., ¶ 20. Therefore, the Court should approve the Notice Program, as well as the form and content of the proposed notices.

### 3. Attorneys' Fees, Expenses, and Service Awards

Plaintiffs will apply to the Court for an award of reasonable attorneys' fees and

reimbursement of litigation costs in an amount not to exceed one-third of the Settlement Fund, or $333,333.33. SA, ¶ 7.2. Plaintiffs will also seek Service Awards of $2,000.00 each for Representative Plaintiffs Angie Boudreaux and Barbara Williams in recognition of the time, efforts, and risks they took in commencing the Litigation and potential related actions. SA, ¶ 7.3. "Federal courts have long recognized that a lawyer whose efforts create a common fund may recover a reasonable fee from the fund as a whole." *Kommer v. Ford Motor Co.*, No. 1:17-cv-0296 (LEK/DJS), 2020 WL 7356715, at * 5 (N.D.N.Y. Dec. 15, 2020); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 249 (2d Cir. 2007) ("[U]nder the 'equitable fund' doctrine, attorneys for the successful party may petition for a portion of the fund as compensation for their efforts[.]"). Such amounts are generally within the range of attorneys' fees approved in this Circuit and district. *See Hill*, 2021 WL 2227796, at *6.

### 4.  The Parties Have No Additional Agreements

The only agreement related to this Litigation is the proposed Settlement Agreement, attached as Exhibit 1 to the Byrd Declaration, and there are no side agreements regarding attorneys' fees or costs related to this proposed Settlement. Byrd Decl., ¶ 21.

### 5.  Proposed Settlement Class Members are Treated Equitably

Rule 23(e)(2)(D) instructs the court to consider whether the settlement agreement "treats class members equitably relative to each other." Here, the proposed Settlement treats Settlement Class Members equally because they all have the option to make a claim for any of the applicable benefits. SA, § 2. The proposed Settlement should be preliminary approved because it satisfies both the Rule 23(e)(2) factors and the *Grinnell* factors.

## IV.  THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

Pursuant to Rule 23(e)(1)(B), before a court directs notice to the class, the court must be

satisfied that it will likely be able to certify the class for settlement purposes. Fed. R. Civ. P. Rule 23(e)(1)(B). To achieve certification, it must be demonstrated that the requirements of Rule 23(a) are met, which include: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

After satisfying all requirements under Rule 23(a), the settlement class must then satisfy Rule 23(b)(3), which requires the court to determine whether:

1. Questions of law or fact common to class members predominate over questions affecting only individual members, and

2. A class action is superior to the other methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. Rule 23(b)(3).

As discussed *infra*, the settlement class certification requirements are met and Defendant consents to provisional certification of the Settlement Class for settlement purposes. *See* Newberg § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

### A.  The Settlement Class meets the Requirements of Rule 23(a)

### 1.  The Settlement Class is Sufficiently Numerous

Rule 23(a)(1) requires the members of a proposed class to be so numerous that joinder of

all the class members would be impracticable yet ascertainable. *Id.* While there is no fixed minimum number of members, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, there are 209,328 Settlement Class Members, making joinder impractical. SA, § I. Moreover, the Settlement Class Members are ascertainable based on Defendant's records, as they utilized Defendant's payment system and Defendant sent them individual notice of the Data Security Incident. Thus, the numerosity requirement of Rule 23 is satisfied.

### 2. The Commonality Requirement is Met

Rule 23(a)(2) requires that the representative plaintiffs' claims contain "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is a "low hurdle." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014). This factor is satisfied if there is a question "capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[E]ven a single common question will do." *Id.* at 349.

Here, there are multiple questions of law and fact common to Plaintiffs and Settlement Class Members stemming from the same Data Security Incident. The common issues presented generally include: (1) whether Defendant breached a duty to Plaintiffs and Settlement Class Members by failing to implement and maintain reasonable and adequate data security practices to safeguard their PII; (2) the nature and cause of the Data Security Incident; and (3) the damages caused by the alleged lack of adequate security. Accordingly, the commonality requirement is satisfied.

### 3. The Typicality Requirement is Met

Rule 23(a)(3) requires that the representative plaintiffs' claims and defenses are typical of those of the proposed class. Fed. R. Civ. P. 23(a)(3). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations omitted). Typicality is evaluated "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116 RWS, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)). And "[l]ike commonality, the test for typicality is not demanding." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999).

Consistent with Rule 23(a)(3), Plaintiffs' claims are typical of the claims of other Settlement Class Members in that the PII of Plaintiffs, like all Settlement Class Members, was subject to alleged access and/or disclosure to an unauthorized party as a result of the Data Security Incident. Plaintiffs' claims for loss of control of their PII and ongoing risk of identity fraud, among others, are typical of the claims of the other Settlement Class Members. Plaintiffs' damages and injuries are akin to those of other Settlement Class Members, and Plaintiffs assert the same claims and forms of relief as the Settlement Class. And all Plaintiffs and Settlement Class Members have the same interest in the remedial measures Defendant has implemented and will continue to implement to protect the PII remaining in Defendant's possession. *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (holding that the typicality requirement was satisfied

where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories"). Thus, the typicality requirement is met.

### 4. The Adequacy Requirement is Met and Plaintiffs Should be Provisionally Appointed as Settlement Class Representatives

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. Rule 23(a)(4). The focus is on determining whether the proposed class representatives have "interests antagonistic to the interests of other class members" and whether they "have an interest in vigorously pursuing the claims of the class." *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F.App'x 760, 764 (2d Cir. 2020), citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Even where there is a conflict, it does not necessarily defeat class certification because the conflict must be "fundamental." *Denney*, 443 F.3d at 268.

Here, the adequacy requirement is satisfied. Plaintiffs—like all Settlement Class Members—are users of Defendant's services and their PII was potentially compromised as a result of the Data Security Incident. Plaintiffs have the same interests as the Settlement Class Members in recovering damages from Defendant to which they are allegedly entitled. Plaintiffs are members of the Settlement Class who experienced the same injuries and seek, like other Settlement Class Members, compensation. Plaintiffs are not subject to unique defenses and they and their counsel have vigorously prosecuted this case on behalf of the Settlement Class. Thus, Plaintiffs' and Proposed Class Counsel's interests align with those of the Settlement Class. Further, Proposed Class Counsel have decades of combined experience as class action advocates and are well suited to litigate on behalf of the Settlement Class. Byrd Decl., ¶¶ 25-26.

Plaintiffs have also actively participated in the Litigation and have provided assistance in representing the interests of the Settlement Class. Specifically, Plaintiffs provided Class Counsel

with information necessary to draft and/or file multiple complaints and represented the Settlement Class in settlement discussions. Byrd Decl., ¶ 16. Collectively, Plaintiffs have provided all information needed by counsel to pursue this result, ending up with a Settlement that is fair, adequate, and reasonable. *Id*. Therefore, Plaintiffs respectfully request the Court provisionally appoint them as the Settlement Class Representatives. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

> ### 5. Proposed Class Counsel Should be Provisionally Appointed as Class Counsel

The proposed class counsel must be "competent, willing and able to protect the interests of the absent class members." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). The proposed Class Counsel have extensive experience litigating class actions, including data breach actions of similar size, scope, and complexity. Byrd Decl., ¶¶ 25-26 and Exhibits 2, 3, and 4 thereto (Firm Bios). Proposed Class Counsel have devoted significant resources toward prosecuting this action, including investigating Plaintiffs' claims, pursuing those claims aggressively, conducting informal discovery, preparing a detailed mediation brief, participating in a day-long private mediation session, and negotiating the proposed Settlement over an extended period of time. Byrd Decl., ¶ 17. Plaintiffs therefore respectfully request the Court provisionally appoint Proposed Class Counsel as Class Counsel.

> ### B.  The Settlement Class Meets the Requirements of Rule 23(b)(3).

Rule 23(b)(3)'s predominance element requires that "questions of law or fact common to class members predominate over any questions affecting only individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*

*Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Here, both of these requirements are met. *See also Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

### 1. Common Questions Predominate Over Any Individual Questions

The focus of Rule 23(b)(3)'s predominance requirement is on whether (i) defendant's liability is common enough to be resolved on a class-wide basis (*Dukes*, 564 U.S. at 359); and (ii) the proposed class is "sufficiently cohesive to warrant adjudication by representation" (*Amchem*, 521 U.S. at 623; *see also Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623)). Therefore, where plaintiffs are unified by common facts and a common legal theory, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, the legal issues faced by Settlement Class Members arise from the same set of facts related to the Data Security Incident, and the same claims alleged by Plaintiffs, including claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and declaratory judgment. The commonalities include issues relating to (1) Defendant's duties to Plaintiffs; (2) whether Defendant failed to implement reasonable security procedures and practices; and (3) whether the Settlement Class has been damaged, among others. Resolution of Plaintiffs' claims will result in resolution of the Settlement Class's issues. Although the alleged damages may sometimes vary between Plaintiffs and the Settlement Class, all damages stem from Defendant's actions that created the alleged legal liability. Thus, the predominance requirement is satisfied.

### 2. A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy

Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy," and considers the following factors:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).[1] The analysis is a relative comparison as to whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).

Plaintiffs are unaware of any other pending litigation related to this Data Security Incident and, therefore, are unaware of any evidence that Settlement Class Members have an interest in individually controlling the prosecution or defense of their claims. Byrd Decl., ¶ 20. In light of the size of Settlement Class Members' potential individual recoveries and costs of litigation, a class action is not only the superior method of adjudication, but quite possibly the only feasible means for adjudication of their claims. A class action also conserves judicial resources and preserves public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). Further, this forum is an appropriate and convenient forum for Plaintiffs' claims to be litigated because Defendant is a New York limited liability company.

Therefore, the requirements of Rule 23(b)(3) are satisfied.

## V.    THE PROPOSED NOTICE IS THE BEST PRACTICABLE

Rule 23(c)(2) requires the Court to direct the best notice practicable, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2).

---

[1] "[T]he court need not consider the manageability" for a settlement-only class because the matter is not going to trial. *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. 2009).

This is in addition to Rule 23(e)'s requirements that the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal" prior to approving a settlement. Fed. R. Civ. P. 23(e)(1). Due process requires that notice provided to Settlement Class Members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, the proposed Notice to absent Settlement Class Members comports with the Federal Rules of Civil Procedure and due process. The Notice Program is comprised of two components: (1) Long Form Notice to be posted on the Settlement Website, and (2) Short Form Notice to be individually mailed to Settlement Class Members. SA, § 3; SA, Exs. B-C; Declaration of Steven Weisbrot, Esq. of Angeion Group LLC Re: the Proposed Notice Plan ("Weisbrot Decl."), ¶¶ 18-26. The Settlement Administrator will use reasonable efforts to obtain an updated mailing address and resend any Short Form Notice that is returned as undeliverable. SA, ¶ 3.2.1; Weisbrot Decl., ¶ 22. Additionally, there will be a toll-free telephone line established so Settlement Class Members may call with Settlement-related inquiries. SA, ¶ 3.2.4; Weisbrot Decl., ¶ 26. The Parties have agreed that Angeion Group is to be engaged as the Settlement Administrator. SA, ¶ 1.4.

The Notice includes a description of the material terms of the Settlement; a date by which Settlement Class Members may object to or request exclusion from the Settlement; the date upon which the Final Fairness Hearing will occur; and the address of the Settlement Website at which Settlement Class Members may file claims and access the Settlement Agreement and other related documents and information. *See* SA, Exs. B-C. Settlement Class Members will have 60 days from the Class Notice Date to object or exclude themselves from the Settlement. SA, ¶¶ 1.17-1.18. This Notice Program provides the best practicable way of reaching the greatest number of Settlement

Class Members and meets due process requirements. Weisbrot Decl., ¶ 30.

## VI.    SCHEDULING AND FINAL FAIRNESS HEARING

The last step in the settlement approval process is the Final Fairness Hearing—when Settlement proponents may explain and describe its terms and conditions and offer argument in support of settlement approval; and Settlement Class Members may be heard in support of or in opposition to the Settlement. The following sets forth the proposed schedule of events to occur with respect to the effectuation of the Settlement based on the terms of the Settlement Agreement.

| Event | Timing |
|---|---|
| Deadline to provide notice to State Attorneys General or others as required by 28 U.S.C. § 1715(b), which shall be coordinated and funded by counsel for Representative Plaintiffs | 10 days after filing of this Motion for Preliminary Approval |
| Deadline for Defendant to provide Settlement Class List to Claims Administrator pursuant to the Settlement Agreement | 7 days after entry of the Preliminary Approval Order |
| Notice Program Commencement ("Class Notice Date") | 30 days after entry of the Preliminary Approval Order |
| Notice Program Completion | 60 days after entry of the Preliminary Approval Order |
| Deadline for Class Counsel to file motion for attorneys' fees, costs, expenses and service awards | 14 days before Objection Deadline and Opt-Out Deadline |
| Objection Deadline | 60 days after the Class Notice Date |
| Opt-Out Deadline | 60 days after the Class Notice Date |
| Claims Deadline | 60 days after the Class Notice Date |
| Deadline for Plaintiffs to file motion for final approval of settlement and responses to any timely submitted Settlement Class Member objections, which shall include a declaration from the Claims Administrator confirming execution of and compliance with its obligations in the Settlement Agreement as of the date of the declaration and identifying all | 21 days prior to Final Fairness Hearing |

| Event | Timing |
|---|---|
| Settlement Class Members who submitted timely requests for exclusion | |
| Final Fairness Hearing | _____, 2024 at __: __ _.m. in Courtroom ____ <br><br> [No earlier than (i) 100 days after Defendant notifies the appropriate government officials pursuant to Class Action Fairness Act, 28 U.S.C. § 1715(d) or (ii) 60 days after the Claims Deadline, whichever is later] |

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter an order preliminarily approving the proposed Settlement; provisionally certifying the proposed Settlement Class; appointing Plaintiffs Angie Boudreaux and Barbara Williams as Settlement Class Representatives; appointing Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP; M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp.; and Mason A. Barney of Siri & Glimstad LLP as Class Counsel; approving the proposed class notice and dissemination schedule; and scheduling a Final Fairness Hearing for a time and date convenient for the Court, approximately 120 days after entry of an order granting this motion.

DATED:  July 17, 2024

/s/ Rachele R. Byrd
RACHELE R. BYRD

Rachele R. Byrd (*pro hac vice*)
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Tel: (619) 239-4599
E: byrd@whafh.com

Mason A. Barney
NDNY Bar Roll No. 518229
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com

M. Anderson Berry (*pro hac vice*)
Gregory Haroutunian
**CLAYEO C. ARNOLD A**
   **PROFESSIONAL CORPORATION**
865 Howe Avenue Sacramento, CA 95825
Tel: 916.239.4778
Fax: 916.924.1829
E: aberry@justice4you.com
E: gharoutunian@justice4you.com

*Attorneys for Plaintiffs*