## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANGIE BOUDREAUX and BARBARA WILLIAMS**, individually, and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>**SYSTEMS EAST, INC.**, a New York Domestic Business Corporation<br><br>　　　　　　　Defendant. | Lead Case No.: 5:23-cv-01498-DNH-ML<br><br>**CONSOLIDATED CLASS ACTION** |

### DECLARATION OF RACHELE R. BYRD IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, Rachele R. Byrd, hereby declare as follows:

1.　　I am an attorney licensed to practice law in the State of California. I am a partner in the law firm of Wolf Haldenstein Adler Freeman & Herz LLP. I am one of the attorneys representing Plaintiffs Angie Boudreaux and Barbara Williams (collectively "Plaintiffs") and the putative class and one of the attorneys this Court appointed Interim Co-Lead Class Counsel in its Order of January 5, 2024 (ECF No. 12). I have personal knowledge of the matters stated herein and, if called upon, I could and would testify competently thereto. I submit this Declaration in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

### FACTUAL AND PROCEDURAL BACKGROUND

2.　　This matter was initiated when Plaintiffs Angie Boudreaux and Barbara Williams filed their respective actions: *Boudreaux v. Systems East, Inc.*, No. 5:23-cv-1498 (filed November 29, 2023), and *Williams v. Systems East, Inc.*, No. 5:23-cv-01571 (filed December 22, 2023). These actions asserted causes of action arising from a data security incident that exposed personal data

belonging to Plaintiffs and the putative class, comprised of approximately 209,328 individuals, including their names and payment card information (the "Data Security Incident"). On January 5, 2024, the Court consolidated the two actions. ECF No. 12. On January 26, Plaintiffs filed their Consolidated Class Action Complaint ("CAC"). ECF No. 18.

3.    Before and after consolidation, the Parties discussed potential early resolution of this matter, and at approximately the same time as consolidation, were able to agree to participate in private, class-wide mediation before Hon. Wayne R. Andersen (Ret.) of JAMS, a highly respected private mediator and retired federal judge. The Parties notified the Court of such on February 15, 2024.

4.    Prior to the full-day mediation, the Parties conducted targeted informal discovery to assist in evaluating the strengths and weaknesses of their respective claims and defenses.

5.    The full-day mediation before Judge Andersen took place on April 25, 2024, and the Parties, with Judge Andersen's assistance, were able to reach a settlement in principle (the "Settlement") during the mediation.

6.    Over the course of many weeks after the mediation, the Parties continued to negotiate the specific terms of the Settlement and worked diligently towards reducing the Settlement into the proposed Settlement Agreement.

7.    All negotiations were conducted at arm's-length and without collusion.

## SETTLEMENT AGREEMENT

8.    As described in further detail in the Settlement Agreement, attached hereto as **Exhibit 1**, this Settlement provides immediate benefits to the Settlement Class Members in the form of the creation of a $1,000,000 non-reversionary cash fund from which payments will be made for: (1) reimbursement of Out-of-Pocket Losses suffered by any Settlement Class Members

who makes a valid claim for such; (2) alternative *pro rata* cash payments for any Settlement Class Member who elects to receive one; (3) all notice and administration costs; (4) any service award payments approved by the Court; and (5) attorneys' fees and expenses as awarded by the Court.

9.    Additionally, the Settlement requires Defendant to make significant improvements to its information security, the costs of which will be borne by Defendant separately and apart from the Settlement Fund and any other Settlement Benefits.

10.    The Settlement treats all Settlement Class Members equitably because all Settlement Class Members have the option to elect to make a claim for a cash payment, either as reimbursement for Out-of-Pocket expenses or for a *pro rata* cash payment, and all will receive the benefits of Defendant's business practice changes regardless of whether they file a Claim or not.

11.    Additionally, Settlement Class Members who elect to make a claim for reimbursement of Out-of-Pocket losses will be paid either the amount they claimed (and which was validated) or a *pro rata* cash payment, whichever is greater.

12.    Also, the release is narrowly tailored to release only those claims which were or could have been asserted in this action. In particular, the Released Claims against Defendant are limited to claims that were or could have been asserted "based on, relating to, concerning or arising out of" the Data Security Incident.

13.    The only agreement related to this litigation is the proposed Settlement Agreement (**Exhibit 1**), and there are no side agreements regarding attorneys' fees or costs related to this proposed Settlement.

14.    The Proposed Settlement Class Representatives are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class.

## PROSECUTION OF THIS ACTION

15.     The Settlement Agreement is the result of competent representation and vigorous arms'-length negotiations with Defendant through its counsel of record, and the assistance of a neutral mediator to reach the best possible outcome for the Settlement Class in light of the risks and potential benefits to each party of continued litigation. Based on my experience, and after taking into account the disputed factual and legal issues involved, I believe the proposed Settlement is fair, reasonable, and adequate for the Settlement Class, and it was unquestionably free of collusion.

16.     Plaintiffs—like all Settlement Class Members—are individuals who used Defendant's services whose personal information was potentially compromised as a result of the Data Security Incident. Plaintiffs believe they have the same interest as the Settlement Class Members in recovering damages from Defendant to which they are allegedly entitled. To that end, they are members of the class they seek to represent and have assisted in the prosecution of this case. Their actions were to the benefit of all Settlement Class Members by filing or assisting in the preparation of the underlying actions, reviewing pleadings, conferring with counsel, and providing input on the proposed Settlement.

17.     My firm, as well as my co-counsel's firms, have vigorously pursued this litigation on behalf of Plaintiffs and the putative class since its inception, and we have all dedicated time and resources to this litigation which could have been devoted to other work. We all will continue to do so through final approval of the Settlement. The prosecution of this action has been done solely on a contingent fee basis, and I, and other Plaintiffs' counsel, have been completely at risk of not receiving any compensation for prosecuting claims against Defendant.

18.     My firm, as well as my co-counsel's firms, have also extensively investigated Plaintiffs' claims and the facts surrounding the Data Security Incident; reviewed and analyzed public information and information provided through informal discovery in anticipation of mediation by Defendant; and thoroughly examined the legal principles applicable to the claims asserted. The pleadings were drafted in the underlying matters and the consolidated matter and, through this work and pre-mediation discovery, sufficient information and documentation were developed to enable productive mediation discussions. I participated fully in negotiations, in editing and approving settlement documents, including the notice, claim form, and settlement agreement, and the instant motion for preliminary approval. This knowledge allowed me and my co-counsel to assess the value of the Class's claims and the risks of continued litigation, and we have determined that the Settlement is fair, reasonable, adequate, and in the Settlement Class Members' best interests.

19.     I am unaware of any conflicts of interest between Plaintiffs and the putative Class Members. I have not previously represented Defendant in any matter and am not related to the representative Plaintiffs. I do not represent opposing factions within the Class in that all claims are predicated on the same facts and theories of liability, and the Settlement benefits Settlement Class Members equally.

20.     I am not aware of any other lawsuits commenced by any other persons against Defendant regarding these claims.

21.     Based on my experience, I believe this settlement is a positive resolution for the Settlement Class and falls comfortably within the range of reasonableness. It is also my considered opinion that the proposed Claim Form, Short Form Notice, and Long Form Notice (to be posted on the Settlement Website) accurately and plainly explain the Settlement's benefits and how to

obtain them, offer clear opportunity for Settlement Class Members to exclude themselves if they so choose, and provide a mechanism for the Settlement Class to share their opinions about the Settlement with the Court. I also believe the Claim Form is straightforward and that the Settlement Agreement provides a reasonable process to assist Settlement Class Members whose initial submissions are deficient.

22.    I further believe this Settlement satisfies the Rule 23 requirements and the factors set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).

23.    Data breach cases have limited precedential class certification decisions, and some of Plaintiffs' class-wide damage models remain untested. The path to recovery for Class Members is not otherwise assured—especially here, considering the early stage of litigation. The road to success, including getting past all pleading challenges, obtaining and maintaining class certification, surviving summary judgment and *Daubert* challenges to expert testimony, and trial is uncertain. Moreover, I and my co-counsel learned through informal discovery that addresses, card verification value ("CVV") numbers, and magnetic stripe data corresponding to names, payment card numbers and expiration dates were not contained within the data set impacted in the Data Security Incident. These facts increased the risk that a jury would not find in Plaintiffs' favor at trial (or that the Court would grant Defendant summary judgement). This settlement provides substantive benefits the Class Members can receive in the short term, which is substantially superior to potentially no recovery at all due to these challenges. Ongoing litigation, without the same certainty of recovery is the alterative. Based on the tangible benefits this Settlement provides the Class Members, and weighing those against the risks, time, and expense of litigating this case, based on my experience, I fully support the Settlement as proposed and respectfully request this Court grant Plaintiff's motion.

## QUALIFICATIONS OF COUNSEL

24.     I have substantial experience in class actions and data breach class actions of similar size, scope, and complexity; and believe this settlement represents a fair resolution of this matter and is in the best interests of the Plaintiffs and the Settlement Class. Attached hereto as **Exhibit 2** is a true and correct copy of my firm's resume, which includes my curriculum vitae.

25.     My co-counsel are similarly greatly experienced, having collective decades of experience in complex litigation and class actions in general, and data breach litigation in particular. Attached hereto as **Exhibit 3** is a true and correct copy of Clayeo C. Arnold, APC's firm resume, and attached hereto as **Exhibit 4** is a true and correct copy of Siri & Glimstad LLP's firm resume.

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed this 17th day of July, 2024 at Poway, California.

_/s/ Rachele R. Byrd_____
RACHELE R. BYRD

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANGIE BOUDREAUX and BARBARA WILLIAMS, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**SYSTEMS EAST, INC.,**<br><br>**Defendant.** | Lead Case No. 5:23-cv-01498-DNH-ML |

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement and Release Agreement ("Agreement" or "Settlement Agreement"), dated July 17, 2024, is made and entered into by and among the following Settling Parties (as defined below): (i) Angie Boudreaux and Barbara Williams ("Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through their counsel of record: Wolf Haldenstein Adler Freeman & Herz LLP; Clayeo C. Arnold, A Professional Law Corp.; and Siri & Glimstad LLP ("Plaintiffs' Counsel"); and (ii) Systems East, Inc. ("Defendant" or "Systems East"), by and through its counsel of record, Mullen Coughlin LLC. The Settlement Agreement is subject to Court approval and is intended by the Settling Parties (as defined below) to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

I.      **THE LITIGATION**

Systems East, a provider of e-payment and online payment processing solutions, including the Xpress-pay platform, experienced a cybersecurity incident in August 2023 which involved potential access by cybercriminals to information within a database containing payment card information for 209,328 individuals (the "Security Incident," as further defined below). On

November 16, 2023, Defendant notified members of the Settlement Class, as defined below, about the Security Incident, including that their payment card information ("PII") may have been exposed to cybercriminals.

On November 29, 2023, Plaintiff Boudreaux, individually and on behalf of a putative class, filed an action against Systems East in the U.S. District Court for the Northern District of New York (*Boudreaux v. Systems East, Inc.*, Case No. 5:23-cv-01498-DNH-ML). On December 13, 2023, Plaintiff Williams, individually and on behalf of a putative class, filed an action against Systems East in the U.S. District Court for the Northern District of New York (*Williams v. Systems East, Inc.*, Case No. 5:23-cv-1571-DNH-ML). The *Boudreaux* and *Williams* actions were consolidated on January 5, 2024, with the above-captioned action designated by the Court as the lead case. Plaintiffs' Consolidated Class Action Complaint was subsequently filed on January 26, 2024 (the "Consolidated Complaint").

Plaintiffs' Consolidated Complaint asserted five causes of action against Systems East arising out of the Security Incident: (i) negligence, (ii) negligence per se, (iii) breach of implied contract, (iv) unjust enrichment, and (v) declaratory judgment.

On April 25, 2024, the Settling Parties mediated before the Hon. Wayne R. Andersen (Ret.). Before mediating, Defendant and Plaintiffs exchanged informal discovery. As part of this discovery, Defendant produced responses to state Attorneys General describing the Security Incident and its remedial measures, a forensic investigation report, and written responses to information requests. The parties also exchanged mediation submissions. The Settling Parties reached an agreement on terms for a settlement following mediation. The Settling Parties desire to settle the Litigation and all claims arising out of or related to the allegations or subject matter of the Consolidated Complaint on the terms and conditions set forth herein for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing to litigate the Litigation.

Under the terms set forth below, this Settlement resolves all claims and causes of action that were or could have been asserted against Defendant and the Related Entities (as defined below) relating to the Security Incident, by and on behalf of Plaintiffs and Settlement Class Members (as defined below), and any other such actions by and on behalf of any other individuals originating, or that may originate, in jurisdictions of the United States of America against Defendant and the Related Entities relating to the Security Incident, subject to the terms of this Agreement, and subject to preliminary and final approval by the Court.

The Parties agree and understand that neither this Settlement Agreement, nor the settlement it represents, shall be construed as an admission by Defendant of any wrongdoing whatsoever, including an admission of a violation of any statute or law or of liability on the claims or allegations in the Litigation or any other similar claims in other proceedings, or that any such claims would be suitable for class treatment.

## II.    PLAINTIFFS' CLAIMS AND THE BENEFIT OF SETTLING

Representative Plaintiffs believe the claims asserted in the Litigation (as defined below), as set forth in the Consolidated Complaint, have merit. Plaintiffs and Proposed Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Systems East through motion practice, trial, and potential appeals. They have also taken into account the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation. Proposed Class Counsel are experienced in class action litigation and are very knowledgeable regarding the relevant claims and remedies generally at issue in such litigation, as well as issues related to privacy that are specific to this type of litigation. They have determined that the settlement set forth herein, which provides compensation for those individuals who allegedly suffered the consequences of the

3

Security Incident, is fair, reasonable, and adequate, and in the best interests of the Representative Plaintiffs and the Settlement Class.

## III.    DENIAL OF WRONGDOING AND LIABILITY

Systems East denies all of the contentions and claims alleged against it in the Litigation, and all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Systems East specifically denies that Representative Plaintiffs and the Settlement Class Members are entitled to any form of relief from Systems East. Systems East further asserts that neither the Representative Plaintiffs nor the Settlement Class Members have suffered harm as a result of the Security Incident, and that the complications of managing a potential trial in this matter would preclude class certification in the absence of settlement. Nonetheless, without making any admission of wrongdoing whatsoever, Systems East has concluded that further conduct of the Litigation would be protracted and expensive. Systems East has also considered the uncertainty and risks inherent in any litigation. Based on the foregoing, Systems East has determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    SETTLEMENT TERMS

**NOW, THEREFORE**, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is hereby agreed by and among Representative Plaintiffs, individually and on behalf of the Settlement Class Members, and Systems East that, subject to the approval of the Court, the Litigation and the Released Claims (as defined below) be forever resolved, settled, compromised, and the Litigation shall be dismissed with prejudice as to the Parties, the Settlement Class, and the Settlement Class Members, except those Settlement Class Members who lawfully opt out of the Settlement Agreement, upon and subject to the following terms and conditions:

1.    **<u>Definitions</u>**

As used in the Settlement Agreement and in the related documents attached hereto as exhibits, the following terms have the meanings specified below:

1.1.    "Agreement" or "Settlement" or "Settlement Agreement" means this agreement, and the terms may be used interchangeably.

1.2.    "Approved Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the Dispute Resolution process.

1.3.    "Claims Administration" means the processing and payment of Settlement Claims received from Settlement Class Members by the Claims Administrator.

1.4.    "Claims Administrator" means Angeion Group, a company experienced in administering class action claims generally and specifically those of the type provided for and made in litigation involving data security incidents, subject to approval by the Court.

1.5.    "Claims Deadline" means the postmark deadline for valid claims pursuant to ¶ 2.5., which shall be 60 days after the Class Notice Date.

1.6.    "Claim Form" means the form that the Settlement Class Members must complete and submit on or before the Claims Deadline in order to be eligible for the benefits described herein. The Claim Form shall require a sworn signature or electronic verification as set forth in paragraph 2.5.1 below, but shall not require notarization. The Claim Form template is attached as **Exhibit A** to this Settlement Agreement.

1.7.    "Class Notice Date" means thirty (30) days after entry by the Court of the Preliminary Approval Order.

1.8.    "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration, including the costs of Notice.

1.9.    "Court" means the United States District Court for the Northern District of New York.

1.10.    "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.11.    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 9.1 herein have occurred and been met.

1.12.    "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fees award or service awards made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.13.    "Judgment" means a Final Approval Order and Judgment rendered by the Court and in a form substantially similar to the one attached hereto as **Exhibit E**. "Judgment" and "Final Approval Order and Judgment" may be used interchangeably.

1.14.    "Litigation" means *Angie Boudreaux, et al. v. Systems East, Inc.*, Lead Case No. 5:23-cv-01498-DNH-ML, pending in the United States District Court for the Northern District of New York.

1.15.    "Notice" means the written notice to be sent to or made available to the Settlement Class Members pursuant to the Preliminary Approval Order, including the Short Form Notice and the Long Form Notice.

1.16.    "Notice Program" means the Claim notice program as explained in ¶ 3.2 herein.

1.17.    "Objection Date" means the date by which objections to the settlement from Settlement Class Members must be filed with the Clerk of Court in order to be effective and timely and shall be sixty (60) days from the Class Notice Date.

1.18.    "Opt-Out Date" means the date by which requests for exclusion from settlement must be postmarked in order to be effective and timely and shall be sixty (60) days after the Class Notice Date.

1.19.    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.20.    "Preliminary Approval Order" means the proposed order preliminarily approving the settlement and directing mailed notice to the Settlement Class of the pendency of the Litigation and of the settlement. The Preliminary Approval Order template is attached as **Exhibit D** to this Settlement Agreement.

1.21.    "Plaintiffs' Counsel" and "Proposed Class Counsel" mean: Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP; M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp.; and Mason A. Barney of Siri & Glimstad LLP.

1.22.    "Related Entities" means Systems East's past or present parent companies, subsidiaries, divisions, related or affiliated individuals and entities, divisions, successors, predecessors (including companies they have acquired, purchased or absorbed), subcontractors, assigns and joint ventures, and each of their respective successors, predecessors, officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals,

7

investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters, benefits administrators, investors, funds, indemnities, insurers, and reinsurers, past, present, and future, and all persons acting under, by or though, or in concert with any of them, other than any individual who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads nolo contendere to any such charge.

 1.23. "Released Claims" shall collectively mean any and all past, present, and future claims and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45, *et seq*., and all similar statutes in effect in any states in the United States; negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against Defendant or any of the Related Entities based on, relating to, concerning or arising out of the Security Incident. Released Claims shall not include the right of any Settlement Class Member, Class Counsel, Defendant or any of the Related Entities to enforce

the terms of the settlement contained in this Settlement Agreement and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.24.    "Representative Plaintiffs" means Angie Boudreaux and Barbara Williams.

1.25.    "Security Incident" means the cybersecurity incident that occurred on or around August 25, 2023 and that Systems East announced on or around November 16, 2023, involving unauthorized access to data on Defendant's computer network including the theft of an encrypted database that contained the names and certain payment card information of approximately 209,328 Settlement Class Members.

1.26.    "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.27.    "Settlement Class" means all individuals to whom Systems East sent notice of the Security Incident. Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Litigation, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Security Incident or who pleads nolo contendere to any such charge. Defendant represents that the Settlement Class contains approximately 209,328 individuals.

1.28.    "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.29.    "Settlement Website" means the website described in ¶ 3.2.3.

1.30.    "Settling Parties" means, collectively, Systems East and Representative Plaintiffs, individually and on behalf of the Settlement Class.

1.31.    "Short Notice" or "Short Form Notice" means the content of the mailed notice to the proposed Settlement Class Members, substantially in the form as shown in **Exhibit B** attached hereto. The Short Notice will direct recipients to the Settlement Website and inform Settlement Class Members, among other things, of the Claims Deadline, the Opt-Out Date, the Objection Date, the requested attorneys' fees, expenses and service awards, and the date of the Final Fairness Hearing (as defined below in ¶ 3.6).

1.32.    "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any Representative Plaintiff, does not know or suspect to exist as of the date of the entry of the Preliminary Approval Order that, if known by any of them, might have affected their settlement with, and release of, Defendant and the Related Entities, or might have affected their decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Representative Plaintiffs expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class Members, including Representative Plaintiff, and any of them, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Representative Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.33.    "United States" as used in this Settlement Agreement includes the District of Columbia and all territories of the United States.

**2.**    **SETTLEMENT BENEFITS**

2.1.    Settlement Fund.

2.1.1.    The Settling Parties agree to payment by or on behalf of Defendant of a non-reversionary common fund in the amount of $1,000,000.00, including any interest accrued thereon after payment, which shall constitute the full and complete limit and extent of Defendant's obligations with respect to the Settlement ("Settlement Fund").

2.1.2.    Within fourteen (14) days of the Court granting preliminary approval of this Agreement, Defendant shall pay to the Claims Administrator the estimated costs associated with notifying the Settlement Class Members;

2.1.3.    Within thirty (30) days of the Effective Date, Defendant shall pay the remainder of the Settlement Fund (i.e., the Settlement Fund less the amount already paid under 2.1.2). As set forth below, the amount paid by Defendant under this section 2.1.3 will be used to pay for: (1) reimbursement for Out-of-Pocket Losses; (2) pro rata cash payments; (3) any

additional notice and administration costs; (4) service award payments approved by the Court; and (5) attorneys' fees and expenses awarded by the Court.

2.1.4.   For the avoidance of doubt, and for purposes of this Settlement Agreement only, Defendant's liability shall not exceed $1,000,000.00.

2.2.    *Pro Rata* Increase or Decrease of Claims. Approved Claims for Alternative Cash Payments will be increased *pro rata* to consume the remaining amount of the Settlement Fund after payment of (a) Approved Claims for Out-of-Pocket Losses, (b) notice and administration costs, (c) service award payments approved by the Court, and (d) attorneys' fees and expenses awarded by the Court. Approved Claims for Out-of-Pocket Losses and Alternative Cash Payments will be decreased *pro rata* in the event there are insufficient funds to pay all Approved Claims after payment of (a) notice and administration costs, (b) service award payments approved by the Court, and (c) attorneys' fees and expenses awarded by the Court.

2.3.    Reimbursement for Out-of-Pocket Losses. All Settlement Class members may submit a claim for Out-of-Pocket Losses up to $8,000.00 per individual. The Settlement Fund will be used to pay valid and timely-submitted claims for each of the following categories: "Out-of-Pocket Losses" include unreimbursed costs or expenditures incurred by a Settlement Class Member in responding to notice of the Security Incident that were incurred between August 25, 2023 and the Claims Deadline, as a result of the Security Incident. They may include, without limitation, the following: (1) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information; (2) costs associated with accessing or freezing/unfreezing credit reports with any credit reporting agency; (3) other miscellaneous expenses incurred related to any Out-of- Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; (4) credit monitoring or other mitigative costs.

2.3.1.   Settlement Class Members who elect to submit a claim for reimbursement of Out-of-Pocket Losses must provide to the Claims Administrator the information required to evaluate the claim, including: (1) the Settlement Class Member's name and current address; (2) documentation supporting their claim; and (3) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. Documentation supporting Out-of-Pocket Losses can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. "Self-prepared" documents, such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support to other submitted documentation. Out-of-Pocket Losses will be deemed "fairly traceable" if the timing of the loss occurred on or after August 25, 2023.

2.3.2.   Settlement Class Members who submit an Approved Claim for Out-of-Pocket Losses will receive the greater of their Out-of-Pocket Losses or an Alternative Cash Payment after any *pro rata* adjustment.

2.4.    <u>Alternative Cash Payment.</u> Settlement Class Members may, in lieu of making a claim for reimbursement of Out-of-Pocket Losses with documentation, elect to receive a cash payment in the amount of $75.00, subject to *pro rata* decrease or increase pursuant to ¶ 2.2.

2.5.    <u>The Claim Form.</u>

2.5.1.   The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct to the best of his or her knowledge and belief. Notarization shall not be required. The Settlement Class Member must reasonably attest that the Out-of-Pocket Losses claimed were both actually incurred and plausibly arose from the Security Incident. Failure to provide supporting attestation and documentation for Out-of-Pocket Loss claims as requested on the Claim Form and required under ¶ 2.3.1 shall result in denial of the

claim. Disputes as to claims submitted under this paragraph are to be resolved pursuant to the provisions stated in ¶ 2.7.

2.5.2.   Nothing in this Settlement Agreement shall be construed to provide for a double payment for the same loss or injury that was reimbursed or compensated by any other source.

2.5.3.   To be valid, claims must be complete and submitted to the Claims Administrator on or before the Claims Deadline.

2.5.4.   No payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of this Settlement Agreement.

2.5.5.   Settlement Class Members who submit a Claim Form must designate the method for payment of their claim on the Claim Form, which will include the receipt of payment via check by mail, or via PayPal, Zelle, Venmo, or such other electronic payment platform deemed efficient and appropriate by the Claims Administrator. Claim Forms failing to clearly make a single designation will receive a check by mail to the last known address on file with the Claims Administrator. In the event an electronic payment platform returns a payment to the Claims Administrator, no later than fourteen (14) days after being notified of the return of such payment, the Claims Administrator will mail a check to the Settlement Class Member's last known address on file with the Claims Administrator.

2.6.    <u>Information Security Improvements</u>. Prior to the filing of a motion for preliminary approval, Defendant has agreed to provide a confidential declaration to Class Counsel indicating data security-related measures that it has implemented or will be implementing. Costs associated with these information security improvements will be paid by Defendant separate and apart from other settlement benefits.

2.7.    Dispute Resolution for Claims.

2.7.1.    The Claims Administrator will determine whether: (1) the claimant is a Settlement Class Member based on information to be provided to the Claims Administrator by Defendant's counsel; (2) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to support the claimant's Settlement Class membership and the expenses described in ¶ 2.3; and (3) the information submitted could lead a reasonable person to conclude that more likely than not the claimant has suffered the claimed losses as a result of the Security Incident (collectively, "Facially Valid"). The Claims Administrator may, at any time, request from the claimant, in writing, additional information ("Claim Supplementation") as the Claims Administrator may reasonably require in order to evaluate the claim, *e.g.*, documentation requested on the Claim Form, and information regarding the claimed losses, available insurance and the status of any claims made for insurance benefits, and claims previously made for identity theft and the resolution thereof.

2.7.2.    Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is Facially Valid, the Claims Administrator shall request Claim Supplementation and give the claimant thirty (30) days to cure the defect before rejecting the claim. Requests for Claim Supplementation shall be made within thirty (30) days of receipt of such Claim Form or thirty (30) days from the Effective Date, whichever comes later. In the event of unusual circumstances interfering with compliance during the 30-day period, the claimant may request and, for good cause shown (illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than six months from the

Effective Date. If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.7.3. Following receipt of additional information requested as Claim Supplementation, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each claim. If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is Facially Valid, then the claim shall be paid. If the claim is not Facially Valid because the claimant has not provided all information needed to complete the Claim Form and evaluate the claim, then the Claims Administrator shall reject the claim without any further action.

2.7.4. Settlement Class Members shall have thirty (30) days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator. If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have fifteen (15) days to reconsider its initial adjustment amount and make a final determination.

2.7.5. The Claims Administrator shall provide the Settling Parties' counsel with a summary of Facially Valid Claims on a monthly basis, stating the types of claims, the total approved claim amounts by claim type, and a description of the support provided for claims for reimbursement for Out-of-Pocket Losses. Within fifteen (15) days after receiving such summary, one or more of the Settling Parties may object to any claim and instruct the Claims Administrator to withhold approval of said Facially Valid Claim so that the objecting party may seek review of said claim by a third-party Settlement Referee agreed upon by the Parties or appointed by the Court if no such agreement is reached.

2.8. <u>Settlement Class Certification.</u> The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class. If the settlement set forth in this

16

Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

2.9.    <u>Confidentiality of Information Submitted by Settlement Class Members.</u> Information submitted by Settlement Class Members pursuant to this Settlement Agreement shall be deemed confidential and protected as such by Systems East and the Claims Administrator.

**3.    ORDER OF PRELIMINARY APPROVAL AND PUBLISHING OF NOTICE OF FINAL FAIRNESS HEARING**

3.1.    As soon as practicable after the execution of the Settlement Agreement, Proposed Class Counsel shall submit this Settlement Agreement to the Court as part of an unopposed motion for preliminary approval of the Settlement Agreement. The motion for preliminary approval shall request entry of a Preliminary Approval Order in the form attached hereto as **Exhibit D** or an order substantially similar, requesting, *inter alia*:

a)    conditional certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.8;

b)    preliminary approval of this Settlement Agreement as set forth herein;

c)    the scheduling of a Final Fairness Hearing and briefing schedule for a Motion for Final Approval and for a Motion for Attorneys' Fees and Expenses and Service Awards;

d)    appointment of Proposed Class Counsel as Class Counsel;

e)    appointment of Representative Plaintiffs as Class Representatives;

f) approval of a customary form of short notice to be mailed to Settlement Class Members ("Short Form Notice") in a form substantially similar to the one attached hereto as **Exhibit B** and a customary long form notice ("Long Form Notice") in a form substantially similar to the one attached hereto as **Exhibit C**, which together shall include a fair summary of the Parties' respective litigation positions, the general terms of the settlement set forth in this Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing;

g) appointment of a Claims Administrator; and

h) approval of a Claim Form substantially similar to that attached hereto as **Exhibit A**.

The Notice and Claim Form shall be reviewed by the Claims Administrator and may be revised as agreed upon by the Settling Parties prior to such submission to the Court for approval.

3.2.    The Notice Program. Within 7 days of an order directing class notice, Defendant will provide to the Claims Administrator a class list that includes Settlement Class Members' full names, last known addresses, last known email addresses, and last known phone numbers, where known and/or as reflected in Systems East's records. Notice shall be provided to Settlement Class Members in accordance with the Notice Program set forth below at ¶ 3.2.1. The Notice Program shall be subject to approval by the Court as meeting constitutional due process requirements. Prior to the Final Fairness Hearing, Proposed Class Counsel and/or Systems East's counsel shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with the Notice Program.

3.2.1.   Short Form Notice. On or before the Class Notice Date, the Claims Administrator shall mail the Short Form Notice, substantially in the form of **Exhibit B** hereto. The Claims Administrator shall mail a copy of the Short Form Notice via United States Postal Services ("USPS") first class mail to all Settlement Class Members for whom Systems East can ascertain a mailing address from its records with reasonable effort. For Settlement Class Members for whom

18

Systems East is not able to ascertain a mailing address from its records with reasonable effort, the Claims Administrator shall use reasonable efforts to identify a mailing address and mail a copy of the Short Form Notice to such address. For any Short Form Notices that are returned undeliverable, the Claims Administrator shall use reasonable efforts to identify updated mailing addresses and resend the Short Form Notice to the extent updated addresses are identified. The Claims Administrator need make only one attempt to resend any Short Form Notices that are returned as undeliverable.

      3.2.2.  <u>Long Form Notice.</u> On or before the Class Notice Date, the Claims Administrator shall post the Long Form Notice on the Settlement Website in the form agreed to by the Parties and approved by the Court.

      3.2.3.  <u>Settlement Website.</u> As soon as practicable following entry of the Preliminary Approval Order, but prior to the Class Notice Date, the Claims Administrator shall establish a dedicated Settlement Website and shall maintain and update the website throughout the Claims Period, and shall post on the website the Long Form Notice and Claim Form approved by the Court, as well as this Settlement Agreement, the Motion for Final Approval of Class Action Settlement, the Motion for Attorneys' Fees and Expenses and Service Awards, the Preliminary Approval Order, and the Final Approval Order and Judgment. The URL of the Settlement Website shall be agreed upon by Class Counsel and Defendant. The Settlement Website shall remain operational until at least five (5) business days after the last payment or credit under this settlement is terminated.

      3.2.4.  <u>Toll-Free Help Line.</u> From the Class Notice Date and thereafter until at least five (5) Business Days after the last payment under this settlement is made or the settlement is terminated, the Claims Administrator shall establish and maintain a toll-free help line for Settlement Class Members to call with settlement-related inquiries, with the option to leave a

message and request a call back, with such calls being returned within twenty-four (24) hours, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries. The Claims Administrator will also provide copies of the forms of the Long Form Notice and Claim Form approved by the Court, as well as this Settlement Agreement, upon request.

3.3.    The Long Form Notice, Short Form Notice and Claim Form approved by the Court may be adjusted by the Claims Administrator in consultation and agreement with the Settling Parties as may be reasonable and not inconsistent with such approval.

3.4.    Counsel for Representative Plaintiffs shall coordinate and fund notice to state Attorneys General or others as required by 28 U.S.C. § 1715(b) which shall occur within ten (10) days of the filing of the Motion for Preliminary Approval.

3.5.    The Notice Program shall commence by the Class Notice Date and shall be completed within sixty (60) days after entry of the Preliminary Approval Order.

3.6.    Proposed Class Counsel and Systems East's counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

## 4.    <u>**OPT-OUT PROCEDURES**</u>

4.1.    Each Person wishing to exclude themselves from the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. Persons wishing to opt out of the Settlement Class will only be able to submit an opt-out request on their own behalf; mass or class opt-outs will not be permitted. The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class. To be effective, written notice must be postmarked by the Opt-Out Date. All opt-out requests sent to anyone other than the Claims Administrator, including requests previously

sent to Proposed Class Counsel and/or Systems East's counsel, are ineffectual and shall be deemed null and void.

4.2.    All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3.    Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Proposed Class Counsel and Systems East's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List"). No later than 10 days prior to the Final Fairness Hearing, Class Counsel shall file this Opt-Out List with the Court for purposes of being attached to the Judgment to be entered upon final approval.

5.    **OBJECTION PROCEDURES**

5.1.    Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date. Such notice shall state: (i) the name or caption of this Litigation; (ii) the objector's full name, address, telephone number, and e-mail address (if any); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of all counsel representing the objector; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vii) a statement identifying all class action settlements objected to by the objector, and the objector's attorney, if applicable, in the previous 5 years; and (viii) the objector's signature and

the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation), if any. To be timely, written notice of an objection in the appropriate form must be: (a) electronically filed by the Objection Date; or (b) mailed first-class postage prepaid to the Clerk of Court for the United States District Court for the Northern District of New York and postmarked by no later than the Objection Date.  Objections must also be served concurrently with their filing or mailing upon Proposed Class Counsel and counsel for Systems East either via the Court's electronic filing system (if filed electronically) or via U.S. mail (if mailed to the Clerk of Court).

5.2.    Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

5.3.    The Parties will have the same right to seek discovery from any objecting Settlement Class Member as they would if the objector was a party in the Litigation, including the right to take the objector's deposition. Such discovery will be conducted on an expedited basis, and the objecting Settlement Class Member is required to respond to any written discovery within fourteen (14) days and must appear for deposition within fourteen (14) days after a deposition is noticed.

6.    **RELEASE**

6.1.    Upon the Effective Date, each Settlement Class Member, including Representative Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, completely, fully, finally, irrevocably, and forever released, relinquished, and discharged Systems East and the Related Entities from all Released Claims.

7.    **PROPOSED CLASS COUNSEL'S ATTORNEYS' FEES AND EXPENSES; SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS**

7.1.    The Settling Parties did not discuss the payment of attorneys' fees and litigation expenses and/or service awards to Representative Plaintiffs, as provided for in ¶¶ 7.2 and 7.3, until after the substantive terms of the settlement had been agreed upon, other than that the Settlement Fund would be used to pay reasonable attorneys' fees and litigation expenses and service awards to Representative Plaintiffs as may be agreed to by Systems East and Proposed Class Counsel and/or as ordered by the Court, or, in the event of no agreement, then as ordered by the Court. Systems East and Proposed Class Counsel have agreed to the following:

7.2.    Defendant agrees not to oppose an application by Plaintiffs' counsel for an award of attorneys' fees not to exceed one third (1/3) of the Settlement Fund in an amount not to exceed $333,333.33 and litigation costs and expenses in an amount not to exceed $15,000.00, subject to Court approval. The Claims Administrator shall, from the Settlement Fund, pay the attorneys' fees and expenses award approved by the Court up to the agreed maximum.

7.3.    The Representative Plaintiffs shall seek leave for, and the Claims Administrator shall, from the Settlement Fund, pay service awards to each of Representative Plaintiffs not to exceed $2,000.00, subject to Court approval. These service awards shall be separate and apart from any other sums agreed under this Settlement Agreement and the request for service awards is not a condition to the Representative Plaintiffs' approval of this settlement.

7.4.    The Claims Administrator shall, from the Settlement Fund, pay the Court-approved amount of attorneys' fees and expenses to Proposed Class Counsel and the Court-approved service awards to Representative Plaintiffs within forty (40) days after the Effective Date. Proposed Class Counsel shall provide payment instructions and completed W-9 Forms prior to the deadline for these payments. Neither Class Counsel nor counsel for Systems East intend anything contained herein to constitute legal advice concerning the tax consequences of any amount paid hereunder nor shall it be relied on as such.

7.5.    If this Settlement Agreement is terminated or otherwise does not become Final (*e.g.*, disapproval by the Court or any appellate court), Systems East shall have no obligation to pay attorneys' fees and litigation costs or expenses or service awards and shall only be required to pay costs and expenses related to notice and administration that were already incurred. Under no circumstances will Proposed Class Counsel or any Settlement Class Member be liable for any costs or expenses related to notice or administration.

7.6.    The amount(s) of any award of attorneys' fees and expenses and the service awards are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees and expenses and/or any service awards ordered by the Court to Proposed Class Counsel or Representative Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

## 8.    **ADMINISTRATION OF CLAIMS**

8.1.    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶ 2. Proposed Class Counsel and Systems East shall be given reports as to both claims and distribution and have the right to review and obtain supporting

documentation and challenge any such claim if they believe it to be inaccurate or inadequate. The Claims Administrator's final determination of the validity or invalidity of any claims shall be binding, subject to the dispute resolution process set forth in ¶ 2.7.

8.2.    Payments for Approved Claims shall be sent to the claimants within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later. No Approved Claims shall be paid until after the Effective Date. If this Settlement Agreement is terminated or otherwise does not become Final (*e.g.*, disapproval by the Court or any appellate court) prior to the payment of Approved Claims, Systems East shall have no obligation to pay such claims and shall only be required to pay costs and expenses related to notice and administration that were already incurred.

8.3.    All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the Settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

8.4.    No Person shall have any claim against Systems East, Proposed Class Counsel, Plaintiffs, and/or Systems East's counsel based on distribution of benefits to Settlement Class Members.

8.5.    The Parties, Class Counsel, and Systems East's Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Claims Administrator, or any of its respective designees or agents, in connection with the Claims Administration or otherwise; or (ii) the determination, rejection, administration, calculation or payment of any Claims.

9. **CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION**

9.1.    The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)    the Court has entered the Preliminary Approval Order, as described in ¶ 3.1;

b)    the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

c)    the Judgment has become Final, as defined in ¶ 1.13.

9.2.    If all of the conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.3 unless Proposed Class Counsel and Systems East's counsel mutually agree in writing to proceed with the Settlement Agreement.

9.3.    In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (i) the Settling Parties shall be restored to their respective positions in the Litigation as if the Agreement had never been entered into (and without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue) and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party, and (b) the terms and provisions of the Settlement Agreement shall be void and have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. Notwithstanding any statement in this Settlement Agreement to the contrary, including but not limited to ¶ 9.4, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees and litigation costs or expenses and/or the service awards shall constitute grounds for cancellation or termination of the Settlement Agreement. Further,

notwithstanding any statement in this Settlement Agreement to the contrary, Systems East shall be obligated to pay amounts already billed or incurred for costs of Notice and Claims Administration and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

9.4.    This Settlement Agreement may be terminated and/or cancelled by any of the Parties if (i) the Court rejects, materially modifies, materially amends, or changes, or declines to preliminarily approve or finally approve the Settlement Agreement apart from the award of attorneys' fees and expenses; (ii) an appellate court reverses the Final Approval Order and/or Judgment, and the Settlement Agreement is not reinstated and finally approved without material change by the Court on remand; or (iii) the Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the proposed Preliminary Approval Order, the Preliminary Approval Order, the proposed Judgment, the Judgment, or the Settlement Agreement, other than the amount of attorneys' fees and expenses.

## 10.    **MISCELLANEOUS PROVISIONS**

10.1.    The Settling Parties: (i) acknowledge that it is their intent to consummate this agreement; (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement; (iii) and agree to exercise their commercially reasonable best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2.    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith

by the Settling Parties, that it reflects a settlement that was reached voluntarily after consultation with competent legal counsel, and that for the purpose of construing or interpreting this Agreement, the Settling Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that neither Party shall have any liability to one another as it relates to the Litigation, except as set forth herein.

10.3.    Neither the Settlement Agreement, nor the settlement terms contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of Defendant or any of the Related Entities; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Defendant or any of the Related Entities in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. If this Agreement does not become effective or is cancelled, withdrawn, or terminated for any reason, the Agreement along with all related communications and documents exchanged in connection with the Agreement and mediation between the Parties shall be deemed a negotiation for settlement purposes only under Federal Rule of Procedure 408 and will not be admissible in evidence or usable for any purposes whatsoever in the Litigation or any proceedings between the Parties or in any other action related to the Released Claims or otherwise involving the Parties or any Released Person. Defendant and any of the Related Entities may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith

settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4.    The terms of this Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest and approved by the Court; it is provided, however, that after entry of the Preliminary Approval Order, the Parties may by written agreement, effect such amendments or modifications of this Agreement and its implementing documents (including all Exhibits attached hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

10.5.    The Settlement Agreement, together with the Exhibits attached hereto, constitutes the entire agreement among the Parties, and no representations, warranties or inducements have been made to any Party concerning the Settlement Agreement other than the representations, warranties and covenants contained and memorialized in such document. Except as otherwise provided herein, each party shall bear its own costs. This Agreement supersedes all previous agreements made between Plaintiffs and Systems East.

10.6.    Proposed Class Counsel, on behalf of the Settlement Class, is expressly authorized by Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

10.7.    The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes

the risk of such possible difference in facts, and agrees that this Agreement, including the releases contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

10.8.    If any of the dates or deadlines specified herein fall on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this Agreement shall refer to calendar days unless otherwise specified.

10.9.    Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties, through their respective counsel, shall consult with each other in good faith prior to seeking Court intervention.

10.10.  Each counsel or other Person executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such Person has the full authority to do so.

10.11.  The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

10.12.  The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

10.13.  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.14.  The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the state of New York, and the rights and obligations

of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the state of New York.

10.15.  The Final Fairness Hearing shall be scheduled no earlier than: (i) 100 days after the notices are made in order to comply with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(d); or (ii) 30 days after the Claims Deadline, whichever is later.

10.16.  As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

10.17.  All dollar amounts are in United States dollars (USD).

10.18.  Cashing a settlement check (whether paper or electronic) is a condition precedent to any Settlement Class Member's right to receive settlement benefits. All settlement checks and electronic payments shall be void sixty (60) days after issuance and the checks or emails containing the links to the electronic payments shall bear the language: "This check[/payment] must be cashed[/accepted] within 60 days, after which time it is void." If a check or electronic payment becomes void, the Settlement Class Member shall have until six months after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished. The same provisions shall apply to any re-issued check or electronic payment. For any checks or electronic payments that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks or electronic payments become void.

10.19.  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

<u>**AGREED TO BY**</u>:

By: _Rachele R. Byrd_
RACHELE R. BYRD
byrd@whafh.com
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, California
Telephone: (619) 239-4599
Facsimile: (619) 234-4599

KATE M. McGUIRE
mcguire@whafh.com
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

MASON A. BARNEY
NDNY Bar Roll No. 518229
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com

M. ANDERSON BERRY
aberry@justice4you.com
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Cellular: (415) 595-3302
Facsimile: (916) 924-1829

*Proposed Class Counsel*

By: _____
DANIEL M. BRAUDE
**MULLEN COUGHLIN LLC**
411 Theodore Fremd Avenue
Suite 206S
Rye, NY 10580
Tel: (267) 930-1316
dbraude@mullen.law

*Attorneys for Defendant*

# EXHIBIT A

<table>
<tr><td>

**Your claim must be submitted online or <u>postmarked by</u>:**
**[DEADLINE]**

</td><td>

*Boudreaux, et al. v. Systems East, Inc.*,
Lead Case No. 5:23-cv-01498-DNH-ML  (N.D.N.Y.)

# CLAIM FORM

</td><td>

**CRE**

</td></tr>
</table>

## I. GENERAL INFORMATION

This claim form should be filled out if you are an individual who received notice of a data security incident in November 2023 from Systems East, Inc. ("Systems East"), a provider of e-payment and online processing solutions, including the Xpress-pay platform.  As indicated in the notice, your name and payment card information may have been exposed in connection with an August 2023 cybersecurity incident.  You may get money if you fill out this claim form, if the Settlement is approved and if you are found to be eligible for a payment.

The Settlement Notice [link to document on website] describes your legal rights and options.

If you wish to submit a claim for a Settlement payment, you need to provide the information requested below.

<u>**SUBMIT YOUR CLAIM FORM BY _____, 2024**</u>

Online: \_www._____.com\_\_\_\_\_

Mail: Systems East Security Incident Settlement,
c/o Angeion Group
[ADDRESS.  \_\_.]

## II. CLASS MEMBER NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Claims Administrator if your contact information changes after you submit this Claim Form.

**Notice ID Number:** _____
*(provided on the Notice you received by email or mail)*

| | |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

| | | |
|---|---|---|
| **City** | **State** | **Zip Code** |

| | |
|---|---|
| **Email Address** | **Telephone Number** |

## III. ALTERNATIVE CASH PAYMENT

☐ Check this box if you are submitting a claim for an Alternative Cash Payment. **Instead of** making a claim for reimbursement of Out-of-Pocket Losses with documentation, as described in Section IV below, you may elect to receive a cash payment of $75.00, subject to upward or downward proration depending upon the total amount of valid Out-of-Pocket Loss Claims and claims for Alternative Cash Payments submitted. **Do not check this box if you are making a claim for Out-of-Pocket Losses with documentation described below in Section IV**.

## IV. OUT-OF-POCKET LOSSES REIMBURSEMENT

☐ Check this box if you are submitting a claim for reimbursement of Out-of-Pocket losses, which are: (1) the unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of your personal information; (2) costs associated with accessing or freezing/unfreezing credit reports with any credit reporting agency; (3) other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; (4) credit monitoring or other mitigative costs. As described in the Settlement Agreement, this amount may be adjusted on a *pro rata* basis based on the total amount of Out-of-Pocket Loss Claims and claims for Alternative Cash Payments made by all claimants combined. **Do not check this box if you are submitting a claim for the Alternative Cash Payment described above in Section III.**

Allowable Out-of-Pocket Losses are detailed in the Settlement Agreement, available at www.XXXXXXXXXX.com. To receive up to **$8,000.00** in reimbursement of Out-of-Pocket Losses caused by, or expenses incurred as a result of, the Ssecurity Iincident, please provide the following information:

Amount Requested**:**  $_____**.**_____

Please briefly describe the out-of-pocket expenses and how they relate to the Security Incident:

| *Description of Expense* | *Amount* |
|---|---|
| *Example: Receipt for credit repair services* | *$100* |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**Required: A copy of a bank or credit card statement or other proof of claimed fees or charges (you may redact unrelated transactions and all but the last four digits of any account number).** Documentary proof **MUST** be submitted to support your exact claim amount. "Self-prepared" documents are, by themselves, insufficient.

2

## V.  PAYMENT SELECTION

Please select from **<u>one</u>** of the following payment options:

☐ **PayPal** - Enter your PayPal email address: _____

☐ **Venmo -** Enter the mobile number associated with your Venmo account: __ __ __-__ __ __-__ __ __ __

☐ **Zelle -** Enter the mobile number or email address associated with your Zelle account:

Mobile Number: __ __ __-__ __ __-__ __ __ __   or Email Address: _____

☐ **Physical Check -** Payment will be mailed to the address provided in Section I above.

## VI.  SIGNATURE

_____     _____     _____
                Signature                                      Printed Name                                      Date

**EXHIBIT B**

### Notice of Proposed Settlement of Systems East Class Action

**You may be eligible for a <u>cash payment</u> in a class action settlement if Systems East, Inc. ("Systems East") sent you notice of a data security incident on or around November 16, 2023.**

**What is this about?**  A settlement has been reached in a class action lawsuit about a data security incident that occurred on or about August 25, 2023, which potentially exposed personally identifiable information ("PII") including names and limited payment card information of persons who used Systems East's platforms (including Xpress Pay) to make payments for goods or services to other venders or providers online (the "Security Incident"). Plaintiffs allege that Systems East should be liable for the Security Incident because Systems East should have taken greater care to protect PII from potential exposure. Systems East denies these claims and denies any wrongdoing.

**Systems East's records show you are a member of the Settlement Class.** If the Court approves the settlement, individuals to whom Systems East sent notice of the Security Incident may submit a claim for <u>cash</u> benefits, including either: (i) a cash payment of <u>$75.00</u> (the "Alternative Cash Payment"); or (ii) reimbursement of up to <u>$8,000.00</u> for unreimbursed out-of-pocket losses fairly traceable to the Security Incident (instead of the <u>$75.00</u> cash payment).  The cash amount actually rewarded may be prorated depending on the total value of claims made by all Settlement Class Members.

**What are the benefits?**  The settlement provides the following benefits<u>:</u>

- **Alternative Cash Payment**: A <u>$75.00</u> cash payment to all claimants who elect this option. If you elect the <u>$75.00</u> payment, you do not need to submit any other documentation with your claim form, but you will be unable to claim Out-of-Pocket Losses.  This $75.00 cash payment amount may be prorated depending on the total value of claims made by all Settlement Class Members.
- **Documented Out-of-Pocket Losses Reimbursement**: Up to <u>$8,000.00</u> for documented out-of-pocket losses or expenses. If you choose this option, you will not be eligible for the Alternative Cash Payment. This amount may be prorated depending on the total value of claims made by all Settlement Class Members.
- **Information Security Improvements**: Systems East has made various enhancements to its security system to provide additional protections for users' data.

You must file a Claim Form to receive a cash payment. You can file a claim online or download a Claim Form at www.SettlementURL.com and mail it in, or you may call X-XXX-XXX-XXXX and ask that a Claim Form be mailed to you. The claim deadline is **Month 00, 2024.** You must use the following Notice ID and Confirmation Code to file a Claim Form to verify your identity as a member of the Settlement Class:

Notice ID:    <<Notice ID>>        Confirmation Code:  <<Code>>

**Other Options.** If you do not want to be legally bound by the settlement, you must exclude yourself by **Month 00, 2024**. If you stay in the settlement, you may object to it by **Month 00,**

**2024**. A more detailed notice is available at www._____.com to explain how to exclude yourself or object, or you may also call 1-_____ to request a copy of the more detailed notice.

On **Month 00, 2024**, **at 00:00 _.m**. the Court will hold a Final Fairness Hearing on whether to approve the settlement, Class Counsel's request for attorneys' fees of $333,333.33 and reimbursement of costs and expenses of up to $15,000.00, and service awards of up to $2,000.00 for each of the Representative Plaintiffs. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost, but you do not have to.

***This is only a summary***. For detailed information visit **www.SettlementURL.com** or call **1-000-000-0000**. You may contact the Claims Administrator at Systems East Settlement, c/o Angeion Group, P.O. Box 0000, City, State, Zip.

**EXHIBIT C**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

*Boudreaux, et al. v. Systems East, Inc.*, Lead Case No. 5:23-cv-01498-DNH-ML

# If Systems East, Inc. sent you a notice of a data security incident on or around November 16, 2023, you may be eligible for a <u>cash payment</u> in a class action settlement.

*A court authorized this notice. This is not a solicitation from a lawyer.*

- A settlement has been reached in a consolidated class action lawsuit against Systems East, Inc. ("Systems East") about a data security incident that occurred on August 25, 2023, which potentially exposed personally identifiable information ("PII") including names and limited payment card information of persons who used Systems East's platforms (including Xpress Pay) to make payments for goods or services to other venders or providers online (the "Security Incident"). A lawsuit was filed against Systems East, alleging that it did not take appropriate care to protect the data that was potentially exposed. Systems East denies all of Plaintiffs' claims in the lawsuit and maintains it did not do anything wrong and that the potential exposure of data did not cause harm to any individuals. The parties have agreed to settle the Litigation to avoid the expense and burdens of litigation.

- The settlement includes all individuals to whom Systems East sent notice of the Security Incident on or around November 16, 2023 ("Settlement Class Members").

- The settlement allows Settlement Class Members to request either a **$75.00** cash payment (the "Alternative Cash Payment") **or** reimbursement of out-of-pocket losses fairly traceable to the Security Incident (up to **$8,000.00**). The $75.00 cash payment is approximate and is subject to *pro rata* increase or decrease, depending upon the number of valid claims filed.

- You must use the Notice ID and Confirmation Code received with your postcard notice to verify your identity as a Settlement Class Member. If for some reason you did not receive this information, but believe you are a Settlement Class Member, please call 1-XXX-XXX-XXXX to verify your identity and receive further information on how to file a claim.

**Your legal rights are affected even if you do nothing. Read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| Submit a Claim | The only way to get a cash payment. You must submit a claim by **Month Day**, 2024. |
| Ask to be Excluded | Get no payment. This is the only option that allows you to sue Systems East over the claims resolved by this settlement. You must exclude yourself by **Month Day**, 2024. |
| Object | Write to the Court about what you do not like about the settlement. You must object by **Month Day**, 2024. |
| Do Nothing | Get no payment. Give up rights. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

Questions? Call 1-###-###-#### or visit  www.[website URL].com.

- The Court in charge of this case still has to decide whether to grant final approval of the settlement. Payments will only be made after the Court grants final approval of the settlement and after any appeals are resolved.

Questions? Call 1-###-###-#### or visit  www.[website URL].com.

-2-

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION**……………………………………………………….. Page ☐
1. Why was this Notice issued?
2. What is this lawsuit about?
3. Why is this lawsuit a class action?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT?**.......................................................................... Page ☐
5. How do I know if I am included in the settlement?
6. What if I am not sure whether I am included in the settlement?

**THE SETTLEMENT BENEFITS**…………………………………………………... Page ☐
7. What does the settlement provide?
8. What payments are available for individuals who incurred out-of-pocket losses fairly
    traceable to the Security Incident?
9. What payments are available for individuals who would prefer a cash payment in lieu
    of making a claim for reimbursement of out-of-pocket losses?

**HOW TO GET BENEFITS**.......................................................................... Page ☐
10. How do I get benefits?
11. How will claims be decided?

**REMAINING IN THE SETTLEMENT**…………………………………………… Page ☐
12. Do I need to do anything to remain in the settlement?
13. What am I giving up as part of the settlement?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**……………………………. Page ☐
14. If I exclude myself, can I get a payment from this settlement?
15. If I do not exclude myself, can I sue Systems East for the same thing later?
16. How do I exclude myself from the settlement?

**THE LAWYERS REPRESENTING YOU**……………………………………………. Page ☐
17. Do I have a lawyer in this case?
18. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**……………………………………………. Page ☐
19. How do I tell the Court that I do not like the settlement?
20. What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING**……………………………………………. Page ☐
21. When and where will the Court decide whether to approve the settlement?
22. Do I have to attend the hearing?
23. May I speak at the hearing?

**IF YOU DO NOTHING**……………………………………………………. Page ☐
24. What happens if I do nothing?

**GETTING MORE INFORMATION**……………………………………………….. Page ☐
25. How do I get more information?

Questions? Call 1-###-###-#### or visit www.[website URL].com.

# BASIC INFORMATION

| **1. Why was this Notice issued?** |
| --- |

The Court authorized this notice because you have a right to know about the proposed settlement in this class action lawsuit and about all of your options before the Court decides whether to give "final approval" to the settlement. This notice explains the legal rights and options that you may exercise before the Court decides whether to approve the settlement.

This matter involves a lawsuit styled *Boudreaux, et al. v. Systems East, Inc.*, in the United States District Court for the Northern District of New York, Case No. 5:23-cv-01498-DNH-ML. The persons who sued are called the Plaintiffs. Systems East is called the Defendant.

| **2. What is this lawsuit about?** |
| --- |

The lawsuit claims that Systems East was responsible for allowing the Security Incident to occur, and asserts claims for negligence, negligence per se, breach of implied contract, unjust enrichment, and declaratory judgment. The lawsuit seeks compensation for people to whom Systems East sent notice of the Security Incident.

Systems East denies all of the Plaintiffs' claims and maintains it did not do anything wrong and that the potential exposure of data did not cause harm to any individuals.

| **3. Why is this lawsuit a class action?** |
| --- |

In a class action, a small number of persons are called the "Representative Plaintiffs" and sue on behalf of all people who have similar claims. All of these people together are the "Class" or "Class Members." In this case, the Representative Plaintiffs are Angie Boudreaux and Barbara Williams. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

| **4. Why is there a settlement?** |
| --- |

By agreeing to settle, both sides avoid the cost and risk of a trial, and people who submit valid timely claims will get compensation. The Representative Plaintiffs and their attorneys believe the settlement is fair, reasonable, and adequate and, thus, best for the Settlement Class and its members. The settlement does NOT mean that Systems East did anything wrong.

# WHO IS IN THE SETTLEMENT?

| **5. How do I know if I am included in the settlement?** |
| --- |

You are included in the Settlement Class if Systems East sent you notice of the Security Incident that it announced on or around November 16, 2023.

Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Litigation, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons

who timely and validly request exclusion from and/or opt-out of the Settlement Class and their successors and assigns; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Security Incident or who pleads nolo contendere to any such charge.

| **6.  What if I am not sure whether I am included in the settlement?** |
|---|

If you are not sure whether you are included in the settlement, you may call 1-XXX-XXX-XXXX with questions or visit [WEBSITE]. You may also write with questions to Systems East Settlement Administrator, P.O. Box XXXX, City, State, Zip Code. Please do not contact the Court with questions.

# THE SETTLEMENT BENEFITS

| **7.  What does the settlement provide?** |
|---|

The settlement will provide cash payments to people who submit valid and timely claims.

There are two alternative types of payments that are available to Settlement Class Members:

(1) A cash payment of $75.00, subject to a *pro rata* increase or decrease, depending upon the number and amount of claims filed (Question 9); or

(2) Reimbursement of up to $8,000.00 for out-of-pocket losses fairly traceable to the Security Incident (instead of the approximately $75.00 cash payment) (Question 8).

You must provide proof of your Settlement Class membership when filing a claim by providing the unique Notice ID and Confirmation Code on the postcard notice you received. If for some reason you did not receive this information, but believe you are a Settlement Class Member, please call 1-XXX-XXX-XXXX to verify your identity and receive further information on how to file a claim.

If you provide a bill or payment card statement as part of required proof for any part of your claim, you may redact unrelated transactions and all but the last four digits of any account number. In order to claim each type of payment, you must provide related documentation with the Claim Form, and the expense for which you are submitting a claim cannot have been reimbursed through any other source.

In addition, as part of the settlement, Systems East has agreed to pay for, implement and continue specified information security measures. More details are provided in the Settlement Agreement, which is available at [WEBSITE].

| **8.  What payments are available for individuals who incurred out-of-pocket losses fairly traceable to the Security Incident?** |
|---|

Settlement Class Members who incurred out-of-pocket losses fairly traceable to the Security Incident may make a claim for up to $8,000.00 per Settlement Class Member. This payment is subject to *pro rata* decrease depending upon the number and amount of valid claims submitted.

Questions? Call 1-###-###-#### or visit  www.[website URL].com.

-5-

Out-of-pocket losses are unreimbursed costs or expenditures incurred by a Settlement Class Member that were incurred after August 25, 2023 as result of the Security Incident, and may include, without limitation, the following:

- the unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information;
- costs associated with accessing or freezing/unfreezing credit reports with any credit reporting agency;
- other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and
- credit monitoring or other mitigative costs.

**9.  What payments are available for individuals who would prefer a cash payment in lieu of making a claim for reimbursement of out-of-pocket losses?**

Class Members may elect to receive a cash payment of $75.00 in lieu of making a claim for reimbursement of out-of-pocket losses. This cash payment is subject to *pro rata* increase or decrease, depending upon the number and amount of valid claims submitted.

## HOW TO GET BENEFITS

**10.  How do I get benefits?**

To ask for a payment you must complete and submit a Claim Form. Claim Forms are available at [WEBSITE], or you may request one be sent to you by mail by calling [PHONE #]. Read the instructions carefully, fill out the Claim Form, and submit it online at [WEBSITE] or mail it postmarked no later than **Month Day,** 2024 to:

Systems East Security Incident Settlement,
c/o Angeion Group
PO Box XXXXX
City, State zip code

**11.  How will claims be decided?**

The Settlement Administrator will decide in its professional judgment whether the information provided on a Claim Form is complete, timely and valid. The Settlement Administrator may require additional information and request it from any claimant. If the required information is not timely provided, the claim will be considered invalid and will not be paid.

## REMAINING IN THE SETTLEMENT

**12.  Do I need to do anything to remain in the settlement?**

You do not have to do anything to remain in the settlement, but if you want a payment you must submit a Claim Form postmarked by **Month Day,** 2024.

Questions? Call 1-###-###-#### or visit  www.[website URL].com.

-6-

| **13.  What am I giving up as part of the settlement?** |
|---|

If the settlement becomes final, you will give up your right to sue for the claims being resolved by this settlement. The specific claims you are giving up are described in Section 6 of the Settlement Agreement. You will be "releasing" Systems East and all related people or entities as described in Sections 1.23 and 1.24 of the Settlement Agreement. The Settlement Agreement is available at [WEBSITE].

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully. If you have any questions you can talk to one of the attorneys listed in Question 17 for free, or you can, of course, talk to your own lawyer at your own expense if you have questions about what this means.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this settlement, but you want to keep the right to sue Systems East about issues in this case, then you must take steps to get out of the Settlement Class. This is called excluding yourself from – or is sometimes referred to as "opting out" of – the Settlement Class.

| **14.  If I exclude myself, can I get a payment from this settlement?** |
|---|

No. If you exclude yourself, you will not be entitled to any benefits of the settlement, but you will not be bound by any judgment in this case.

| **15.  If I do not exclude myself, can I sue Systems East for the same thing later?** |
|---|

No. Unless you exclude yourself, you give up any right to sue for the claims that this settlement resolves. You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case. If you exclude yourself, do not submit a Claim Form to ask for a payment.

| **16.  How do I exclude myself from the settlement?** |
|---|

To exclude yourself, send a letter that says you want to be excluded from the settlement in the lawsuit styled *Boudreaux, et al. v. Systems East, Inc.*, Case No. 5:23-cv-01498-DNH-ML (N.D.N.Y.).  Include your name, address, and signature. You must mail your Exclusion Request postmarked by **Month Day**, 2024, to:

Systems East Settlement Exclusions

c/o Angeion Group

PO Box XXXXX

City, State zip code

Questions? Call 1-###-###-#### or visit  www.[website URL].com.

-7-

# THE LAWYERS REPRESENTING YOU

| **17. Do I have a lawyer in this case?** |
| --- |

Yes. The Court appointed the following lawyers as "Class Counsel": Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP, 750 B Street, Suite 1820, San Diego, CA, 92101, (619) 239-4599; M. Anderson Berry of Clayeo C. Arnold, A Professional Corporation, 865 Howe Ave., Sacramento, CA, 95825, (916) 239-4778; and Mason A. Barney of Siri & Glimstad LLP, 745 Fifth Avenue, Suite 500, New York, NY, 10151, (212) 532-1091.

You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| **18. How will the lawyers be paid?** |
| --- |

Class Counsel will request the Court's approval of an award for attorneys' fees of up to $333,333.33 and reasonable costs and expenses of up to $15,000.00. Class Counsel will also request approval of service awards of $2,000 for each of the two Representative Plaintiffs. Any amount that the Court awards for attorneys' fees, costs, expenses, and service awards will be paid from the settlement fund.

# OBJECTING TO THE SETTLEMENT

| **19. How do I tell the Court that I do not like the settlement?** |
| --- |

You can object to the settlement if you do not like it or some part of it. The Court will consider your views. To do so, you must **file** a written objection with the Clerk of the Court, at the address below, in this case, *Boudreaux, et al. v. Systems East, Inc.*, in the United States District Court for the Northern District of New York, 5:23-cv-01498-DNH-ML.

Your objection must include all of the following:

- the name and case number of this Litigation;

- your full name, address, telephone number, and e-mail address (if any);

- information identifying you as a Settlement Class Member, including proof that you are a member of the Settlement Class, which is described in response to Question 5 (examples include the notice of this settlement you received by mail or notice of the Security Incident you received from Systems East);

- a written statement of all grounds for the objection, accompanied by any legal support for the objection that you believe is applicable;

- the identity of all counsel representing you, if any, in connection with your objection;

- a statement confirming whether you intend to personally appear and/or testify at the Final Fairness Hearing;

- a statement identifying all class action settlements you and your attorney, if applicable, objected to in the previous 5 years; and

- your signature or the signature of your duly authorized attorney or other duly authorized representative, if any, along with documentation setting forth such representation.

To be timely, your objection must be electronically **filed** with the Clerk of the Court no later than **Month Day, 2024**, or mailed first-class postage prepaid to the Clerk of the Court for the United States District Court for the Northern District of New York at the address below, postmarked no later than **Month Day, 2024**.

In addition, you must serve Class Counsel and Defense Counsel through the Court's electronic filing system (if filed electronically) or via U.S. Mail (if mailed to the Clerk of Court), postmarked no later than **Month Day, 2024**:

| Court | Class Counsel | Systems East's Counsel |
|---|---|---|
| Clerk of the Court<br>United States District Court for the Northern District of New York<br>Alexander Pirnie Federal Building & U.S. Courthouse<br>10 Broad Street<br>Utica, NY 13501 | RACHELE R. BYRD<br>**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**<br>750 B Street, Suite 1820<br>San Diego, California<br><br>M. ANDERSON BERRY<br>**CLAYEO C. ARNOLD, A PROFESSIONAL CORP.**<br>865 Howe Avenue<br>Sacramento, CA 95825<br><br>MASON A. BARNEY<br>**SIRI & GLIMSTAD LLP**<br>745 Fifth Avenue, Suite 500<br>New York, New York 10151 | Daniel M. Braude<br>**MULLEN COUGHLIN LLC**<br>411 Theodore Fremd Avenue<br>Suite 206S<br>Rye, NY 10580 |

| **20.  What is the difference between objecting and asking to be excluded?** |
|---|

Objecting is telling the Court that you do not like the settlement and why you do not think it should be approved. You can object only if you do not exclude yourself from the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

| **21.  When and where will the Court decide whether to approve the settlement?** |
|---|

The Court will hold a Final Fairness Hearing at **__:___** on **Month Day, 2024**, at the U.S. District Court, Northern District of New York, Binghamton U.S. Courthouse, 15 Henry St., Binghamton, NY 13901, Courtroom 2, 4th Floor (or by Zoom if the Court so orders) to consider whether the

settlement is fair, reasonable, and adequate. If there are timely objections, the Court will consider them and will listen to people who have asked to speak at the hearing if such a request has been properly made. The Court will also rule on the request for an award of attorneys' fees and reasonable costs and expenses, as well as the request for service awards for the Representative Plaintiffs. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check the settlement website at [WEBSITE].

| **22. Do I have to attend the hearing?** |
| --- |

No. Class Counsel will present the Settlement Agreement to the Court. You or your own lawyer are welcome to attend at your expense, but you are not required to do so. If you send an objection, you do not have to come to the Court to talk about it. As long as you filed your written objection on time with the Court and served it according to the instructions provided in Question 19, the Court will consider it.

| **23. May I speak at the hearing?** |
| --- |

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must file an objection according to the instructions in Question 19, including all the information required therein. Your Objection must be **_filed_** with the Clerk of Court for the United States District Court for the Northern District of New York by e-filing it or mailing it on or postmarked no later than **Month Day,** 2024. In addition, you must serve a copy of your objection on both Class Counsel and Defense Counsel listed in Question 19, either through the Court's ECF filing and notification system or by mail, postmarked no later than **Month Day,** 2024.

## IF YOU DO NOTHING

| **24. What happens if I do nothing?** |
| --- |

If you do nothing, you will get no benefits from this settlement. Unless you exclude yourself, after the settlement is granted final approval and the judgment becomes final, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit about the legal issues in this case ever again against Systems East or any related people or entities as described in Sections 1.23, 1.24 and 6 of the Settlement Agreement. The Settlement Agreement is available at [WEBSITE].

## GETTING MORE INFORMATION

| **25. How do I get more information?** |
| --- |

This Notice summarizes the proposed settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement at [WEBSITE]. You may also write with questions to Systems East Settlement Administration, c/o Angeion Group, P.O. Box XXXXX, City, State Zip. You can also get a Claim Form at the website, [WEBSITE], or by calling the toll-free number, [PHONE].

Questions? Call 1-###-###-#### or visit  www.[website URL].com.

-10-

**EXHIBIT D**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANGIE BOUDREAUX and BARBARA WILLIAMS, on behalf of themselves and all others similarly situated, <br><br> **Plaintiffs,** <br><br> v. <br><br> **SYSTEMS EAST, INC.,** <br><br> **Defendant.** | Lead Case No. 5:23-cv-01498-DNH-ML |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. __), the terms of which are set forth in a Settlement Agreement with accompanying exhibits, attached as Exhibit A to Plaintiffs' motion (the "Settlement Agreement").[1] Having fully considered the issue, the Court hereby GRANTS the motion and orders as follows:

1.    **Class Certification for Settlement Purposes Only**. The Settlement Agreement provides for: (i) a Settlement Class consisting of individuals to whom Defendant Systems East, Inc. ("Systems East") sent notice of a data security incident on or around November 16, 2023 that Defendant experienced on or about August 25, 2023, defined as follows:

Settlement Class: All individuals to whom Systems East sent notice of the data security incident.

Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Litigation, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons

---

[1] All capitalized terms herein have the same definitions as set forth in the Settlement Agreement and are incorporated by reference, unless otherwise set forth in this Order.

who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the data security incident or who pleads nolo contendere to any such charge.

Pursuant to Federal Rules of Civil Procedure 23(e)(1), the Court finds that giving notice is justified. The Court finds that it will likely be able to approve the proposed Settlement as fair, reasonable, and adequate. The Court also finds that it will likely be able to certify the Settlement Class for the sole purpose of judgment on the settlement because it meets all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(3). Specifically, the Court finds for settlement purposes only that: a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; b) there are issues of law and fact that are common to the Settlement Class; c) the claims of the Representative Plaintiffs are typical of and arise from the same operative facts and seek similar relief as the claims of the Settlement Class Members; d) the Representative Plaintiffs will fairly and adequately protect the interests of the Settlement Class as the Representative Plaintiffs have no interests antagonistic to or in conflict with the Settlement Class Members and have retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class; e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy.

2. **Class Representatives and Class Counsel**. The Court finds that the Representative Plaintiffs will likely satisfy the requirements of Rule 23(e)(2)(A) and be appointed

as the Class Representatives. Additionally, the Court finds that the proposed Class Counsel, Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP, 750 B Street, Suite 1820, San Diego, CA, 92101, (619) 239-4599; M. Anderson Berry of Clayeo C. Arnold, A Professional Corporation, 865 Howe Ave., Sacramento, CA 95825, (916) 239-4778; and Mason A. Barney of Siri & Glimstad LLP, 745 Fifth Avenue, Suite 500, New York, NY, 10151, (212) 532-1091 will likely satisfy the requirements of Rule 23(e)(2)(A) and are appointed as Class Counsel pursuant to Rule 23(g)(1).

3.  **Preliminary Settlement Approval.** Upon preliminary review, the Court finds the settlement is fair, reasonable, and adequate to warrant providing notice of the settlement to the Settlement Class and accordingly it is preliminarily approved. In making this determination, the Court has considered the benefits to the Settlement Class, the specific risks faced by the Settlement Class in prevailing on Plaintiffs' claims, the stage of the proceedings at which the settlement was reached, the effectiveness of the proposed method for distributing relief to the Settlement Class Members, the proposed manner of allocating benefits to Settlement Class Members, and all of the other factors required by Rule 23.

4.  **Jurisdiction.** The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), and personal jurisdiction over the Parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1).

5.  **Final Fairness Hearing**. A Final Fairness Hearing shall be held on _____ _____, 2024, at _____ [via telephone or videoconference or in-person] at the U.S. District Court, Northern District of New York, Binghamton U.S. Courthouse, 15 Henry St., Binghamton, NY 13901, Courtroom 2, 4th Floor, to determine, among other things, whether: (a) this matter should be finally certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a)

3

and (b)(3); (b) the settlement should be approved as fair, reasonable and adequate, and finally approved pursuant to Fed. R. Civ. P. 23(e); (c) this action should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d) Settlement Class Members should be bound by the releases set forth in the Settlement Agreement; (e) the application of Class Counsel for an award of attorneys' fees, costs, and expenses should be approved pursuant to Fed. R. Civ. P. 23(h); and (f) the application of the Class Representatives for service awards should be approved.

6. **Claims Administrator**. The Court appoints Angeion Group as the Claims Administrator, with responsibility for class notice and claims administration. The Claims Administrator is directed to perform all tasks the Settlement Agreement reasonably requires in effectuating the Notice, Notice Program, and Claims Administration. The Claims Administrator's fees will be paid out of the Settlement Fund pursuant to the Settlement Agreement.

7. **Notice**. The proposed method for providing notice set forth in the Settlement Agreement and the Claim Form, Short Form Notice, and Long Form Notice attached to the Settlement Agreement as Exhibits A, B, and C, respectively, are hereby approved. Non-material modifications to these Exhibits may be made with approval by the Parties but without further order of the Court.

8. **Findings Concerning Notice**. The Court finds that the proposed form, content, and method of giving notice to the Settlement Class as described in the Settlement Agreement and exhibits: (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement, including but not limited to their rights to object to or exclude themselves from the proposed settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and

4

constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including Federal Rule of Civil Procedure 23(c) and (e), and the Due Process Clause of the United States Constitution. The Court further finds that the Notice is written in plain language, uses simple terminology, and is designed to be readily understandable by class members.

The Claims Administrator is directed to carry out the Notice Program in conformance with the Settlement Agreement.

**Exclusion from Class**. Any Settlement Class Member who wishes to be excluded from the Settlement Class must mail a written request for exclusion to the Claims Administrator at the address and in the manner and within the time provided in the Notice. Such requests for exclusion must meet the opt-out deadline established by this Order and stated in the Notice. Any member of the Settlement Class who does not properly and timely opt-out of the settlement shall, upon entry of the Final Approval Order and Judgment, be bound by all the terms and provisions of the Settlement Agreement, whether or not such Settlement Class Member objected to the settlement and whether or not such Settlement Class Member received consideration under the Settlement Agreement.

A request for exclusion must be in writing and: (a) state the name of this proceeding (styled *Boudreaux, et al. v. Systems East, Inc.*, No. 5:23-cv-01498-DNH-ML (N.D.N.Y.), or similar identifying words (such as "Systems East Security Incident Lawsuit, No. 5:23-cv-01498"); (b) state the name and address of the Settlement Class Member seeking exclusion; (c) state "Request for Exclusion" or words communicating the person's request for exclusion from the Settlement Class; and (d) must be signed by the Settlement Class Member.

A request for exclusion that does not include the foregoing information, or that is sent to

an address other than the one designated in the Notice, or that is not postmarked by the Opt-Out Date shall be invalid and the Settlement Class Member serving such a request shall, if the Final Approval Order and Judgment is entered, be considered a Settlement Class Member and shall be bound by any judgment entered herein with respect to the Settlement Class.

The Claims Administrator shall forward a list of all requests for exclusion to Class Counsel and to Defendant's Counsel within 7 days of the Opt-Out Date.

If the Final Approval Order and Judgment is entered, any Settlement Class Member who has not submitted a timely, valid written request for exclusion from the Settlement Class shall be bound by all subsequent proceedings, orders, and judgments in this action, including but not limited to the Release set forth in the Final Approval Order and Judgment. Settlement Class Members who submit valid and timely requests for exclusion shall not be entitled to receive any benefits from the settlement.

Upon entry of the Final Approval Order and Judgment all members of the Settlement Class who have not personally, validly, and timely requested to be excluded from the Settlement Class will be enjoined from proceeding against Systems East and the Related Entities under the Settlement Agreement with respect to the Release Claims.

9.    **<u>Objections and Appearances</u>**. Any Settlement Class Member who does not elect to be excluded from the Settlement Class may object to the Settlement, Class Counsel's request for fees and expenses, and/or the request for service award payments to the Representative Plaintiffs; provided, however, that no Settlement Class Member shall be heard or entitled to contest such matters, unless the objection is: (a) electronically filed by the Objection Date; or (b) mailed first-class postage prepaid to the Clerk of Court, at the address listed in the Notice, and postmarked by no later than the Objection Date, as specified in the Notice. For the objection to be considered

by the Court, the objection must be in writing and include:

(a)    the name or caption of this Litigation;

(b)    the objector's full name, address, telephone number, and e-mail address (if any);

(c)    information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class;

(d)    a written statement of all grounds for the objection, accompanied by any legal support for the objection that the objector believes is applicable;

(e)    the identity of all counsel representing the objector, if any, in connection with the objection;

(f)    a statement confirming whether the objector and/or the objector's counsel will appear and/or testify at the Final Fairness Hearing;

(g)    a statement identifying all class action settlements objected to by the objector and his/her attorney, if applicable, in the previous 5 years; and

(h)    the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative, if any.

Any Settlement Class Member who fails to comply with the provisions in this Order and/or fails to timely file and serve an objection in writing in accordance with this Order and the Settlement Agreement will waive and forfeit any and all rights they may have to object, will have their objection stricken from the record, and will lose their rights to appeal from approval of the Settlement. Any such Settlement Class Member also shall be bound by all subsequent proceedings, orders, and judgments in this action, including but not limited to the Release set forth in the Final Approval Order and Judgment if entered.

10.    **Claims Process**. The Settlement Agreement contemplates the establishment of a claims process. As set forth in the Settlement Agreement, Systems East shall fund a non-reversionary cash settlement fund in the amount of $1,000,000 for the benefit of Settlement Class Members (the "Settlement Fund"). The Settlement Fund will be used to pay for: (1) reimbursement for Out-of-Pocket Losses; (2) Alternative Cash Payments; (3) notice and administration costs; (4) service award payments approved by the Court; and (5) attorneys' fees and expenses awarded by the Court. The Court preliminarily approves this process and directs the Claims Administrator to

make the Claim Form or its substantial equivalent available to Settlement Class Members in the manner specified in the Notice.

The Claims Administrator will be responsible for effectuating the claims process.

Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Notice and the Claim Form. If the Final Approval Order and Judgment is entered, all Settlement Class Members who qualify for any benefit under the settlement but fail to submit a claim in accordance with the requirements and procedures specified in the Notice and the Claim Form shall be forever barred from receiving any such benefit, but will in all other respects by subject to and bound by the provisions in the Final Approval Order and Judgment, including the release of any and all claims against Systems East and the Related Entities concerning and/or deriving from the data security incident.

11.    **Termination of Settlement**. This Order, the Settlement Agreement, the proposed settlement, and all related proceedings shall become null and void, shall have no further force or effect, and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before the Settlement Agreement was signed, if: a) the settlement is not finally approved by the Court; b) the Settlement Agreement and the proposed settlement are terminated in accordance with the applicable provisions of the Settlement Agreement; or c) there is no Effective Date. In such event, the settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the settlement shall be used or referred to for any purpose whatsoever, including but not limited to arguments that the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are or ever were satisfied for purposes of this Litigation. The Litigation shall thereupon revert forthwith to its respective procedural and

substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

12.    **Use of Order**. This Order shall be of no force or effect if the Final Approval Order and Judgment is not entered or there is no Effective Date. Neither this Order nor the Settlement Agreement nor any other settlement-related document nor anything contained herein or therein or contemplated hereby or thereby nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other settlement-related document, shall constitute, be construed or used as an admission, concession, or declaration by or against Defendant of any fault, wrongdoing, breach, or liability for any claim that has been or could have been asserted against it or as to any liability by it as to any matter set forth in this Order, or as to the propriety of class certification for any purposes other than for purposes of the current proposed settlement. Nor shall this Order be construed or used as an admission, concession, or declaration by or against the Representative Plaintiffs or any other Settlement Class Member that his or her claims lacks merit or that the relief requested is inappropriate, improper, or unavailable, or as a waiver by any Party of any defense or claims they may have in this Litigation or in any other lawsuit.

13.    **Continuance of Hearing**. The Court reserves the right to adjourn or continue the Final Fairness Hearing and related deadlines without further written notice to the Settlement Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Claims Administrator. The Court may approve the Settlement, with such modifications as may be agreed upon by the Parties, if appropriate, without further notice to the Settlement Class.

14.    **Schedule and Deadlines**. The Court orders the following schedule of dates for the specified actions/further proceedings:

| Event | Timing |
|-------|--------|
| Deadline to provide notice to State Attorneys General or others as required by 28 U.S.C. § 1715(b), which shall be coordinated and funded by counsel for Representative Plaintiffs | 10 days after filing of the Motion for Preliminary Approval |
| Deadline for Defendant to provide Settlement Class List to Claims Administrator pursuant to the Settlement Agreement | 7 days after entry of this Order |
| Notice Program Commencement ("Class Notice Date") | 30 days after entry of this Order |
| Notice Program Completion | 60 days after entry of this Order |
| Deadline for Class Counsel to file motion for attorneys' fees, costs, expenses and service awards | 14 days before Objection Deadline and Opt-Out Deadline |
| Objection Deadline | 60 days after the Class Notice Date |
| Opt-Out Deadline | 60 days after the Class Notice Date |
| Claims Deadline | 60 days after the Class Notice Date |
| Deadline for Plaintiffs to file motion for final approval of settlement and responses to any timely submitted Settlement Class Member objections, which shall include a declaration from the Claims Administrator confirming execution of and compliance with its obligations in the Settlement Agreement as of the date of the declaration and identifying all Settlement Class Members who submitted timely requests for exclusion | 21 days prior to Final Fairness Hearing |
| Final Fairness Hearing | _____, 2024 at __: __ _.m. in Courtroom ____<br>[No earlier than (i) 100 days after Defendant notifies the appropriate government officials pursuant to Class Action Fairness Act, 28 U.S.C. § 1715(d) or (ii) 60 days after the Claims Deadline, whichever is later] |

**DONE AND ORDERED** in Utica, New York on this _____ day of _____, 2024.

_____

**HON. DAVID N. HURD**
**UNITED STATES DISTRICT JUDGE**

**EXHIBIT E**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANGIE BOUDREAUX and BARBARA WILLIAMS, on behalf of themselves** **and all others similarly situated,** **Plaintiffs,** **v.** **SYSTEMS EAST, INC.,** **Defendant.** | Lead Case No. 5:23-cv-01498-DNH-ML |

**[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT**

Before the Court are Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement (the "Final Approval Motion")[1] (ECF No. ___), and Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, Expenses, and Service Awards (the "Fees, Costs, and Service Awards Motion") (ECF No. ___).  Having fully considered the issues, the Court hereby **GRANTS** both the Final Approval Motion and the Fees, Costs, and Service Awards Motion and orders as follows:

Pursuant to the notice requirements set forth in the Settlement Agreement and in the Court's Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), the Settlement Class was notified of the terms of the proposed Settlement, of the right of members of the Settlement Class to opt-out or object, and of

---

[1] The terms of the settlement are set forth in a Settlement Agreement with accompanying exhibits attached as Exhibit A to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. ___) (the "Settlement").

the right of members of the Settlement Class to be heard at a Final Fairness Hearing to determine, *inter alia*: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release of the claims contemplated by the Settlement Agreement; and (2) whether judgment should be entered dismissing this Litigation with prejudice.

A Final Fairness Hearing was held on \_\_\_\_\_. Prior to the Final Fairness Hearing, on \_\_\_\_\_, Plaintiffs filed the Fees, Costs, and Service Awards Motion, and on \_\_\_\_\_, Plaintiffs filed the Final Approval Motion.  Counsel for the parties appeared and presented arguments in support of final approval of the settlement.

Having heard the presentation of Class Counsel and Defendant's counsel, having reviewed all of the submissions presented with respect to the proposed settlement, having considered the Fees, Costs, and Service Awards Motion and the Final Approval Motion, and having reviewed the materials in support thereof, for the reasons stated on the record during the Final Fairness Hearing and for good cause appearing,

**IT IS HEREBY ORDERED** that:

1.    The Final Approval Motion and the Fees, Costs, and Service Awards Motion are **GRANTED** as stated herein.

2.    The Settlement, including the exhibits attached thereto, is approved as fair, reasonable, and adequate, in accordance with Rule 23(e) of the Federal Rules of Civil Procedure. This Final Approval Order and Judgment incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used herein shall have the same meaning as set forth in the Settlement Agreement unless otherwise set forth in this Order.

3.    Jurisdiction: The Court has jurisdiction over the subject matter of this Action and over all claims raised therein and all parties thereto, including the Settlement Class.

4.     The Settlement is Fair, Reasonable, and Adequate: The Court finds that the Settlement was entered into by the parties for the purpose of settling and compromising disputed claims, and is fair, reasonable, and adequate, and in the best interests of all those affected by it. The Settlement Agreement was entered in good faith following informed, arm's-length negotiations conducted by experienced counsel with the assistance of a well-respected mediator and is non-collusive.

5.     Class Certification for Settlement Purposes Only: For purposes of the Settlement only, the Court finds and determines that the Litigation may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and that: (a) the Settlement Class certified herein is sufficiently numerous, as it includes approximately 209,328 people, and joinder of all such persons would be impracticable; (b) there are questions of law and fact that are common to the Settlement Class, and those questions of law and fact common to the Settlement Class predominate over any questions affecting any individual Settlement Class Member; (c) the claims of the Representative Plaintiffs are typical of the claims of the Settlement Class they seek to represent for purposes of settlement; (d) a class action on behalf of the Settlement Class is superior to other available means of adjudicating this dispute; and (e) as set forth below, the Representative Plaintiffs and Class Counsel are adequate representatives of the Settlement Class. The proposed Class satisfies all of Rule 23's requirements, so the Court will certify the Settlement Class. Defendant retains all rights to assert that this action may not be certified as a class action, other than for settlement purposes.

6.     Class Definition: The Court hereby certifies, for settlement purposes only, a Settlement Class defined as:

> All individuals to whom Systems East sent notice of the data security incident.

7.    Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Litigation, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Security Incident or who pleads nolo contendere to any such charge.

8.    Class Notice: The approved Notice Program provided for a copy of the Short Form Notice be mailed to all members of the Settlement Class who have been identified by Defendant through its records with a mailing address, and additional notice via the Long Form Notice posted on the Settlement Website for those whose mailing addresses were not available within Defendant's records. For mailed notices returned with a forwarding address, the Claims Administrator mailed Short Form Notices to the forwarding addresses. The Claims Administrator maintained the Settlement Website, which provided information about the Settlement, including copies of relevant Court documents, the Settlement Agreement, the Long Form Notice, and the Claim Form. The Claims Administrator also maintained a toll-free help line for Settlement Class Members to call with settlement-related inquiries, with the option to leave a message and request a call back and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries.

9.    Findings Concerning Notice: The Court finds and determines that the Notice Program constitutes the best notice practicable under the circumstances, constitutes due and sufficient notice of the matters set forth in the notices to all persons entitled to receive such notices,

and fully satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and all other applicable laws and rules. The Notice Program involved direct notice via mail and the Settlement Website providing details of the Settlement, including the benefits available, how to exclude or object to the Settlement, when the Final Fairness Hearing would be held, and how to inquire further about details of the Settlement. The Court further finds that all of the notices are written in plain language and are readily understandable by Settlement Class Members. The Court further finds that notice has been provided to the appropriate state and federal officials in accordance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, drawing no objections.

10.    Appointment of Class Representatives: The Court appoints Plaintiffs Angie Boudreaux and Barbara Williams as Class Representatives of the Settlement Class pursuant to Federal Rule of Civil Procedure 23(a).

11.    Appointment of Class Counsel: The Court appoints Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP; M. Anderson Berry of Clayeo C. Arnold, A Professional Corp.; and Mason A. Barney of Siri & Glimstad LLP as Class Counsel.

12.    Exclusion from Class: Any person falling within the definition of the Settlement Class had the opportunity, upon request, to be excluded or "opt out" from the Class. [No one opted to be excluded from the Settlement OR The ___ person(s) who opted to be excluded from the Settlement shall have no rights under the Settlement, shall not share in the distribution of the Settlement Benefits, and shall not be bound by the Settlement or any final judgment entered in this Action.]

13.    Objections and Appearances: Any Class Member had the opportunity to enter an appearance in the Litigation, individually or through counsel of their own choice. Any Class

Member also had the opportunity to object to the Settlement and the attorneys' fees and expenses award and to appear at the Final Fairness Hearing and show cause, if any, why the settlement should not be approved as fair, reasonable, and adequate to the Settlement Class, why a final judgment should not be entered thereon, why the settlement should not be approved, or why the attorneys' fees and expenses award should not be granted, as set forth in the Court's Preliminary Approval Order. [There were no objections filed in this case to either the settlement or the attorneys' fees and expenses award OR The ___ objections that were filed are overruled]. Any Settlement Class Member who did not make their objections in the manner and by the date set forth in ¶ ___ of the Court's Preliminary Approval Order shall be deemed to have waived any objections and shall be forever barred from raising such objections in this or any other action or proceeding, absent further order by the Court.

14.    Release: Upon the entry of this Order, the Class Representatives and all Settlement Class Members, whether or not they have filed a Claim Form within the time provided, shall be permanently enjoined and barred from asserting any claims or causes of action against Systems East and the Related Entities based on, relating to, concerning, or arising from the data security incident and alleged potential exposure or misuse of Settlement Class Members' PII, and the Class Representatives and all Settlement Class Members conclusively shall be deemed to have fully, finally, and forever released any and all such Released Claims.

15.    Attorneys' Fees and Costs: Class Counsel moved for an award of attorneys' fees of $333,333.33 and litigation expenses of $_____, which Defendant did not oppose. The Court finds that Class Counsel's request for attorneys' fees and costs is fair and reasonable, particularly in light of the results achieved through this Litigation as well as the contingent nature of the fee award. Accordingly, Class Counsel are awarded attorneys' fees of $333,333.33 and litigation costs

in the amount of $15,000. These amounts shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

16.    Service Awards: Plaintiffs moved for service awards in the amount of $2,000 to each of the Representative Plaintiffs, which Defendant did not oppose. The Court finds that Plaintiffs' requests for service awards are fair and reasonable, particularly in light of the results obtained for the Settlement Class as a direct result of the Representative Plaintiffs' willingness to act as Class Representatives and assist Class Counsel in this Litigation. Accordingly, Representative Plaintiffs are each awarded a service award in the amount of $2,000. These amounts shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

17.    Payment to Settlement Class Members: The Claims Administrator shall make all required payments from the Settlement Fund in accordance with the amounts and the times set forth in the Settlement Agreement, including all payments to Settlement Class Members who submitted an approved claim, for the attorneys' fees and costs, for the service awards, and for all settlement administration costs.

18.    Funds Held by Claims Administrator: All funds held by the Claims Administrator shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed pursuant to the Settlement or further order of the Court.

19.    Dismissal with Prejudice: The above-captioned Action is hereby **DISMISSED WITH PREJUDICE**. Except as otherwise provided in this Final Approval Order and Judgment, the parties shall bear their own costs and attorneys' fees. Without affecting the finality of the Judgment hereby entered, the Court reserves jurisdiction over the implementation of the Settlement, including enforcement and administration of the Settlement Agreement.

20.     Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement (ECF NO. __) and Unopposed Motion for Attorneys' Fees, Costs, Expenses, and Service Awards (ECF NO. __) are **GRANTED** and Final Judgment is hereby entered.

21.     The Clerk is directed to **CLOSE THIS CASE** and **TERMINATE** any pending motions as **MOOT**.

**DONE AND ORDERED** in Utica, New York on this _____ day of _____, _____.

_____
**HON. DAVID N. HURD**
**UNITED STATES DISTRICT JUDGE**

**EXHIBIT 2**



Providing Exemplary Legal Services Since 1888

FIRM RESUME

Founded in 1888, Wolf Haldenstein Adler Freeman & Herz LLP is a full service law firm specializing in complex litigation in federal and state courts nationwide. The firm's practice includes litigation, both hourly and contingent, in securities, antitrust, wage & hour, consumer fraud, false marketing, ERISA, and general and commercial matters, whistleblower, false claim, trust & estate, corporate investigation, and white collar matters, and FINRA arbitration. The Firm has a particular specialty in complex class action and other representative litigation – including investor, shareholder, antitrust, ERISA, consumer, employee, and biotechnology matters – under both federal and state law.

Wolf Haldenstein's total practice approach distinguishes it from other firms. Our longstanding tradition of a close attorney/client relationship ensures that each one of our clients receives prompt, individual attention and does not become lost in an institutional bureaucracy. Our team approach is at the very heart of Wolf Haldenstein's practice. All of our lawyers are readily available to all of our clients and to each other. The result of this approach is that we provide our clients with an efficient legal team having the broad perspective, expertise and experience required for any matter at hand. We are thus able to provide our clients with cost effective and thorough counsel focused on our clients' overall goals.

270 MADISON AVENUE
NEW YORK, NY 10016
TELEPHONE: 212-545-4600
TELECOPIER: 212-686-0114
WWW.WHAFH.COM

SYMPHONY TOWERS
750 B STREET, SUITE 1820
SAN DIEGO, CA 92101
TELEPHONE: 619-239-4599
TELECOPIER: 619-234-4599

111 WEST JACKSON
SUITE 1700
CHICAGO, IL 60604
TELEPHONE: 312-984-0000
TELECOPIER: 312-214-3110



## THE FIRM

Wolf Haldenstein has been recognized by state and federal courts throughout the country as being highly experienced in complex litigation, particularly with respect to securities, consumer, ERISA, FLSA and state overtime and expense deductions, and antitrust class actions and shareholder rights litigation.

Among its colleagues in the plaintiffs' bar, as well as among its adversaries in the defense bar, Wolf Haldenstein is known for the high ability of its attorneys, and the exceptionally high quality of its written and oral advocacy.

The nature of the Firm's activities in both individual and representative litigation is extremely broad.  In addition to a large case load of securities fraud and other investor class actions, Wolf Haldenstein has represented classes of corn and rice farmers in connection with the devaluation of their crops; canned tuna consumers for tuna companies' violations of antitrust laws; merchants compelled to accept certain types of debit cards; insurance policyholders for insurance companies' deceptive sales practices; victims of unlawful strip searches under the civil rights laws; and various cases involving violations of Internet users' on-line privacy rights.

The Firm's experience in class action securities litigation, in particular public shareholder rights under state law and securities fraud claims arising under the federal securities laws and regulations is particularly extensive.  The Firm was one of the lead or other primary counsel in securities class action cases that have recouped billions of dollars on behalf of investor classes, in stockholder rights class actions that have resulted in billions of dollars in increased merger consideration to shareholder classes, and in derivative litigation that has recovered billions of dollars for corporations.

Its pioneering efforts in difficult or unusual areas of securities or investor protection laws include: groundbreaking claims that have been successfully brought under the Investment Company Act of 1940 regarding fiduciary responsibilities of investment companies and their advisors toward their shareholders; claims under ERISA involving fiduciary duties of ERISA trustees who are also insiders in possession of adverse information regarding their fund's primary stockholdings; the fiduciary duties of the directors of Delaware corporations in connection with change of control transactions; the early application of the fraud-on-the-market theory to claims against public accounting firms in connection with their audits of publicly traded corporations; and the application of federal securities class certification standards to state law claims often thought to be beyond the reach of class action treatment.



Judicial Commendations

Wolf Haldenstein has repeatedly received favorable judicial recognition.  The following representative judicial comments over the past decade indicate the high regard in which the Firm is held:

- *In re Empire State Realty Trust, Inc. Investor Litig.*, No. 650607/2012  (Sup. Ct. N.Y. Co.) – On May 2, 2013, Justice O. Peter Sherwood praised the Firm in its role as chair of the committee of co-lead counsel as follows: "It is apparent to me, having presided over this case, that class counsel has performed in an excellent manner, and you have represented your clients quite well.  You should be complimented for that."   In awarding attorneys' fees, the Court stated that the fee was "intended to reward class counsel handsomely for the very good result achieved for the Class, assumption of the high risk of Plaintiffs prevailing and the efficiency of effort that resulted in the settlement of the case at an early stage without protracted motion practice." May 17, 2013 slip. op. at 5 (citations omitted).

- *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009) – On April 9, 2013, Justice Richard B. Lowe III praised the Firm's efforts as follows: "[W]hen you have challenging cases, the one thing you like to ask for is that the legal representation on both sides rise to that level.  Because when you have lawyers who are professionals, who are confident, who are experienced, each of you know that each side has a job to do [. . . .]  I want to tell you that I am very satisfied with your performance and with your, quite frankly, tenacity on both sides.  And it took six years, but look at the history of the litigation. There were two appeals all of the way to the Court of Appeals [. . . .]  And then look at the results.  I mean, there are dissents in the Court of Appeals, so that shows you the complexity of the issues that were presented in this litigation [. . . .]  [I]t shows you effort that went into this and the professionalism that was exhibited [. . . .]  So let me just again express my appreciation to both sides."

- *K.J. Egleston L.P. v. Heartland Industrial Partners, et al.*, 2:06-13555 (E.D. Mich.) – where the Firm was Lead Counsel, Judge Rosen, at the June 7, 2010 final approval hearing, praised the Firm for doing "an outstanding job of representing [its] clients," and further commented that "the conduct of all counsel in this case and the result they have achieved for all of the parties confirms that they deserve the national recognition they enjoy."



- *Klein, et al. v. Ryan Beck Holdings, Inc., et al.*, 06-cv-3460 (DAB) (S.D.N.Y. 2010) – where the Firm was Lead Counsel, Judge Deborah A. Batts described the Firm's successful establishment of a settlement fund as follows: "[a] miracle that there is a settlement fund at all." Judge Batts continued: "As I said earlier, there is no question that the litigation is complex and of a large and, if you will, *pioneering magnitude ...*" (Emphasis added).

- *Parker Friedland v. Iridium World Communications, Ltd.*, 99-1002 (D.D.C.) – where the Firm was co-lead counsel, Judge Laughrey said (on October 16, 2008), "[a]ll of the attorneys in this case have done an outstanding job, and I really appreciate the quality of work that we had in our chambers as a result of this case."

- *In re Dynamic Random Access Memory Antitrust Litigation*, MDL-02-1486 (N.D. Cal.) – where the Firm was co-lead counsel, Judge Hamilton said (on August 15, 2007), "I think I can conclude on the basis with my five years with you all, watching this litigation progress and seeing it wind to a conclusion, that the results are exceptional. The percentages, as you have outlined them, do put this [case] in one of the upper categories of results of this kind of [antitrust] class action. I am aware of the complexity . . . I thought that you all did an exceptionally good job of bringing to me only those matters that really required the Court's attention. You did an exceptionally good job at organizing and managing the case, assisting me in management of the case. There was excellent coordination between all the various different plaintiffs' counsel with your group and the other groups that are part of this litigation. . . . So my conclusion is the case was well litigated by both sides, well managed as well by both sides."

- *In re Comdisco Sec. Litigation*, 01 C 2110 (N.D. Ill. July 14, 2005) – Judge Milton Shadur observed: "It has to be said . . . that the efforts that have been extended [by Wolf Haldenstein] on behalf of the plaintiff class in the face of these obstacles have been exemplary. And in my view [Wolf Haldenstein] reflected the kind of professionalism that the critics of class actions . . . are never willing to recognize. . . . I really cannot speak too highly of the services rendered by class counsel in an extraordinary difficult situation."

- *Good Morning to You Productions Corp. v. Warner/Chappell Music, Inc.*, No. CV 13-04460-GHK (MRWx) (C.D. Cal., Aug. 16, 2016) – Judge George H. King



stated: "Not all, or perhaps even most, plaintiffs' class counsel could have litigated this case as successfully as did class counsel against such a fierce and exceptionally accomplished opponent."

- *Bokelman et al. v. FCH Enterprises, Inc.*, (Case No. 1:18-cv-209, D. Haw., May 3, 2019): Judge Robert J. Bryan said, "I've been impressed by the quality of the work you've done throughout here, and that is reflected, I think, in the fact that no one has objected to the settlement."

### Recent Noteworthy Results

Wolf Haldenstein's performance in representative litigation has repeatedly resulted in favorable results for its clients.  The Firm has helped recover **_billions of_** **_dollars_** on behalf of its clients in the cases listed below.  Recent examples include the following:

- On May 13, 2019, in *Apple Inc. v. Pepper*, No. 17-204, the Supreme Court affirmed a decision by the Ninth Circuit Court of Appeals holding that iPhone purchasers have standing to sue Apple for monopolizing the market for iPhone apps in this longstanding antitrust class action.  Wolf Haldenstein has been Lead Counsel for the plaintiffs since 2007. The case was commenced in federal district court in Oakland.  The Supreme Court's decision clears the way for the plaintiffs to proceed on the merits of their claim.

- On June 11, 2018, the United States Supreme Court issued a highly anticipated decision in *China Agritech, Inc. v. Michael H. Resh, et al.* Wolf Haldenstein represented the plaintiffs/respondents, having commenced the action on behalf of aggrieved shareholders of *China Agritech* after two prior cases had failed at the class certification stage.

- *In re Genetically Modified Rice Litigation*, MDL 1811 (E.D. Mo.) - Wolf Haldenstein represented U.S. rice farmers in this landmark action against Bayer A.G. and its global affiliates, achieving a global recovery of $750 million.  The case arose from the contamination of the nation's long grain rice crop by Bayer's experimental and unapproved genetically modified Liberty Link rice.

- *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009) - a class action brought on behalf of over 27,500 current and former tenants of New York City's iconic Stuyvesant Town and Peter Cooper Village housing complexes.  On April 9, 2013, Justice Richard B. Lowe III of the New York Supreme Court finally



approved settlement of the action, which totals over $173 million, sets aside $68.75 million in damages, re-regulates the apartments at issue, and sets preferential rents for the units that will save tenants significant monies in the future.  The settlement also enables the tenants to retain an estimated $105 million in rent savings they enjoyed between 2009 and 2012.  **The settlement is by many magnitudes the largest tenant settlement in United States history.**

- *In re Empire State Realty Trust, Inc. Investor Litig.,* Index No. 650607/2012 – The firm served as Chair of the Executive Committee of Co-Lead Counsel for the Plaintiffs in a class action settlement finally approved on May 2, 2013 that provides for the establishment of a $55 million settlement fund for investors, in addition to substantial tax deferral benefits estimated to be in excess of $100 million.

- *American International Group Consolidated Derivative Litigation*, Civil Action No. 769-VCS (Del. Ch.) The Firm acted as co-lead counsel and the settlement addressed claims alleging that the D&O Defendants breached their fiduciary duties to the Company and otherwise committed wrongdoing to the detriment of AIG in connection with various allegedly fraudulent schemes during the 1999-2005 time period.

- *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, Master File No. 09 MD 2058 (S.D.N.Y.) (firm was co-lead counsel in parallel derivative action pending in Delaware (*In Re Bank of America Stockholder Derivative Litigation*, C.A. No. 4307-CS (Del. Ch.)) (increase of settlement cash recovery from $20 million to $62.5 million).

- *The Investment Committee of the Manhattan and Bronx Service Transit Operating Authority Pension Plan v. JPMorgan Chase Bank,* N.A., 1:09-cv-04408-SAS (S.D.N.Y.) (class recovered $150 million).

- *In re Tremont Sec. Law, State Law and Insurance Litig.*, No. 08-civ-11117 (TPG) (SDNY) (class recovered $100 million).  The firm was court-appointed co-lead counsel in the Insurance Action, 08 Civ. 557, and represented a class of persons who purchased or otherwise acquired Variable Universal Life ("VUL") insurance policies or Deferred Variable Annuity ("DVA") policies issued by Tremont International Insurance Limited or Argus International Life Bermuda Limited from May 10, 1994 - December 11, 2008 to the extent the investment



accounts of those policies were exposed to the massive Ponzi scheme orchestrated by Bernard L. Madoff through one or more Rye funds.

- *In re Initial Public Offering Securities Litigation*, 21 MC 92 (SAS) (S.D.N.Y.) (class recovered $586 million). Wolf Haldenstein served as Co-Lead Counsel of one of the largest securities fraud cases in history. Despite the United States Court of Appeals for the Second Circuit's decision to vacate the district court's class certification decision, on remand, counsel for plaintiffs were able to press on to a settlement on April 1, 2009, ultimately recovering in excess of a half-billion dollars.



## FIRM PRACTICE AREAS

### CLASS ACTION LITIGATION

Wolf Haldenstein is a leader in class and derivative action litigation and is currently or has been the court-appointed lead counsel, co-lead counsel, or executive committee member in some of the largest and most significant class action and derivative action lawsuits in the United States.  For example, the class action *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009) was recently described by a sitting member of the U.S. House of Representatives as the greatest legal victory for tenants in her lifetime.  In *Roberts*, the Firm obtained a victory in the New York Court of Appeals requiring the reregulation of thousands of apartment units in the Stuyvesant Town complex in Manhattan, New York.  Many of the firm's other successful results are summarized within.

### PRIVATE ACTIONS FOR INSTITUTIONAL INVESTORS

In addition to its vast class action practice, the Firm also regularly represents institutional clients such as public funds, investment funds, limited partnerships, and qualified institutional buyers in private actions.  The Firm has represented institutional clients in non-class federal and state actions concerning a variety of matters, including private placements, disputes with investment advisors, and disputes with corporate management.

The Firm has also acted as special counsel to investors' committees in efforts to assert and advance the investors' interests without resorting to litigation.  For example, the Firm served as Counsel to the Courtyard by Marriott Limited Partners Committee for several years in its dealings with Host Marriott Corporation, and as Special Counsel to the Windsor Park Properties 7 and 8 limited partners to insure the fairness of their liquidation transactions.

### ANTITRUST LITIGATION

Wolf Haldenstein is a leader in antitrust and competition litigation.  The Firm actively seeks to enforce the federal and state antitrust laws to protect and strengthen the rights and claims of businesses, organizations, Taft-Hartley funds, and consumers throughout the United States.  To that end, Wolf Haldenstein commences large, often complex, antitrust and trade regulation class actions and other cases that target some of the most powerful and well-funded corporate interests in the world.  Many of these interests exert strong influence over enforcement policy that is in the hands of elected officials, so that private enforcement provides the only true assurance that unfair and



anticompetitive conduct will be duly scrutinized for compliance with the law.  These cases frequently bring to light concealed, unlawful behavior such as price fixing, monopolization, market allocation, monopoly leveraging, essential facilities, tying arrangements, vertical restraints, exclusive dealing, and refusals to deal.  Wolf Haldenstein's Antitrust Practice Group has successfully prosecuted numerous antitrust cases and aggressively advocates remedies and restitution for businesses and investors wronged by violations of the antitrust laws.  For example, in *In re DRAM Antitrust Litigation*, No. 02-cv-1486 (PJH) (N.D. Cal.) the firm successfully prosecuted an antitrust case resulting in a $315 million recovery.  Many of the firm's successful results are summarized within.

Wolf Haldenstein attorneys currently serve as lead counsel, co-lead counsel, or as executive committee members in some of the largest and most significant antitrust class action lawsuits.  The firm was most recently appointed lead counsel in the Salmon Antitrust Indirect Litigation pending in the U.S. District Court for the Southern District of Florida.

### Overtime and Compensation Class Actions

Wolf Haldenstein is a leader class action litigation on behalf of employees who have not been paid overtime or other compensation they are entitled to receive, or have had improper deductions taken from their compensation.  These claims under the federal Fair Labor Standards Act and state labor laws allege improper failure to pay overtime and other wages, and improper deductions from compensation for various company expenses.  Wolf Haldenstein has served as lead or co-lead counsel, or other similar lead role, in some of the most significant overtime class actions pending in the United States, and has recovered hundreds of millions of dollars in recovered wages for its clients.  For example, in *LaVoice v. Citigroup Global Markets, Inc.*, Case No. C 07-801 (CW) (N.D. Cal.)) a $108 million settlement was secured for the class.  Many of the firm's other successful wage and hour results are summarized within.

### Substantial Recoveries in Class Action and Derivative Cases in Which Wolf Haldenstein Was Lead Counsel or Had Another Significant Role

- *In re Beacon Associates Litigation*, Master File No. 09 Civ. 0777 (LBS) (S.D.N.Y.) (**$219 million** settlement in this and related action).

- *Roberts v. Tishman Speyer*, No. 100956/2007 (Sup. Ct. N.Y. Cty.) (**$173 Million** settlement).



- *In re Mutual Fund Investment Litigation,* MDL No. 1586 (D. Md.) (derivative counsel in consolidated cases against numerous mutual fund companies involved in market timing resulting in class/derivative settlements totaling more than **$300 million**).

- *Inland Western Securities Litigation,* Case No. 07 C 6174 (N.D. Ill.) (settlement value of shares valued between **$61.5 million** and **$90 million**).

- *In re Direxion Shares ETF Trust,* No. 09-Civ-8011 (KBF) (S.D.N.Y.) (class recovered **$8 million**).

- *In re BankAmerica Corp. Securities Litigation,* MDL Docket No. 1264 (JFN) (E.D. Mo.) (class recovered **$490 million**).

- *In re Dynamic Random Access Memory Antitrust Litigation,* (MD-02 1486 (N.D. Cal.) (class recovered **$325 million**).

- *In re MicroStrategy, Inc. Securities Litigation,* Civ. No. 00-473-A (E.D. Va.) (class recovered **$160 million** in cash and securities).

- *Kurzweil v. Philip Morris Cos.,* 94 Civ 2373, 94 Civ 2546 (S.D.N.Y.) (securities fraud) (class recovered **$116.5 million** in cash).

- *In re Starlink Corn Products Liability Litigation,* (N.D. Ill.) (class recovered **$110 million**).

- *In Computer Associates 2002 Class Action Sec. Litigation,* 2:02-CV-1226 (E.D.N.Y.) (**$130 million** settlement in this and two related actions).

- *In re Sepracor Inc. Securities Litigation,* Civ. No. 02-12338 (MEL) (D. Mass.) (classes recovered **$52.5 million**).

- *In re Transkaryotic Therapies, Inc., Securities Litigation,* C.A. No. 03-10165-RWZ (D. Mass) (class recovered **$50 million**).

- *In re Iridium Securities Litigation,* C.A. No. 99-1002 (D.D.C.) (class recovered **$43 million**).



- *In re J.P. Morgan Chase Securities Litigation,* MDL No. 1783 (N.D. Ill.) (settlement providing for adoption of corporate governance principles relating to potential corporate transactions requiring shareholder approval).

- *LaVoice v. Citigroup Global Markets, Inc.*, Case No. C 07-801 (CW) (N.D. Cal.)) (**$108 million** settlement).

- *Steinberg v. Morgan Stanley & Co., Inc.*, Case No. 06-cv-2628 (BEN) (S.D. Cal.) (**$50 million** settlement).

- *Poole v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, Case No. CV-06-1657 (D. Or.) (**$43.5 million** settlement).

- *In re Wachovia Securities, LLC Wage and Hour Litigation*, MDL No. 07-1807 DOC (C.D. Cal.) (**$39 million** settlement).

- *In re Wachovia Securities, LLC Wage and Hour Litigation (Prudential)*, MDL No. 07-1807 DOC (C.D. Cal.) (**$11 million** settlement).

- *Basile v. A.G. Edwards, Inc.*, 08-CV-00338-JAH-RBB (S.D. Cal.) (**$12 million** settlement).

- *Miguel Garcia, et al. v. Lowe's Home Center, Inc. et al.* – Case No. GIC 841120 (Barton) (Cal. Sup. Ct, San Diego) (co-lead, **$1.65 million** settlement w/ average class member recovery of $5,500, attorney fees and cost awarded separately).

- *Neil Weinstein, et al. v. MetLife, Inc., et al.* – Case No. 3:06-cv-04444-SI (N.D.Cal) (co-lead, **$7.4 million** settlement).

- *Creighton v. Oppenheimer*, Index No. 1:06 - cv - 04607 - BSJ - DCF (S.D.N.Y.) (**$2.3 million** settlement).

- *Klein v. Ryan Beck*, 06-CV-3460 (DAB)(S.D.N.Y.) (**$1.3 million** settlement).

- *In re American Pharmaceutical Partners, Inc. Shareholder Litigation*, Consolidated C.A. No. 1823-N (Del. Ch. Ct.) (**$14.3 million** settlement).

- *Egleston v. Collins and Aikman Corp.*, 06-cv-13555 (E.D. Mich.) (class recovered **$12 million**).



- *In re Merrill Lynch & Co., Inc. Global Technology Fund Securities Litigation*, 02 CV 7854 (JFK) (SDNY); and *In re Merrill Lynch & Co., Inc. Focus Twenty Fund Securities Litigation*, 02 CV 10221 (JFK) (SDNY) (class recovered **$39 million** in combined cases).

- *In re CNL Hotels & Resorts, Inc. Securities Litigation*, No. 6:04-cv-1231 (Orl-31) (class recovered **$35 million**, and lawsuit also instrumental in **$225 million** benefit to corporation).

- *In re Cablevision Systems Corp. Shareholder Derivative Litigation*, Master File No. 06-CV-4130-DGT-AKT (**$34.4 million** recovery).

- *In re Monster Worldwide, Inc. Stock Option Derivative Litigation*, Master File No. 06cv4622 (S.D.N.Y.) (**$32 million** recovery and corporate governance reforms).

- *Berger v. Compaq Computer Corp.*, Docket No. 98-1148 (S.D. Tex.) (class recovered **$29 million**).

- *In re Arakis Energy Corporation Securities Litigation*, 95 CV 3431 (E.D.N.Y.) (class recovered **$24 million**).

- *In re E.W. Blanche Holdings, Inc. Securities Litigation*, Civ. No. 01-258 (D. Minn.) (class recovered **$20 million**).

- *In re Globalstar Securities Litigation*, Case No. 01-CV-1748 (SHS) (S.D.N.Y.) (class recovered **$20 million**).

- *In re Luxottica Group S.p.A. Securities Litigation*, No. CV 01-3285 (E.D.N.Y) (class recovered **$18.25 million**).

- *In re Musicmaker.com Securities Litigation*, CV-00-2018 (C.D. Cal.) (class recovered **$13.75 million**).

- *In re Comdisco Securities Litigation*, No. 01 C 2110 (MIS) (N.D. Ill.) (class recovered **$13.75 million**).

- *In re Acclaim Entertainment, Inc., Securities Litigation*, C.A. No. 03-CV-1270 (E.D.N.Y.) (class recovered **$13.65 million**).



- *In re Concord EFS, Inc. Securities Litigation*, No. 02-2097 (MA) (W.D. Tenn) (class recovered **$13.25 million**).

- *In re Bausch & Lomb, Inc. Securities Litigation,* 01 Civ. 6190 (CJS) (W.D.N.Y.) (class recovered **$12.5 million**).

- *In re Allaire Corp. Securities Litigation,* 00-11972 (D. Mass.) (class recovered **$12 million**).

- *Bamboo Partners LLC v. Robert Mondavi Corp.,* No. 26-27170 (Cal. Sup. Ct.) (class recovered **$10.8 million**).

- *Curative Health Services Securities Litigation,* 99-2074 (E.D.N.Y.) (class recovered **$10.5 million**).

- *City Partnership Co. v. Jones Intercable*, 99 WM-1051 (D. Colo.) (class recovered **$10.5 million**).

- *In re Aquila, Inc.,* (ERISA Litigation), 04-865 (W.D. Mo.) (**$10.5 million** recovery for the class).

- *In re Tenfold Corporation Securities Litigation,* 2:00-CV-652 (D. Utah) (class recovered **$5.9 million**).

- *In re Industrial Gas Antitrust Litigation*, 80 C 3479 and related cases (N.D. Ill.) (class recovered **$50 million**).

- *In re Chor-Alkalai and Caustic Soda Antitrust Litigation*, 86-5428 and related cases (E.D. Pa.) (class recovered **$55 million**).

- *In re Infant Formula Antitrust Litigation,* MDL No. 878 (N.D. Fla.) (class recovered **$126 million**).

- *In re Brand Name Prescription Drugs Antitrust Litigation,* No. 1:94-cv-00897, M.D.L. 997 (N.D. Ill.) (class recovered **$715 million**).

- *Landon v. Freel,* M.D.L. No. 592 (S.D. Tex.) (class recovered **$12 million**).

- *Holloway v. Peat, Marwick, Mitchell & Co.,* No. 84 C 814 EU (N.D. Okla.) (class recovered **$38 million**).



- *In re The Chubb Corp.* Drought Insurance Litigation, C-1-88-644 (S.D. Ohio) (class recovered **$100 million**).

- *Wong v. Megafoods,* Civ-94-1702 (D. Ariz.) (securities fraud) (class recovered **$12.25 million**).

- *In re Del Val Financial Corp. Securities Litigation,* 92 Civ 4854 (S.D.N.Y.) (class recovered **$11.5 million**).

- *In re Home Shopping Network Shareholders Litigation,* Consolidated Civil Action No. 12868, (Del. Ch. 1995) (class recovered **$13 million**).

- *In re Paine Webber Limited Partnerships Litigation,* 94 Civ 8547 (S.D.N.Y.) (class recovered **$200 million**).

- *In re Bristol-Meyers Squibb Co. Securities Litigation,* 92 Civ 4007 (S.D.N.Y.) (class recovered **$19 million**).

- *In re Spectrum Information Technologies Securities Litigation,* CV 93-2245 (E.D.N.Y.) (class recovered **$13 million**).

- *In re Chase Manhattan Securities Litigation,* 90 Civ. 6092 (LJF) (S.D.N.Y.) (class recovered **$17.5 million**).

- *Prostic v. Xerox Corp.,* No. B-90-113 (EBB) (D. Conn.) (class recovered **$9 million**).

- *Steiner v. Hercules,* Civil Action No. 90-442-RRM (D. Del.) (class recovered **$18 million**).

- *In re Ambase Securities Litigation,* 90 Civ 2011 (S.D.N.Y.) (class recovered **$14.6 million**).

- *In re Southmark Securities Litigation,* CA No. 3-89-1402-D (N.D. Tex.) (class recovered **$70 million**).

- *Steiner v. Ideal Basic Industries, Inc.,* No. 86-M 456 (D. Colo. 1989) (securities fraud) (class recovered **$18 million**).

- *Tucson Electric Power Derivative Litigation,* 2:89 Civ. 01274 TUC. ACM (corporation recovered **$30 million**).



- *Alleco Stockholders Litigation,* (Md. Cir. Ct. Pr. Georges County) (class recovered **$16 million**).

- *In re Revlon Group, Inc. Shareholders Litigation*, No. 8362 (Del. Ch.) (class recovered **$30 million**).

- *In re Taft Broadcasting Company Shareholders Litigation,* No. 8897 (Del. Ch.) (class recovered **$20 million**).

- *In re Southland Corp. Securities Litigation,* No. 87-8834-K (N.D.Tex.) (class recovered **$20 million**).

- *In re Crocker Bank Securities Litigation*, CA No. 7405 (Del. Ch.) (class recovered **$30 million**).

- *In re Warner Communications Securities Litigation,* No. 82 Civ. 8288 (JFK) (S.D.N.Y.) (class recovered **$17.5 million**).

- *Joseph v. Shell Oil,* CA No. 7450 (Del. Ch.) (securities fraud) (class recovered **$200 million**).

- *In re Flight Transportation Corp. Securities Litigation,* Master Docket No. 4-82-874, MDL No. 517 (D. Minn.) (recovery of over **$50 million**).

- *In re Whittaker Corporation Securities Litigation,* CA000817 (Cal. Super. Ct., Los Angeles County) (class recovered **$18 million**).

- *Naevus International, Inc. v. AT&T Corp.,* C.A. No. 602191/99 (N.Y. Sup. Ct.) (consumer fraud) (class recovered **$40 million**).

- *Sewell v. Sprint PCS Limited Partnership*, C.A. No. 97-188027/CC 3879 (Cir. Ct. for Baltimore City) (consumer fraud) (class recovered **$45.2 million**).

- *In re Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation,* 2:08-cv-285 (D.N.J.) (class recovered **$41.5 million**).

- *Egleston v. Verizon*, No. 104784/2011 (N.Y. Sup. Ct.) – Wolf Haldenstein represented a class of New York Verizon Centrex customers in an action against Verizon stemming from overbilling of certain charges. The Firm secured a settlement with a total value to the Class of over **$5 million**, which



provided, among other things, each class member with full refunds of certain disputed charges, plus interest.

- *Zelouf Int'l Corp. v. Nahal Zelouf*, Index No. 653652/2014 (Sup. Ct. N.Y. Co. 2015).  In an important trial decision following an appraisal proceeding triggered by the freeze-out merger of a closely-held corporation, which also included shareholder derivative claims, Justice Kornreich of the New York Supreme Court refused to apply a discount for lack of marketability to the minority interest in the former corporation and found that the insiders stole more than $14 million dollars; the minority shareholder recovered over **$9 million**.

- *Zelouf Int'l Corp. v. Zelouf*, 45 Misc.3d 1205(A) (Sup. Ct. N.Y. Co., 2014).   The Court rejected application of a discount for lack of marketability and awarded a **$10,031,438.28** judgment following an eleven day bench trial in the Commercial Division of the Supreme Court of the State of New York (New York County) on the value of a minority interest in a closely held corporation.

- *Thompson et al. v. Bethpage Federal Credit Union et al.*, No. 2:17-cv-00921-GRB (E.D.N.Y.) (**$3.6 million** settlement)



REPRESENTATIVE REPORTED OPINIONS SINCE 1990 IN WHICH WOLF
HALDENSTEIN WAS LEAD COUNSEL OR HAD ANOTHER SIGNIFICANT ROLE

FEDERAL APPELLATE AND DISTRICT COURT OPINIONS

- *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019)

- *Hymes v. Bank of America*, 408 F. Supp. 3d 171 (E.D.N.Y. 2019)

- *In re Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308 (S.D. Cal. 2019)

- *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018)

- *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033 (S.D. Cal. 2017)

- *DeFrees v. Kirkland*, 2012 U.S. Dist. LEXIS 52780 (C.D. Cal. Apr. 11, 2012).

- *In re Beacon Associates Litig.*, 282 F.R.D. 315 (S.D.N.Y. 2012).

- *Messner v. Northshore University HealthSystem*, 669 F.3d 802, No. 10-2514 (7th Cir. Jan. 13, 2012).

- *In re Text Message Antitrust Litigation*, 630 F.3d, 622 (7th Cir. 2010).

- *In re Apple & ATTM Antitrust Litig.*, 2010 U.S. Dist. LEXIS 98270 (N.D. Cal. July 8, 2010).

- *In re Beacon Associates Litig.*, 745 F. Supp. 2d 386 (S.D.N.Y. 2010)

- *Freeland v. Iridium World Communications Ltd.*, 545 F. Supp. 2d 59 (D.D.C. 2008).

- *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288 (N.D. Cal. 2008).

- *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007).

- *In re JP Morgan Chase & Co. Securities Litigation*, No. 06 C 4674, 2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 18, 2007).

- *Schoenbaum v. E.I. Dupont De Nemours and Co.*, 2007 WL 2768383 (E.D. Mo. Sept. 20, 2007).



- *Jeffries v. Pension Trust Fund*, 99 Civ. 4174 (LMM), 2007 U.S. Dist. LEXIS 61454 (S.D.N.Y. Aug. 20, 2007).

- *Klein v. Ryan Beck*, 06-Civ. 3460 (WCC), 2007 U.S. Dist. LEXIS 51465 (S.D.N.Y. July 13, 2007).

- *Cannon v. MBNA Corp.* No. 05-429 GMS, 2007 U.S. Dist. LEXIS 48901 (D. Del. 2007).

- *In re Aquila ERISA Litig.*, 237 F.R.D. 202 (W.D. Mo. 2006).

- *Smith v.* Aon Corp., 238 F.R.D. 609 (N.D. Ill. 2006).

- *In re Sepracor Inc. Securities Litigation,* 233 F.R.D. 52 (D. Mass. 2005).

- *In re Transkaryotic Therapies, Inc. Securities Litigation,* No. 03-10165, 2005 U.S. Dist. LEXIS 29656 (D. Mass. Nov. 28, 2005).

- *In re Luxottica Group, S.p.A. Securities Litigation,* 2005 U.S. Dist. LEXIS 9071 (E.D.N.Y. May 12, 2005).

- *In re CNL Hotels & Resorts, Inc. Securities Litigation,* 2005 U.S. Dist. LEXIS 38876, No. 6:04-cv-1231-Orl-31KRS (M.D. Fla. May 9, 2005).

- *Johnson v. Aegon USA, Inc.,* 355 F. Supp. 2d 1337 (N.D. Ga. 2004).

- *Freeland v. Iridium World Communications, Ltd.,* 99-1002, 2004 U.S. Dist. LEXIS 33018 (D.D.C. Aug. 31, 2004).

- *In re Acclaim Entertainment, Inc. Securities Litigation,* 03-CV-1270 (E.D.N.Y. June 22, 2004).

- *In re Sepracor Inc. Securities Litigation,* 308 F. Supp. 2d 20 (D. Mass. 2004).

- *In re Concord EFS, Inc. Securities Litigation,* No. 02-2697 (W.D. Tenn. Jan. 7, 2004).

- *In re Pharmatrak, Inc. Privacy Litig.*, 2003 U.S. App. LEXIS 8758 (1st Cir. May 9, 2003).

- *In re PerkinElmer, Inc. Securities Litigation,* 286 F. Supp. 2d 46 (D. Mass. 2003).



- *In re Initial Public Offering Securities Litigation,* 241 F. Supp. 2d 281 (S.D.N.Y. 2003).

- *In re Comdisco Securities Litigation,* No. 01 C 2110, 2003 U.S. Dist. LEXIS 5047 (N.D. Ill. Mar. 31, 2003).

- *Berger v. Compaq Computer Corp.,* 257 F.3d 475 (2001), clarified, 279 F.3d 313 (5th Cir. 2002).

- *City Partnership Co. v. Cable TV Fund 14-B,* 213 F.R.D. 576 (D. Colo. 2002).

- *In re Allaire Corporation Securities Litigation,* Docket No. 00-11972 - WGY, 2002 U.S. Dist. LEXIS 18143 (D. Mass., Sept. 27, 2002).

- *In re StarLink Corn Products Liability Litigation,* 212 F.Supp.2d 828 (N.D. Ill. 2002).

- *In re Bankamerica Corp. Securities Litigation,* 263 F.3d 795 (8th Cir. 2001).

- *In re Comdisco Securities Litigation,* 166 F.Supp.2d 1260 (N.D. Ill. 2001).

- *In re Crossroads Systems, Inc. Securities Litigation,* Master File No. A-00-CA-457 JN, 2001 U.S. Dist. LEXIS 14780 (W.D. Tx. Aug. 15, 2001).

- *In re MicroStrategy, Inc. Securities Litigation,* 150 F. Supp. 2d 896 (E.D. Va. 2001).

- *Lindelow v. Hill,* No. 00 C 3727, 2001 U.S. Dist. LEXIS 10301 (N.D. Ill. July 19, 2001).

- *In re MicroStrategy, Inc. Securities Litigation,* 148 F. Supp. 2d 654 (E.D. Va. 2001).

- *Jeffries v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Electrical Industry,* 172 F. Supp. 2d 389 (S.D.N.Y. 2001).

- *Carney v. Cambridge Technology Partners, Inc.,* 135 F. Supp. 2d 235 (D. Mass. 2001).

- *Weltz v. Lee,* 199 F.R.D. 129 (S.D.N.Y. 2001).

- *Schoers v. Pfizer, Inc.,* 00 Civ. 6121, 2001 U.S. Dist. LEXIS 511 (S.D.N.Y. Jan. 23, 2001).



- *Kurzweil v. Philip Morris Cos.,* 94 Civ. 2373 (MBM), 2001 U.S. Dist. LEXIS 83 (S.D.N.Y. Jan. 9, 2001).

- *Goldberger v. Bear, Stearns & Co.,* 98 Civ. 8677 (JSM), 2000 U.S. Dist. LEXIS 18714 (S.D.N.Y. Dec. 28, 2000).

- *In re Newell Rubbermaid, Inc., Securities Litigation,* Case No. 99 C 6853, 2000 U.S. Dist. LEXIS 15190 (N.D. Ill. Oct. 2, 2000).

- *Stanley v. Safeskin Corp.,* Case No. 99 CV 454 BTM (LSP), 2000 U.S. Dist. LEXIS 14100, Fed. Sec. L. Rep. (CCH) P91, 221 (S.D. Cal. Sept. 18, 2000).

- *In re MicroStrategy, Inc. Securities Litigation,* 115 F. Supp. 2d 620 (E.D. Va. 2000).

- *In re USA Talks.com, Inc. Securities Litigation,* 2000 U.S. Dist. LEXIS 14823, Fed. Sec. L. Rep. (CCH) P91, 231 (S.D. Cal. Sept. 14, 2000).

- *In re Sotheby's Holdings, Inc. Securities Litigation,* 00 CIV. 1041 (DLC), 2000 U.S. Dist. LEXIS 12504, Fed. Sec. L. Rep. (CCH) P91, 059 (S.D.N.Y. Aug. 31, 2000).

- *Dumont v. Charles Schwab & Co., Inc.,* Civil Action No. 99-2840 2000 U.S. Dist. LEXIS 10906 (E.D. La. July 21, 2000).

- *Berger v. Compaq Computer Corp.,* Civil Action No. H-98-1148, 2000 U.S. Dist. LEXIS 21424 (S.D. Tex. July 17, 2000).

- *In re BankAmerica Corp. Securities Litigation,* 95 F. Supp. 2d 1044 (E.D. Mo. 2000).

- *In re Carnegie International Corp. Securities Litigation,* 107 F. Supp. 2d 676 (D. Md. 2000).

- *Berger v. Compaq Computer Corp.,* Civil Action No. H-98-1148, 2000 U.S. Dist. LEXIS 21423 (S.D. Tex. Mar. 13, 2000).

- *In re Imperial Credit Industries Securities Litigation,* CV 98-8842 SVW, 2000 U.S. Dist. LEXIS 2340 (C.D. Cal. Feb. 23, 2000).

- *Sturm v. Marriott Marquis Corp.,* 85 F. Supp. 2d 1356 (N.D. Ga. 2000).

- *In re Health Management Systems Securities Litigation,* 82 F. Supp. 2d 227 (S.D.N.Y. 2000).



- *Dumont v. Charles Schwab & Co., Inc.*, Civil Action No. 99-2840, 2000 U.S. Dist. LEXIS 619 (E.D. La. Jan. 19, 2000).

- *In re MicroStrategy, Inc. Securities Litigation*, 110 F. Supp. 2d 427 (E.D. Va. 2000).

- *In re BankAmerica Corp. Securities Litigation*, 78 F. Supp. 2d 976 (E.D. Mo. 1999).

- *Kurzweil v. Philip Morris Cos.*, 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 24, 1999).

- *In re Nanophase Technologies Corp. Litigation*, 98 C 3450, 1999 U.S. Dist. LEXIS 16171 (N.D. Ill. Sept. 27, 1999).

- *In re Clearly Canadian Securities Litigation*, File No. C-93-1037-VRW, 1999 U.S. Dist. LEXIS 14273 Cal. Sept. 7, 1999).

- *Yuan v. Bayard Drilling Technologies, Inc.*, 96 F. Supp. 2d 1259 (W.D. Okla. 1999).

- *In re Spyglass, Inc. Securities Litigation*, No. 99 C 512, 1999 U.S. Dist. LEXIS 11382 (N.D. Ill. July 20, 1999).

- *Carley Capital Group v. Deloitte & Touche, L.L.P.*, 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 11595 (N.D. Ga. June 30, 1999).

- *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 98 CV 3287, 1999 U.S. Dist. LEXIS 11363 (E.D.N.Y. June 1, 1999).

- *Carley Capital Group v. Deloitte & Touche, L.L.P.*, 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 1368, Fed. Sec. L. Rep. (CCH) P90, 429 (N.D. Ga. Jan. 19, 1999).

- *Longman v. Food Lion, Inc.*, 186 F.R.D. 331 (M.D.N.C. 1999).

- *Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998).

- *Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998).

- *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

- *Walsingham v. Biocontrol Technology, Inc.*, 66 F. Supp. 2d 669 (W.D. Pa. 1998).

- *Sturm v. Marriott Marquis Corp.*, 26 F. Supp. 2d 1358 (N.D. Ga. 1998).



- *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 27 F. Supp. 2d 1324 (N.D. Ga. 1998).

- *In re MobileMedia Securities Litigation,* 28 F.Supp.2d 901 (D.N.J. 1998).

- *Weikel v. Tower Semiconductor, Ltd.,* 183 F.R.D. 377 (D.N.J. 1998).

- *In re Health Management Systems Securities Litigation,* 97 Civ. 1865 (HB), 1998 U.S. Dist. LEXIS 8061 (S.D.N.Y. May 27, 1998).

- *In re Painewebber Ltd. Partnership Litigation,* 999 F. Supp. 719 (S.D.N.Y. 1998).

- *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 1:97-cv-3183-TWT, 1998 U.S. Dist. LEXIS 23222 (N.D. Ga. Feb. 10, 1998).

- *Brown v. Radica Games (In re Radica Games Securities Litigation),* No. 96-17274, 1997 U.S. App. LEXIS 32775 (9th Cir. Nov. 14, 1997).

- *Robbins v. Koger Properties,* 116 F.3d 1441 (11th Cir. 1997).

- *In re TCW/DW North American Government Income Trust Securities Litigation,* 95 Civ. 0167 (PKL), 1997 U.S. Dist. LEXIS 18485 (S.D.N.Y. Nov. 20, 1997).

- *Wright v. Ernst & Young, LLP,* 97 Civ. 2189 (SAS), 1997 U.S. Dist. LEXIS 13630 (S.D.N.Y. Sept. 9, 1997).

- *Felzen v. Andreas,* No. 95-2279, 1997 U.S. Dist. LEXIS 23646 (C.D. Ill. July 7, 1997).

- *Felzen v. Andreas,* No. 95-2279, 1997 U.S. Dist. LEXIS 23647 (C.D. Ill. July 7, 1997).

- *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.,* 964 F. Supp. 147 (S.D.N.Y. 1997).

- *Kurzweil v. Philip Morris Companies,* 94 Civ. 2373 (MBM), 1997 U.S. Dist. LEXIS 4451 (S.D.N.Y. April 8, 1997).

- *Bobrow v. Mobilmedia, Inc.,* Civil Action No. 96-4715, 1997 U.S. Dist. LEXIS 23806 (D.N.J. March 31, 1997).



- *Kalodner v. Michaels Stores, Inc.,* 172 F.R.D. 200 (N.D.Tex. 1997).

- *In re Painewebber Ltd. Partnerships Litigation,* 171 F.R.D. 104 (S.D.N.Y. 1997).

- *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.,* 95 Civ. 8422 (LAK), 1997 U.S. Dist. LEXIS 1226 (S.D.N.Y. Feb. 7, 1997).

- *In re Painewebber Inc. Limited Partnerships Litigation,* 94 F.3d 49 (2d Cir. 1996).

- *Glassman v. Computervision Corp.,* 90 F.3d 617 (1st Cir. 1996).

- *Alpern v. Utilicorp United, Inc.,* 84 F.3d 1525 (8th Cir. 1996).

- *Shaw v. Digital Equipment Corp.,* 82 F.3d 1194 (1st Cir. 1996).

- *Dresner Co. Profit Sharing Plan v. First Fidelity Bank, N.A.,* 95 Civ. 1924 (MBM), 1996 U.S. Dist. LEXIS 17913 (S.D.N.Y. Dec. 3, 1996).

- *Simon v. American Power Conversion Corp.,* 945 F. Supp. 416 (D.R.I. 1996).

- *TII Industries, Inc.,* 96 Civ. 4412 (SAS), 1996 U.S. Dist. LEXIS 14466 (S.D.N.Y. Oct. 1, 1996).

- *In re TCW/DW North American Government Income Trust Securities Litigation,* 941 F. Supp. 326 (S.D.N.Y. Oct. 1, 1996).

- *In re Painewebber Ltd. Partnership Litigation,* 94 Civ. 8547 (SHS), 1996 U.S. Dist. LEXIS 9195 (S.D.N.Y. June 28, 1996).

- *In re Tricord Systems, Inc., Securities Litigation,* Civil No. 3-94-746, 1996 U.S. Dist. LEXIS 20943 (D. Minn. April 5, 1996).

- *In re Painewebber Limited Partnership Litigation,* 94 Civ. 8547 (SHS), 1996 U.S. Dist. LEXIS 1265 (S.D.N.Y. Feb. 6, 1996).

- *Riley v. Simmons,* 45 F.3d 764 (3d Cir. 1995).

- *Stepak v. Addison,* 20 F.3d 398 (11th Cir. 1994).

- *Zitin v. Turley,* [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,123 (D. Ariz. June 20, 1994).



- *In re Southeast Hotel Properties Limited Partnership Investor Litigation*, 151 F.R.D. 597 (W.D.N.C. 1993).

- *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990).

NOTABLE STATE COURT OPINIONS

- *William Hughes, Jr. v. Xiaoming Hu, et al.* [*In re Kandi Technologies Group*], C.A. No. 2019-0112-JTL (Del. Ch. April 27, 2020).

- *Eshaghian v. Roshanzamir*, 179 A.D.3d 596 (N.Y. App. Div. 1st Dep't 2020).

- *Cohen v. Saks, Inc.*, 169 A.D.3d 515 (N.Y. App. Div. 1st Dep't 2019).

- *Bartis v. Harbor Tech, LLC*, 147 A.D.3d 52 (N.Y. App. Div. 2d Dep't 2016).

- *Zelouf Int'l Corp. v. Zelouf*, 47 Misc. 3d 346 (N.Y. Sup. Ct. 2014).

- *McWilliams v. City of Long Beach*, 56 Cal. 4th 613 (2013).

- *Roberts v. Tishman Speyer*, 89 A.D.3d 444 (N.Y. App. Div. 1st Dep't 2011).

- *Ardon v. City of Los Angeles*, 52 Cal. 4th 241 (2011).

- *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009).

- *In re Tyson Foods, Inc., Consolidated Shareholder Litigation*, 919 A.2d 563 (Del. Ch. 2007).

- *Naevus Int'l v. AT&T Corp.*, 283 A.D.2d 171, 724 N.Y.S.2d 721 (2001).

- *In re Western National Corp. Shareholders Litigation,* Consolidated C.A. No. 15927, 2000 Del. Ch. LEXIS 82 (May 22, 2000).

- *In re Cencom Cable Income Partners, L.P. Litigation,* C.A. No. 14634, 2000 Del. Ch. LEXIS 90 (May 5, 2000).

- *In re Cencom Cable Income Partners, L.P. Litigation,* Consolidated C.A. No. 14634, 2000 Del. Ch. LEXIS 10 (Jan. 27, 2000).



- *In re Marriott Hotels Properties II Limited Partnership Unitholders Litigation,* Consolidated C.A. No. 14961, 2000 Del. Ch. LEXIS 17 (Jan. 24, 2000).

- *Romig v. Jefferson-Pilot Life Insurance Company,* 132 N.C. App. 682, 513 S.E.2d 598 (Ct. App. 1999), *aff'd,* 351 N.C. 349, 524 S.E.2d 804 (N.C. 2000).

- *Wallace v. Wood,* 752 A.2d 1175 (Del. Ch. 1999).

- *Greenwald v. Batterson,* C.A. No. 16475, 1999 Del. Ch. LEXIS 158 (July 26, 1999).

- *Brown v. Perrette,* Civil Action No. 13531, 1999 Del. Ch. LEXIS 92 (May 18, 1999).

- *Seinfeld v. Robinson,* 246 A.D.2d 291, 676 N.Y.S.2d 579 (N.Y. 1998).

- *Werner v. Alexander,* 130 N.C. App. 435, 502 S.E.2d 897 (N.C. Ct. App. 1998).#

- *In re Cencom Cable Income Partners, L.P. Litigation,* C.A. No. 14634, 1997 Del. Ch. LEXIS 146 (Oct. 15, 1997).

- *In re Marriott Hotel Properties II Limited Partnership Unitholders Litigation,* Consolidated C.A. No. 14961, 1997 Del. Ch. LEXIS 128 (Sept. 17, 1997).

- *In re Cheyenne Software Shareholders Litigation,* Consolidated C.A. No. 14941, 1996 Del. Ch. LEXIS 142 (Nov. 7, 1996).

- *Paramount Communications, Inc. v. QVC Network, Inc.,* 637 A.2d 34 (Del. Super. Ct. 1994).



## ATTORNEY BIOGRAPHIES

The qualifications of the attorneys in the Wolf Haldenstein Litigation Group are set forth below and are followed by descriptions of some of the Firm's attorneys who normally practice outside the Litigation Group who contribute significantly to the class action practice from time to time.

### Partners

**MARK C. RIFKIN:** *admitted:* New York; Pennsylvania; New Jersey; U.S. Supreme Court; U.S. Courts of Appeals for the Second, Third, Fifth, and D.C. Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, the Eastern and Western Districts of Pennsylvania, the District of New Jersey, the Eastern District of Wisconsin and the Western District of Michigan. *Education:* Princeton University (A.B. 1982); Villanova University School of Law (J.D. 1985). Contributor, Packel & Poulin, *Pennsylvania Evidence* (1987).

A highly experienced securities class action and shareholder rights litigator, Mr. Rifkin has recovered hundreds of millions of dollars for victims of corporate fraud and abuse in federal and state litigation across the country. Since 1990, Mr. Rifkin has served as lead counsel, co-lead counsel, or trial counsel in many class and derivative actions in securities, intellectual property, antitrust, insurance, consumer and mass tort litigation throughout the country.

Unique among his peers in the class action practice, Mr. Rifkin has extensive trial experience. Over the past thirty years, Mr. Rifkin has tried many complex commercial actions in federal and state courts across the country in class and derivative actions, including *In re National Media Corp. Derivative Litig.*, C.A. 90-7574 (E.D. Pa.), *Upp v. Mellon Bank, N.A.*, C.A. No. 91-5229 (E.D. Pa.), where the verdict awarded more than $60 million in damages to the Class (later reversed on appeal, 997 F.2d 1039 (3d Cir. 1993)), and *In re AST Research Securities Litigation*, No. 94-1370 SVW (C.D. Cal.), as well as a number of commercial matters for individual clients, including *Zelouf Int'l Corp. v. Zelouf*, Index No. 653652/2013 (N.Y. Sup. Ct. 2015), in which he obtained a $10 million judgment for his client.

Mr. Rifkin also has extensive appellate experience. Over thirty years, Mr. Rifkin has argued dozens of appeals on behalf of appellants and appellees in several federal appellate courts, and in the highest appellate courts in New York, Pennsylvania, New Jersey, and Delaware.



Mr. Rifkin has earned the AV®-Preeminent rating by Martindale-Hubbell® for more than 20 years, and has been selected for inclusion in the New York Metro SuperLawyers® listing since 2010. In 2014, Mr. Rifkin was named a "Titan of the Plaintiff's Bar" by Law360®.

In 2015, Mr. Rifkin received worldwide acclaim for his role as lead counsel for the class in *Good Morning To You Productions Corp. v. Warner/Chappell Music, Inc.*, No. CV 13-04460-GHK (MRWx), in federal court in Los Angeles, successfully challenging the copyright to "Happy Birthday to You," the world's most famous song. In recognition of his historic victory, Mr. Rifkin was named a Trailblazer in Intellectual Property by the National Law Journal in 2016. In 2018, Mr. Rifkin led a team of lawyers from Wolf Haldenstein who represented the plaintiffs in *We Shall Overcome Foundation, et al. v. The Richmond Organization, Inc., et al.*, No. 16-cv-02725-DLC (S.D.N.Y.), which successfully challenged the copyright to "We Shall Overcome," called the "most powerful song of the 20th century" by the Librarian of Congress.

Mr. Rifkin lectures frequently to business and professional organizations on a variety of securities, shareholder, intellectual property, and corporate governance matters. Mr. Rifkin is a guest lecturer to graduate and undergraduate economics and finance students on corporate governance and financial disclosure topics. He also serves as a moot court judge for the A.B.A. and New York University Law School. Mr. Rifkin appears frequently in print and broadcast media on diverse law-related topics in corporate, securities, intellectual property, antitrust, regulatory, and enforcement matters.

**BETSY C. MANIFOLD**: *admitted*: Wisconsin; New York; California; U.S. District Courts for the Western District of Wisconsin, Eastern and Southern Districts of New York, and Northern, Central and Southern Districts of California. *Education*: Elmira College; Middlebury College (B.A., *cum laude*, 1980); Marquette University (J.D., 1986); New York University. Thomas More Scholar. Recipient, American Jurisprudence Award in Agency. Member: The Association of the Bar of the City of New York. Languages: French.

Ms. Manifold served as co-lead counsel in the following cases to recovery on behalf of employees: *Miguel Garcia, et al. v. Lowe's Home Center, Inc. et al.* – Case No. GIC 841120 (Barton) (Cal. Sup. Ct, San Diego) ($1.65 million settlement w/ average class member recovery of $5,500, attorney fees and cost awarded separately) and *Neil Weinstein, et al.*



*v. MetLife, Inc., et al.* – Case No. 3:06-cv-04444-SI (N.D. Cal) ($7.4 million settlement). Ms. Manifold also served as co-lead counsel in the following derivative actions: *In re Atmel Corporation Derivative Litigation*, Master File No. CV 06-4592-JF (N.D. Cal.) ($9.65 million payment to Atmel) and *In re Silicon Storage Technology Inc. Derivative Litig.*, Case No. C 06-04310 JF (N.D. Cal.) (cash payment and re-pricing of options with a total value of $5.45 million). Ms. Manifold also worked as lead counsel on the following class action: *Lewis v. American Spectrum Realty,* Case No. 01 CC 00394, Cal. Sup. Ct (Orange County) ($6.5 million settlement).

BENJAMIN Y. KAUFMAN: *admitted*: New York, United States Supreme Court, United States Court of Appeals for the Fourth Circuit, Southern, Northern and Eastern Districts of New York, District of New Jersey; and District of Colorado. *Education*: Yeshiva University, B.A.; Benjamin N. Cardozo School of Law, Yeshiva University, J.D; New York University, Stern School of Business, M.B.A. Mr. Kaufman focuses on class actions on behalf of defrauded shareholders, investors, and consumers. Mr. Kaufman has extensive experience in complex class actions representing clients including institutional investors such as public and labor pension funds, labor health and welfare benefit funds, as well as private individuals and funds who suffered losses due to corporate fraud. Mr. Kaufman also has extensive experience litigating complex commercial cases in state and federal court.

Mr. Kaufman's successful securities litigations include *In re Deutsche Telekom AG Securities Litigation*, No. 00-9475 (S.D.N.Y.), a complex international securities litigation requiring evidentiary discovery in both the United States and Europe, which settled for $120 million. Mr. Kaufman was also part of the team that recovered $46 million for investors in *In re Asia Pulp & Paper Securities Litigation*, No. 01-7351 (S.D.N.Y.); and $43.1 million in *Freeland v. Iridium World Communications, Ltd.*, No. 99-1002 (D.D.C.).

Mr. Kaufman's outstanding representative results in derivative and transactional litigations include: *In re Trump Hotels Shareholder Derivative Litigation*, No. 96-cv-7820 (S.D.N.Y.) (in settlement Trump personally contributed some of his holdings and the company adopted corporate reforms); *Southwest Airlines Derivative Litigation (Carbon County Employee Retirement System v. Kelly*) (Dist. Ct. Dallas Cnty., Tex.) (derivative matter that resulted in significant reforms to the air carrier's corporate governance and safety and maintenance practices and procedures for the benefit of the company and its shareholders); *Lynn v. Tennessee Commerce Bancorp, Inc., et al.*, No. 3:12-cv-01137 (M.D. Tenn.) ($2.6 million settlement); *In re ClubCorp Holdings Shareholder Litigation*, No. A-17-758912-B (D. Nev.) ($5 million settlement and corporate therapeutics). Mr. Kaufman



also argued the appeal in *In re Comverse Technology, Inc. Derivative Litig.*, 56 A.D.3d 49 (1st Dep't 2008) which led to the seminal New York Appellate Division opinion clarifying the standards of demand futility in New York and *In re Topps Company, Inc. Shareholders Litigation* which resulted in a 2007 decision vindicating the rights of shareholders to pursue claims in the most relevant forum notwithstanding the state of incorporation. Mr. Kaufman has also lectured and taught in the subjects of corporate governance as well as transactional and derivative litigation.

In addition, Mr. Kaufman has represented many corporate clients in complex commercial matters, including complex copyright royalty class actions against music companies. *Puckett v. Sony Music Entertainment*, No. 108802/98 (Sup. Ct. N.Y. Cnty. ); *Shropshire v. Sony Music Entertainment*, No. 06-3252 (S.D.N.Y.), and *The Youngbloods v. BMG Music*, No. 07-2394 (S.D.N.Y.). In *Mich II Holdings LLC v. Schron*, No. 600736/10 (Sup. Ct. N.Y. Cnty.), Mr. Kaufman represented certain prominent real estate investors and successfully moved to dismiss all claims against those defendants. Mr. Kaufman has also represented clients in arbitrations and litigations involving oppressed minority shareholders in closely held corporations.

Currently, Mr. Kaufman represents clients in a wide array of matters, including shareholders of a large cooperative complex alleging breach of fiduciary duty by the board of directors and property manager; purchasers of New York City taxi medallions in a class action pending in New York Supreme Court, Queens County; a New York art gallery in an action against several European insurers over insurance coverage for paintings seized while on exhibit; and shareholders of Saks, Inc. alleging that the board of directors and its investment advisor sold the company for inadequate consideration. *Cohen v. Saks*, 169 A.D.3d 51 (1st Dep't 2019).

Prior to joining Wolf Haldenstein, and prior to joining Milberg LLP in 1998, Mr. Kaufman was a Court Attorney for the New York State Supreme Court, New York County (1988-1990) and Principal Law Clerk to Justice Herman Cahn of the Commercial Division of the New York State Supreme Court, New York County (1990-1998).

Mr. Kaufman is an active member of the Commercial and Federal Litigation Section of the New York State Bar Association, the International Association of Jewish Lawyers and Jurists and the Jewish Lawyers Guild in which he serves as a Vice President. Mr. Kaufman was the Dinner Chair at the Jewish Lawyers Guild Annual Dinner in 2017, 2018, and 2019. Mr. Kaufman is a member of the Board of Trustees of Congregation



Beth Sholom in Lawrence, NY and was a member of the Board of Trustees of the Hebrew Academy of the Five Towns and Rockaways from 2015-2019.

Mr. Kaufman has been recognized by SuperLawyers® each year since 2012.

**THOMAS H. BURT**: *admitted*: New York; U.S. District Courts for the Southern and Eastern Districts of New York, Eastern District of Michigan. *Education*: American University (B.A. 1993); New York University (J.D. 1997). Articles Editor with New York University Review of Law and Social Change. Mr. Burt is a litigator with a practice concentrated in securities class actions and complex commercial litigation. After practicing criminal defense with noted defense lawyer Jack T. Litman for three years, he joined Wolf Haldenstein, where he has worked on such notable cases as *In re Initial Public Offering Securities Litigation*, No. 21 MC 92 (SAS) (S.D.N.Y.) (a novel and sweeping amalgamation of over 300 class actions which resulted in a recovery of $586 million); *In re MicroStrategy Securities Litigation*, No. 00-473-A (E.D. Va.) (recovery of $192 million); *In re DRAM Antitrust Litigation*, No. 02-cv-1486 (PJH) (N.D. Cal.) (antitrust case resulting in $315 million recovery); *In re Computer Associates 2002 Class Action Securities Litigation*, No. 02-cv-1226 (TCP) (E.D.N.Y.)(settled, together with a related fraud case, for over $133 million); *K.J. Egleston L.P. v. Heartland Industrial Partners, et al.*, 2:06-13555 (E.D. Mich.) (recovery included personal assets from former Reagan Administration budget director David A. Stockman); and *Parker Friedland v. Iridium World Communications, Ltd.*, 99-1002 (D.D.C.)(recovery of $43.1 million). Mr. Burt has spoken on several occasions to investor and activist groups regarding the intersection of litigation and corporate social responsibility. Mr. Burt writes and speaks on both securities and antitrust litigation topics. He has served as a board member and officer of the St. Andrew's Society of the State of New York, New York's oldest charity.

**RACHELE R. BYRD**: *admitted*: California; U.S. District Courts for the Southern, Northern, Central and Eastern Districts of California, the Northern District of Illinois, and the Eastern District of Michigan; U.S. Court of Appeals for the Ninth Circuit; U.S. Supreme Court. *Education*: Point Loma Nazarene College (B.A., 1994); University of California, Hastings College of the Law (J.D. 1997). Member: State Bar of California. Ms. Byrd is located in the firm's San Diego office and practices corporate derivative and class action litigation including securities, consumer, privacy and security, antitrust, employment and general corporate and business litigation. Ms. Byrd has played a significant role in litigating numerous class and derivative actions, including *Engquist v. City of Los Angeles*, No. BC591331 (Los Angeles Super. Ct.) (gas tax refund action that recently settled for $32.5 million and injunctive relief, valued at a minimum of $24.5



million over 3 years and $81.8 million over 10 years, following certification of the class and on the eve of a hearing on the parties' cross-motions for summary judgment); *Ardon v. City of Los Angeles*, 52 Cal.4th 241 (2011) (telephone tax refund action against the City of Los Angeles that settled for $92.5 million after a successful appeal and a groundbreaking opinion from the California Supreme Court); *McWilliams v. City of Long Beach*, Cal. Supreme Ct. No. S202037, 2013 Cal. LEXIS 3510 (April 25, 2013) (telephone tax refund action that settled for $16.6 million after a successful appeal and another groundbreaking opinion from the California Supreme Court); *Granados v. County of Los Angeles*, BC361470 (Los Angeles Super. Ct.) (telephone tax refund action that settled for $16.9 million following class certification and a successful appeal); *In re: Zoom Video Communications, Inc. Privacy Litigation*, No. 5:20-cv-0291 (N.D. Cal.) (member of Plaintiffs' Steering Committee; settled for $85 million); *In re Robinhood Outage Litigation*, No. 20-cv-01626-JD (N.D. Cal.) (member of Plaintiffs' Executive Committee); *In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-06714-YGR (N.D. Cal.) (ongoing antitrust class action on behalf of consumers against Apple over its monopolization of the iOS applications aftermarket that secured a favorable opinion in the U.S. Supreme Court: *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019)); *Defrees v. Kirkland, et al.*, 11-04272 (JLS) (C.D. Cal.) ($12.2 million settlement reached in derivative action on the eve of trial); *Bokelman et al. v. FCH Enterprises, Inc.*, No. 18-00209-RJB-RLP (D. Haw.) (settled data breach class action; final approval granted May 3, 2019); *Carrera Aguallo, et al. v. Kemper Corp., et al.*, No. 1:21-cv-01883 (N.D. Ill.) (settled data breach class action where Ms. Byrd was Interim Co-Lead Counsel; final approval granted March 18, 2022); *In re: Scripps Health Data Incident Litigation*, San Diego Super. Ct. No. 37-2021-00024103-CU-BT-CTL (ongoing data breach class action where Wolf Haldenstein is co-lead counsel); *Hinds v. Community Medical Centers, Inc.*, No. STK-CV-UNPI-2021-10404 (San Joaquin Super. Ct.) (ongoing data breach class action where Wolf Haldenstein is co-lead counsel); *Christofferson v. Creation Entertainment, Inc.*, No. 19STCV11000 (Los Angeles Super. Ct.) (settled data breach class action; final approval granted on June 29, 2021); *In re: Hanna Andersson and salesforce.com Data Breach Litig.*, No. 3:20-cv-00812-EMC (N.D. Cal.) (settled data breach class action; final approval granted on June 25, 2021); *Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534-RGK-E (C.D. Cal.) (settled data breach class action; final approval granted on December 6, 2021); *Rossi v. Claire's Stores*, No. 1:20-cv-05090 (N.D. Ill) (settled data breach class action; preliminary approval granted March 28, 2022); *Riggs v. Kroto, Inc., D/B/A/ iCanvas*, No. 1:20-cv-5822 (N.D. Ill.) (settled data breach class action; final approval granted on October 29, 2021); *Thomas v. San Diego Family Care*, San Diego Super. Ct. No. 37-2021-00026758-CU-BT-CTL (settled data breach class action; preliminary approval granted April 13, 2022); *Miller v. CSI Financial, LLC*, No. 37-



2021-00030263-CU-BT-CT (San Diego Super. Ct.) (recently settled data breach class action); *Fields v. The Regents of the University of California*, Alameda Superior Court No. RG21107152 (ongoing data breach class action); *In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.) (ongoing); *In re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.) (settled data breach class action; preliminary approval granted March 3, 2022).

**MATTHEW M. GUINEY**:  *admitted:* New York State; United States Supreme Court; United States Courts of Appeals for the Second, Third and Ninth Circuits; U.S. District Courts for the Southern and Eastern District of New York and numerous others. *Education***:** The College of William & Mary (B.A. in Government and Economics 1998); Georgetown University Law Center (J.D. 2002). Mr. Guiney's primary areas of practice are securities class actions under the Securities Act of 1933 and the Exchange Act of 1934, complex commercial litigation, Employee Retirement Income Security Act (ERISA) actions on behalf of plan participants, Fair Labor Standards Act of 1938 actions concerning overtime payment, and fiduciary duty actions under various state laws. Mr. Guiney has helped recover hundreds of millions of dollars for victims of corporate fraud and abuse in federal and state litigation across the country.  Mr. Guiney was on the merits briefs at the United States Supreme Court on behalf of the plaintiffs/respondents in *Apple Inc. v. Pepper*, No. 17-204, 587 U.S. ___ (2019) where the Court affirmed plaintiffs' antitrust standing under *Illinois Brick*.  Mr. Guiney also represented plaintiffs/respondents at the United States Supreme Court in *China Agritech v. Resh*, 584 U.S. __ (2018), where the Court addressed tolling in the class action context. Mr. Guiney also initially served as counsel of record and briefed opposition to petition for writ of certiorari, and argued and achieved a precedential reversal of motion to dismiss in a published opinion at the United States Court of Appeals for the Ninth Circuit in *Resh v. China Agritech*, No. 15-5543, 2017 U.S. App. LEXIS 9029 (9th Cir. May 24, 2017).

Some of Mr. Guiney's notable results on behalf of investors include: *Mallozzi v. Industrial Enterprises of America, Inc., et al.*, 1:07-cv-10321-DLC (S.D.N.Y.) ($3.4 million settlement on behalf of shareholders); *In re Luxottica Group S.p.A. Securities Litigation*, No. CV 01-3285 (JBW) (MDG) (E.D.N.Y.) ($18.5 million settlement on behalf of shareholders); *In re MBNA Corp. ERISA Litigation*, Master Docket No. 05-429 (GMS), (D. Del) ($4.5 million settlement on behalf of plan participants).

**MALCOLM T. BROWN**: *admitted:* United States District Courts for the Eastern, Northern, and Southern Districts of New York; District of New Jersey; and Eastern



District of Pennsylvania; United States Court of Appeals for the Second Circuit. *Education:* University of Pennsylvania (B.A., Political Science 1988) and Rutgers University School of Law (J.D. 1994). Mr. Brown's primary areas of practice are securities, derivative, M&A litigation and consumer class actions. Recent notable decisions include: *Siegmund v. Bian*, 2019 U.S. Dist. LEXIS 19349 (S.D. Fla. Feb. 6, 2019); *Siegmund v. Bian*, 2018 U.S. Dist. LEXIS 55724, 2018 U.S. Dist. LEXIS 55725 (April 2, 2018); *Johnson v. Ford Motor Co.*, 309 F.R.D. 226 (S.D. W. Va. 2015); *Thomas v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 43268 (D.S.C. Mar. 31, 2014); *In re Merkin Sec. Litig.*, 2015 U.S. Dist. LEXIS 178084 (S.D.N.Y. Aug. 24, 2015). Prior to joining Wolf Haldenstein, Mr. Brown was a business litigation attorney who represented financial institutions, corporations and partnerships and advised clients on business disputes, reorganizations, dissolutions and insurance coverage matters.

Mr. Brown is a member of the National Association of Pension Plan Attorneys and the National Black Lawyers, and a Fellow of the American Bar Foundation.

SPECIAL COUNSEL

JUSTICE HERMAN CAHN: *admitted:* New York. *Education*: Harvard Law School and a B.A. from City College of the City University of New York. Justice Herman Cahn was first elected as Judge of the Civil Court of the City of New York in 1976. He subsequently served as an Acting Justice of the Supreme Court from 1980 until 1992, when he was elected to the Supreme Court. Throughout his decades on the bench, he principally handled civil cases, with the exception of 1981 until 1987, when he presided over criminal matters. Justice Cahn was instrumental in the creation of, and a founding Justice in, the Commercial Division within the New York State Supreme Court. He served as a Justice of the Commercial Division from its inception in 1993.

Among his most notable recent cases are the consolidated cases stemming from the Bear Stearns merger with JP Morgan (*In re Bear Stearns Litigation*); litigation regarding the America's Cup Yacht Race (*Golden Gate Yacht Club v. Société Nautique de Genève*); litigation stemming from the attempt to enjoin the construction of the new Yankee Stadium (*Save Our Parks v. City of New York*); and the consolidated state cases regarding the rebuilding of the World Trade Center site (*World Trade Center Properties v. Alliance Insurance; Port Authority v. Alliance Insurance*).

Justice Cahn is a member of the Council on Judicial Administration of the Association of the Bar of the City of New York. He has also recently been appointed to the



Character and Fitness Committee of the Appellate Division, First Department.  He is on the Register of Mediators for the United States Bankruptcy Court, Southern and Eastern Districts of New York.

Before ascending the bench, Justice Cahn practiced law in Manhattan.  He was first admitted to the New York bar in 1956.  He is admitted to practice in numerous courts, including the New York State courts, the Southern District of New York and the United States Supreme Court.

Of Counsel

**DANIEL W. KRASNER**:  *admitted:*  New York; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, Central District of Illinois, and Northern District of Michigan.  *Education:* Yale Law School (LL.B., 1965); Yeshiva College (B.A., 1962).  Mr. Krasner is of counsel at Wolf Haldenstein.  He began practicing law with Abraham L. Pomerantz, generally credited as the "Dean of the Class Action Bar."  He founded the Class Litigation Group at Wolf Haldenstein in 1976.

Mr. Krasner received judicial praise for his class action acumen as early as 1978.  *See, e.g., Shapiro v. Consolidated Edison Co.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 96,364 at 93,252 (S.D.N.Y. 1978) ("in the Court's opinion the reputation, skill and expertise of . . . [Mr.] Krasner, considerably enhanced the probability of obtaining as large a cash settlement as was obtained"); *Steiner v. BOC Financial Corp.*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 97,656, at 98,491.4, (S.D.N.Y. 1980) ("This Court has previously recognized the high quality of work of plaintiffs' lead counsel, Mr. Krasner").  The New York Law Journal referred to Mr. Krasner as one of the "top rank plaintiffs' counsel" in the securities and class action fields.  In connection with a failed 1989 management buyout of United Airlines, Mr. Krasner testified before Congress.

More recently, Mr. Krasner has been one of the lead attorneys for plaintiffs in some of the leading Federal multidistrict cases in the United States, including the IPO Litigation in the Southern District of New York, the Mutual Fund Market Timing Litigation in the District of Maryland, and several Madoff-related litigations pending in the Southern District of New York.  Mr. Krasner has also been lead attorney in several precedent-setting shareholder actions in Delaware Chancery Court and the New York Court of Appeals, including *American International Group, Inc. v. Greenberg*, 965 A.2d 763 (Del. Ch. 2009) and the companion certified appeal, *Kirschner v. KPMG LLP*, Nos. 151, 152, 2010



N.Y. LEXIS 2959 (N.Y. Oct. 21, 2010); *Teachers' Retirement System of Louisiana and City of New Orleans Employees' Retirement System, derivatively on behalf of nominal defendant American International Group, Inc., v. PricewaterhouseCoopers LLP*, No. 152 (New York, October 21, 2010); *In re CNX Gas Corp. S'holders Litig.*, C.A. No. 5377-VCL, 2010 Del. Ch. LEXIS 119 (Del. Ch., May 25, 2010); *In re CNX Gas Corp. S'holders Litig.*, C.A. No. 5377-VCL, 2010 Del. Ch. LEXIS 139, (Del. Ch. July 5, 2010), appeal refused, 2010 Del. LEXIS 324, 2010 WL 2690402 (Del. 2010).

Mr. Krasner has lectured at the Practicing Law Institute; Rutgers Graduate School of Business; Federal Bar Council; Association of the Bar of the City of New York; Rockland County, New York State, and American Bar Associations; Federal Bar Council, and before numerous other bar, industry, and investor groups.

**PETER C. HARRAR**:   *admitted*;  **New York;**  United States Court of Appeals for the Fourth Circuit and the United States District Courts for the Southern and Eastern Districts of New York.   *Education*: Columbia Law School (J.D. 1984); Princeton University, Phi Beta Kappa, *magna cum laude*.  Mr. Harrar is of counsel at the firm and has extensive experience in complex securities and commercial litigation on behalf of individual and institutional clients.

He has represented investment funds, hedge funds, insurance companies and other institutional investors in a variety of individual actions, class actions and disputes involving mortgage-backed securities and derivative instruments. Examples include *In re EMAC Securities Litigation*, a fraud case concerning private placements of securitized loan pools, and *Steed Finance LDC v. LASER Advisors, Inc.*, a hybrid individual and class action concerning the mispricing of swaptions.

Over the years, Mr. Harrar has also served as lead or co-lead counsel in numerous securities class and derivative actions throughout the country, recovering hundreds of millions of dollars on behalf of aggrieved investors and corporations. Recent examples are some of the largest recoveries achieved in resolution of derivative actions, including *American International Group Consolidated Derivative Litigation*) ($90 million), and *Bank of America/Merrill Derivative Litigation* ($62.5 million).

**JEFFREY G. SMITH**:   *admitted:*   New York; California; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Circuits; U.S. Tax Court; U.S. District Courts for the Southern and Eastern Districts of New York, Southern, Central and Northern Districts of California and the Districts of Colorado and Nebraska.  *Education*: Woodrow Wilson School of



Public and International Affairs, Princeton University (M.P.A., 1977); Yale Law School (J.D., 1978); Vassar College (A.B., *cum laude generali*, 1974). At Yale Law School, Mr. Smith was a teaching assistant for the Trial Practice course and a student supervisor in the Legal Services Organization, a clinical program. Member: The Association of the Bar of the City of New York; New York State and American (Section on Litigation) Bar Associations; State Bar of California (Member: Litigation Section); American Association for Justice. Mr. Smith has frequently lectured on corporate governance issues to professional groups of Fund trustees and investment advisors as well as to graduate and undergraduate business student groups, and has regularly served as a moot court judge for the A.B.A. and at New York University Law School. Mr. Smith has substantial experience in complex civil litigation, including class and derivative actions, tender offer, merger, and takeover litigation. Mr. Smith is rated "AV" by Martindale Hubble and, since its inception in 2006, has been selected as among the top 5% of attorneys in the New York City metropolitan area chosen to be included in the Super Lawyers Magazine.

**ROBERT ALTCHILER:** *Education*: State University of New York at Albany (B.S., Finance/Marketing,1985); The George Washington University (JD, 1988).

Robert's practice focuses primarily in the areas of White Collar criminal investigations, corporate investigations, entertainment, litigation, and general corporate counseling. Robert's diverse practice had developed as a result of his extensive international business contacts and relationships in the entertainment world, in the United States and the United Kingdom. Robert had successfully defended cases and resolved matters spanning the most complex entertainment controversies, to virtually any imaginable complex criminal or corporate matter.

Robert has successfully defended individuals and corporations in a wide array of multifaceted investigations in areas such as mortgage fraud, securities fraud, tax fraud, prevailing wage, money laundering, Bank Secrecy Act, embezzlement, bank and wire fraud, theft of trade secrets, criminal copyright infringement, criminal anti-counterfeiting, Foreign Corrupt Practices Act (FCPA), International Traffic In Arms Regulations (ITAR), racketeering, continuing criminal enterprises, and circumvention of trade restrictions, among many others. Robert also specializes in non-criminal investigations relating to various topics, including finding money allegedly being hidden by individuals, ascertaining the identities of individuals actually involved in corporate matters (when a client believes those identities are being concealed), and



running undercover "sting" operations as part of civil and commercial litigation support.

Because of Robert's significant business contacts in the United Kingdom, and the United States, he is frequently called upon to assist clients in various forms of complex business matters, both domestic and international.  Robert's clients look to him as a trusted, experienced, creative, fearless hand who has demonstrated an ability to navigate even the most difficult and desperate situations.  Robert prides himself on his ability to develop aggressive creative winning strategies for his clients even when the clients believe their circumstances are hopeless.

In 1988, Robert started his legal career as a prosecutor in New York City, where he prosecuted a wide array of cases and headed up a variety of different investigations. As a prosecutor, he presented hundreds of cases to grand juries, and ran numerous investigations. In addition to trying several dozen serious cases, ranging from murder to fraud to narcotics violations, he also ran wiretap and grand jury investigations involving money laundering and other financial crimes, as well as a wiretap and investigation concerning a plot to assassinate a prominent NYC judge. Upon leaving the government, Robert began focusing on defending individuals and entities under government investigation and/or indictment. Early in private practice he defended numerous law enforcement officers under administrative and criminal scrutiny, in courts and administrative proceedings. His particular area of practice permitted Robert to further develop and strengthen his already close ties to law enforcement.

In addition to his practice, Robert has been an adjunct law professor at Pace University Law School since 1998, where he teaches trial advocacy, a course designed to teach law students how to be trial lawyers via a curriculum including the mock trial of a murder case. Robert is also a faculty member of the EATS Program run by Stetson Law School, an acclaimed program designed to teach law school trial advocacy professors creative and innovative pedagogical methods. Robert has also been a featured participant and lecturer at Cardozo Law School's acclaimed Intensive Trial Advocacy Program in New York City, and has also taught at Yale Law School. Robert's trial advocacy teaching requires him to constantly integrate new developments in communication theory and trial techniques into his teaching methods. Given the changing way students (and prospective jurors) communicate and digest information (via Twitter, Instagram and Snapchat, for example) Robert is a recognized leader at integrating neuroscientific principles into his teaching.  By actively participating in the weekly trails his students



conduct in class, and by frequently demonstrating methods, he is able to continually adapt his own communication skills and integrate cutting-edge developments into his own practice.

Robert is Special Advisor to the Dean of the Mt. Sinai School of Nursing, an adjunct professor at the school, a member of the Board of Trustees and the Chair of the Board of Trustees Nominations Committee. In his role as Special Advisor, Robert is tasked with counselling the Dean on innovative pedagogical methods designed to facilitate teaching Narrative Care and other topics. Robert instructs faculty on various topics, and will be teaching courses at the school in the immediate future.

Robert graduated from the George Washington University Law School (formerly, The National Law Center), where he began his career as an advocate by conducting administrative hearings and trials during his second and third year. Prior to GW, Robert graduated with honors from the Business School at the State University of New York at Albany in 1985. He is also a 1996 graduate of the National Criminal Defense College and a 1997 graduate of the National Institute for Trial Advocacy's Harvard Teacher Training Program.  Robert has also made dozens of television appearances on Fox, Court TV, and Tru TV, providing legal commentary on televised trials, and participating in discussions related to pertinent issues.

JENNY YOUNG DU PONT: *admitted*: New York; Massachusetts; District of Columbia; U.S. Supreme Court. *Education*: Princeton University (A.B. *cum laude*); Georgetown University Law Center/School of Foreign Service (J.D./M.S.F.S. *magna cum laude*); Order of the Coif; *Georgetown Law Journal*, Notes and Comments Editor.

Ms. du Pont has extensive experience representing domestic and international companies ranging in size from small privately-held firms to large public companies in a variety of corporate, investment, banking, insurance, finance, and employment matters.  Ms. du Pont began her legal career at two AmLaw 100 firms in Washington, D.C. and London, U.K. and a decade later moved into in-house counsel roles, first with Plymouth Rock Assurance Corporation in Boston, MA, and later with Millennium Management, LLC in New York.  Ms. du Pont also advises and presents on issues related to family businesses, family offices, and managing wealth transfer across generations.

In addition to her legal experience, Ms. du Pont has significant experience in the non-profit sector.  Ms. du Pont was President and CEO of The Garden Conservancy in Cold



Spring, New York and Executive Director of Miracle House of New York, Inc., and has acted a legal and strategic advisor to a variety of for profit and non-profit entities in New York. For more than 20 years, Ms. du Pont also has been a director, trustee, and officer for a broad range of educational, cultural, scientific, and service non-profit entities. Ms. du Pont served for a number of years as a Trustee of Phillips Exeter Academy, in Exeter, NH, and as a member and Vice Chair of the Warrant Committee for the Town of Dover in Massachusetts. She is currently a Director of the American Friends of the British Museum and of the American Patrons of the National Galleries and Library of Scotland, serves as an Advisory Council member for the Untermyer Gardens Conservancy in Yonkers, NY and the Sing Sing Prison Museum Master Narrative Project, in Ossining, NY, and is chair of the Advisory Council for the Conservation Law Foundation in Boston, MA.

**KATE MCGUIRE**: *admitted*: New York; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: University of California at Santa Cruz (B.A. 1995), Georgetown University Law Center (J.D., 1998); Member: *Georgetown Immigration Law Journal*.

Ms. McGuire has extensive experience prosecuting complex litigation. Her work encompasses consumer and data protection class actions, securities class and derivative shareholder cases and nationwide antitrust suits.

She is a member of the Firm's Consumer Protection practice group and, in that context, has worked intensively to protect classes of consumers under a range of state and federal laws. Recently, she served as a member of the co-lead counsel team in *Simerlein et al. v. Toyota Motor Corporation et al.*, 3:17-CV-01021-VAB (D. Conn.), representing more than a million owners of Sienna minivans in litigation that settled for class-wide benefits valued at between $30 and $40 million. Presently, she serves on a team representing plaintiffs in multi-district litigation against Fisher-Price and Mattel, relating to Rock 'n Play infant sleepers which are alleged to be dangerous and misleadingly marketed. She has also served as a member of the firm's lead or co-counsel teams in other consumer protection cases, including litigation based upon allegations of misrepresentations and omissions concerning the purported safety of electronic cigarettes.

Ms. McGuire has also represented plaintiffs with respect to the protection of their civil rights. For example, she represented a blind plaintiff in a suit under the Americans with Disability Act against a major trading online trading company, and represented a



group of minority business owners in federal civil rights litigation concerning disparate treatment which settled for significant governance therapeutics.

**CARL MALMSTROM:** *admitted:* Illinois; Minnesota; United States Court of Appeals for the Seventh Circuit; Northern and Southern Districts of Illinois; Northern District of Indiana; District of Minnesota; Eastern District of Missouri; Western District of New York. *Education:* University of Chicago (A.B., Biological Sciences, 1999; A.M., Social Sciences, 2001); The University of Hawai'i at Manoa (M.A., Anthropology, 2004); Loyola University Chicago School of Law (J.D., 2007). Prior to joining the firm, Mr. Malmstrom worked for the City of Chicago Department of Law in the Municipal Prosecutions Division; he is a member of the Chicago Bar Association. Mr. Malmstrom has substantial experience litigating complex class actions in several practice areas, including antitrust, consumer fraud, and data security. Representative cases in which he has represented plaintiffs include *Bokelman et al. v. FCH Enterprises, Inc.*, Case No. 1:18-cv-209 (D. Haw.), involving customers of Zippy's Restaurants in Hawaii whose personal data was stolen by hackers, *In re: Experian Data Breach Litigation*, Case No. 8:15-cv-1592 (C.D. Cal.); *Freeman-Hargis v. Taxi Affiliation Services, LLC*, Case No. 2016-CH-02519 (Cir. Ct. Cook Cty.), involving customers of several taxi services in Chicago who were unlawfully charged fees for using credit cards in taxis.

### ASSOCIATES

**PATRICK DONOVAN:** *admitted:* New York; U.S. District Courts for the Southern and Eastern Districts of New York; United States Court of Appeals for the Second and Fourth Circuits. *Education:* Iona College (B.A., Business Management, 2007); St. John's University School of Law (J.D. 2011). Mr. Donovan's primary areas of focus are securities, derivative and M&A litigation.

**LILLIAN GRINNELL:** *admitted*: New York; United States District Courts for the Southern and Eastern Districts of New York; United States Court of Appeals for the Federal Circuit. *Education*: Bryn Mawr College (A.B., Philosophy and Political Science, 2016); New York University Law School (J.D. 2019). Prior to joining Wolf Haldenstein, Ms. Grinnell served as an Excelsior Service Fellow with the Consumer Protection and Financial Enforcement Division of the NYS Department of Financial Services.

**ROURKE DONAHUE:** *admitted*: New York. *Education:* University of North Carolina at Chapel Hill (B.A., Philosophy, 2017), Honors Program; Georgetown University Law Center (J.D. 2020). Prior to joining the firm, Mr. Donahue clerked for the Hon. Timothy P. Lydon, Presiding Judge of Equity, at the New Jersey Superior Court in Trenton, New



Jersey. In law school, Mr. Donahue interned at the Department of Justice's Civil Division, Christie's Auction House, and Manhattan Legal Services and served as the Administrative Editor of the *Georgetown Environmental Law Review*.

**ALEX J. TRAMONTANO:** *admitted*: California; U.S. District Courts for the Southern, Central and Eastern Districts of California; United States Court of Appeals for the Ninth Circuit. *Education:* University of Massachusetts, Amherst (B.A., Political Science and Legal Studies, *cum laude*, 2008); California Western School of Law (J.D., 2011). Mr. Tramontano's primary areas of focus are securities, anti-trust, unfair and deceptive practices, civil rights and data breach related class actions. Prior to joining Wolf Haldenstein, Mr. Tramontano worked as an associate at an AmLaw 100 firm, as well as other regional law firms in southern California. Mr. Tramontano has over a decade of litigation experience defending and prosecuting complex actions on behalf of individuals and businesses in both Federal and State courts. Mr. Tramontano began his legal career as a Police Cadet at the University of Massachusetts Amherst. He went on to law school and joined the San Diego District Attorney's Office as a Certified Legal Intern before transitioning to private practice.

**FERDEZA ZEKIRI:** *admitted:* California; U.S. District Court for the Central District of California. *Education:* Gonzaga University (B.A., Criminal Justice and Psychology, 2017); University of California, Los Angeles School of Law (J.D. 2020). In law school, Ms. Zekiri served as a Managing Editor of the UCLA School of *Law's Journal of Environmental Law & Policy,* and worked as a research assistant for the UCLA Law Library. Prior to joining Wolf Haldenstein, Ms. Zekiri was an associate attorney at Talkov Law where she primarily focused on real estate litigation.

## PARAPROFESSIONALS

**GREGORY STONE:** *Education:* University of Pennsylvania (B.S., Economics, 1979); University of California, Los Angeles (MBA, 1983). Mr. Stone is the Firm's Director of Case and Financial Analysis. He assists partners and associates in identifying and researching potential federal class action securities, derivative litigation and merger & acquisition (M&A) litigation. Mr. Stone has worked with leading securities class action firms in an analytical and investigative role for over 18 year throughout the United States, and has an extensive professional background in the accounting and investment professions. He plays a key role in new case development, including performing investigations into potential securities fraud class actions, derivative and other



corporate governance related actions. By using a broad spectrum of financial news and legal industry research tools, Mr. Stone analyzes information that helps identify and support the theories behind the firm's litigation efforts.

## Non-Discrimination Policies

Wolf Haldenstein does not discriminate or tolerate harassment against any employee or applicant because of race, creed, color, national origin, sex, age, disability, marital status, sexual orientation, or alienage or citizenship status and designs its hiring practices to ensure that minority group members and women are afforded equal employment opportunities without discrimination.  The Firm is in compliance with all applicable Federal, State, County, and City equal employment opportunity laws.

Wolf Haldenstein is proud of its long history of support for the rights of, and employment opportunities for, women, the disadvantaged, and minority group persons, including the participation in civil rights and voter registration activities in the South in the early 1960s by partners of the Firm; the part-time employment of disadvantaged youth through various public school programs; the varied *pro bono* activities performed by many of the Firm's lawyers; the employment of many women and minority group persons in various capacities at the Firm, including at the partner level; the hiring of ex-offenders in supported job training programs; and the use of minority and women-owned businesses to provide services and supplies to the Firm.

270 MADISON AVENUE
NEW YORK, NY 10016
Telephone: 212-545-4600
Telecopier: 212-545-4653
www.whafh.com

SYMPHONY TOWERS
750 B STREET, SUITE 1820
SAN DIEGO, CA 92101
Telephone:  619-239-4599
Telecopier: 619-234-4599

111 West Jackson
SUITE 1700
CHICAGO, IL 60604
Telephone: 312-984-0000
Telecopier: 312-214-3110



**EXHIBIT 3**





### Arnold Law Firm Biography

**Sacramento Office**

865 Howe Avenue
Sacramento, CA 95825
916-777-7777
916.239.4778 (d)
415.595.3302 (c)

**Los Angeles Office**

12100 Wilshire Boulevard
Suite 800
Los Angeles, CA 90025
Phone: 747.777.7748

**justice4you.com**

Founded in 1975 by Clayeo C. Arnold, the Arnold Law Firm is a litigation-oriented practice with locations in Sacramento and Los Angeles, California. In keeping with its founding principles, our firm consciously works for the interests of individual people and small businesses — not for large corporations or insurance companies.

The Arnold Law Firm prosecutes class action, mass tort, *qui tam*, product defect, employment, and personal injury cases. We pride ourselves on being a practice of trial lawyers, typically trying a minimum of ten cases per year to verdict. In addition to our practice throughout the state of California in both state and federal courts, we also pursue class action, *qui tam* and multi-district litigation claims on a nationwide basis.

Our team of twelve attorneys collectively encompass a broad and diverse professional background, including plaintiff contingency work, public entity representation, criminal defense, and civil defense. We have current and past board members of Capital City Trial Lawyers Association, as well as members of numerous prestigious professional organizations, including the American Board of Trial Advocates, American Association for Justice, Association of Trial Lawyers of America, Sacramento County Bar Association, and Consumer Attorneys of California.

Our firm's operating structure is comprised of multiple teams directed towards specific practice areas. These teams regularly and intentionally collaborate and exchange information between their practice areas to improve the quality of representation for all of our clients.



### Arnold Law Firm Biography

(continued)

For over four decades the Arnold Law Firm has developed a respected and extensive network of co-counsel and experienced contract counsel to rapidly expand our capabilities as necessary on an *ad hoc* basis (e.g., document review). We employ a robust staff of highly qualified and experienced legal staff including assistants and paralegals to ensure that attorney time is spent in the most efficient manner possible.

The Arnold Law Firm employs technology to increase productivity thereby resulting in more efficient and effective legal representation and driving excellent results on behalf of its clients. Specifically, the firm increases its efficiency by using numerous forms of legal and practice management software including template software, client management software, and secure internet-based client management for mass tort or multi-plaintiff litigation. We also invest in appropriate billing and tracking software for contemporaneous hourly record keeping.

The Arnold Law Firm places substantial value on representing clients in a manner that is both effective and courteous. Integrity with clients, the courts, and adverse counsel are all considered to be as indispensable as successful results.

Our highly accomplished counsel has a long history of successfully handling class actions across a range of industries, including data breach cases.



**M. Anderson Berry Biography**



The Arnold Law Firm has a proven track record of success and the ability to work efficiently and cooperatively with others. In addition, our firm has the availability and resources necessary to litigate complex class actions.

### M. Anderson Berry

M. Anderson Berry heads the data breach complex litigation and *qui tam* practices for the Arnold Law Firm. He brings substantial experience in complex litigation matters with a history of litigating in an efficient and practical manner, including as Lead Class Counsel, Co-Lead Class Counsel, and as a member of numerous Plaintiffs' Executive Committees.

Mr. Berry has an extensive background in privacy and consumer/government fraud litigation, actively participating in a currently sealed False Claims Act case involving widespread cybersecurity fraud upon the United States, and the class action litigations filed in federal and state courts across the nation, set out below.

Before joining the Arnold Law Firm in 2017, Mr. Berry worked as an Assistant United States Attorney for the Eastern District of California. As part of the Affirmative Civil Enforcement unit, Mr. Berry handled a wide variety of complex cases and recovered millions of dollars for the United States.

Before working for the Department of Justice, Mr. Berry practiced at one of the world's largest law firms, Jones Day, where he represented clients in international arbitration and complex commercial litigation, including defending class action allegations.

Mr. Berry was first selected as the Northern California Super Lawyers Rising Star in 2015 in the field of complex civil litigation.



**M. Anderson Berry Biography**

(continued)

Mr. Berry attended the University of California, Berkeley, where he majored in English and graduated with highest honors. Mr. Berry was inducted into the Phi Beta Kappa Honor Society and served as President of the English Undergraduate Associate.

After working as a private investigator for both criminal and civil investigations in the San Francisco Bay Area, Anderson graduated from U.C. Berkeley School of Law, where he was a Senior Editor for both the *Berkeley Journal of Criminal Law* and *Berkeley Journal of International Law*.

He was admitted to the California Bar in 2009 and is admitted to practice in the Northern, Eastern, Southern and Central Districts of California. Mr. Berry is also admitted to practice in the Northern District of Illinois, the Eastern District of Michigan, the Northern and Southern Districts of Indiana, the Districts of Colorado and Nebraska, and the Fourth and Ninth Circuit Courts of Appeals.

Mr. Berry was raised in Moraga, California and now lives in Fair Oaks, California, with his wife and three young sons.

### Select Data Breach Cases

*In re: Fred Hutchinson Cancer Center Data Breach Litig.,* 23-2-24266-1 SEA (Wash Super, King) (**Co-Lead Counsel**);

*In Re: Entertainment Partners Data Breach Litigation,* 2:23-cv-06546-CAS (C.D. Ca.) (**Co-Lead Counsel**)

*In Re: Snap Finance Data Breach*, 2:22-cv-00761-TS-JCB (D.UT.) (**Co-Lead Counsel**) (settled)

*Ware v. San Gorgonio Memorial Hosp.,* CVRI2301216 (Cal Super, Riverside) (**Co-Lead Counsel**)

*In Re:  Overby-Seawell Co. Customer Data Security Breach Lit.,* 1:23-md-03056-SDG (N.D. Ga.) (**Co-Lead Counsel**);

*Holmes v. Elephant Insurance Company, et al*., 3:22-cv-00487-JAG (E.D. VA.) (**Co-Lead Counsel**);

*In Re: Arthur J. Gallagher Data Breach Litigation,* 1:21-cv-04056 (N.D.Ill.) (**Co-Lead Counsel**);



**M. Anderson Berry Biography**

(continued)

*Petimat Dudurkaewa et al. v. Midfirst Bank et al.,* 5:23-cv-00817-R (W.D. Ok.) (**Executive Comm**.);

*In Re: CaptureRx Data Breach Litigation*, 5:21-cv-00523 (W.D.TX.)(**Co-Lead Counsel**) (settled);

*Rossi v. Claire's Stores, 1:*20-cv-05090 (N.D. Il.) (**Co-Lead Counsel**) (settled);

*Desue v. 20/20 Eye Care Network, Inc. et al.,* 0:21-cv-61275 (S.D. Fla.) (**Executive Comm**.);

*In re: Mednax Services, Inc. Customer Data Security Breach Litigation,* 21-MD-02994 (S.D. Fl.) (**Executive Comm.**);

*Bowdle v. King's Seafood Co. LLC,* 8:21-cv-01784-CJC-JDE, (CD. Cal.) (Class Counsel) (settled);

*Hashemi et al. v. Bosley, Inc.* 2:21-cv-00946 (CD. Cal.) (Class Counsel) (settled);

*Heath et al. v. Insurance Technologies Corp et al.,* 3:21-cv-01444 (N.D. Tex.) (Class Counsel) (settled);

*Carrera Aguallo et al. v. Kemper Corporation et al.,* 1:21-cv-01883 (N.D. Ill.) (Class Counsel) (settled);

*Ahn et al. v. Herff Jones, LLC,* 1:21-cv-01381 (S.D. Ind.) (settled);

*Bitmouni v. Paysafe Limited,* 3:21-cv-00641-JCS (N.D. Cal.) (Class Counsel) (settled);

*Gaston v. FabFitFun, Inc.,* 2:20-cv-09534 (C.D. Cal.) (Class Counsel) (settled);

*In Re: Ambry Genetics Data Breach Litigation,* 8:20-cv-00791 (C.D. Cal.) (settled);

*In Re: Morgan Stanley Data Security Litigation,* 1:20-cv-05914 (S.D.N.Y.) (settled);

*Pfeiffer et al. v. RadNet, Inc.,* 2:20-cv-09553-RGK-SK (C.D. Cal.)(Class Counsel) (settled);

*Thomsen v. Morley Companies, Inc.,* 1:22-cv-10271-TLL (E.D. Mi.) (settled);

*In re Lakeview Loan Servicing Data Breach Litigation,* 1:22-cv-20955-DPG (S.D. Fl.);



**Gregory Haroutunian
Biography**



<u>**Gregory Haroutunian**</u>

Gregory Haroutunian is the Senior Associate and of the data breach complex litigation and *qui tam* practices for the Arnold Law Firm. He brings substantial experience in complex litigation matters with a history of litigating in an efficient and practical manner.

Mr. Haroutunian has an extensive background in complex litigation, privacy and consumer/government fraud litigation, actively participating in a currently sealed False Claims Act case involving widespread cybersecurity fraud upon the United States, and the class action litigations filed in federal courts across the nation, set out below.

Before joining the Arnold Law Firm in 2021, Mr. Haroutunian worked in diverse practices across the nation including litigating dozens of products liability medical device cases in state and federal courts throughout the country and employment and construction related complex class-action and surety bond litigations involving multi-million dollar settlements throughout New York and New Jersey.

Mr. Haroutunian attended Columbia College, Columbia University, where he majored in Political Science and served with the New York State Senate Minority Leader's Office.

After working as a paralegal for a small general litigation and elder law firm in New York City, Gregory attended the Georgetown University Law Center where he graduated *cum laude*. While at Georgetown Gregory held a year-long judicial internship under Chief Administrative Law Judge Ronnie A. Yoder of the United States Department of Transportation and served as a legal intern at the National Whistleblowers' Center and the firm Kohn, Kohn, & Colapinto where he had his first experiences in *qui tam* and fraud cases.

Work that Mr. Haroutunian did at Georgetown comparing and analyzing aviation regulations was subsequently published in the Law Journal of the Pacific.



**Gregory Haroutunian
Biography (cont.)**

He was admitted to the New Jersey and New York Bars in 2013 and the California Bar in 2020 and is admitted to practice in the Northern, Eastern, Southern, and Central Districts of California, the Southern and Northern Districts of New York, and the District of New Jersey. Mr. Haroutunian is also admitted to practice in the Southern and Northern Districts of Indiana and the District of Colorado.

Mr. Haroutunian has been separately appointed Lead Counsel or Class Counsel in the following matters:

*Benavides v. HopSkipDrive, Inc.*, No. 23STCV31729 (Cal. Super. Los Angeles) (Lead Counsel);

*Ishaq v. F21OpCo LLC*, 2:23-cv-07390-MEMF-AGR (C.D. Cal.) (Lead Counsel);

*Bitmouni v. Paysafe Payment Processing Solutions*, LLC, No. 3:21-cv-00641-JCS (N.D. Cal.) (Class Counsel);

*In re: Ethos Technologies Inc. Data Breach Litig.*, No. 3:22-cv-09203-SK (N.D. Cal.) (Class Counsel);

*In re: Blackhawk Network Data Breach Litig.,* No. 3:22-cv-07084-CRB (N.D. Cal.) (Class Counsel);

*Franchi v. Barlow Respiratory Hospital*, No. 22STCV09016 (Cal. Super. Los Angeles) (Class Counsel);

*Parker v. Metromile, LLC,* No. 27-2022-000-49770-CU-BT-CTL (Cal. Super. San Diego) (Class Counsel).

*Gilbert et al. v. BioPlus Specialty Pharmacy Services, LLC,* Case No. 6:21-cv-02158-RBD-DCI (M.D. Fla.) (Class Counsel)

Mr. Haroutunian was raised in Montvale, New Jersey.

# EXHIBIT 4

# Siri | Glimstad

FIRM RESUME



# Class Action Practice Group

With attorneys across the country, Siri & Glimstad LLP represents clients from coast to coast in class actions and mass torts in state and federal courts. Utilizing decades of experience at major global law firms, we tackle each dispute with a sophisticated, strategic approach, and we fight hard for every one of our clients.

# Offices Nationwide

**NEW YORK**
745 Fifth Ave • Suite 500
New York, NY 10151

**MIAMI**
20200 West Dixie Highway • Ste 902
Aventura, FL 33180

**PHOENIX**
11201 N. Tatum Boulevard • Ste 300
Phoenix, AZ 85028

**DETROIT**
220 West Congress Street • 2nd Floor
Detroit, MI 48226

**WASHINGTON D.C.**
2101 L Street N.W. • Ste 300  Washington,
D.C. 20037

**LOS ANGELES**
700 S Flower Street • Ste 1000
Los Angeles, CA 90017

**AUSTIN**
1005 Congress Avenue • Ste 925-C36
Austin, TX 78701

**CHARLOTTE**
525 North Tryon Street • Ste 1600
Charlotte, NC 28202

**1-888-SIRI-LAW (747-4529)**

# Admitted States

Arizona • California • Connecticut • District of Columbia • Florida • Idaho • Illinois
Kentucky • Massachusetts • Maryland • Michigan • Mississippi • New Jersey
New Mexico • New York • North Carolina • North Dakota • Oklahoma • Pennsylvania
South Carolina • Tennessee • Texas • Virginia



www.sirillp.com



# Attorney Profiles

## Aaron Siri
*Managing Partner*

Aaron Siri is the Managing Partner of Siri & Glimstad LLP and has extensive experience in a wide range of complex civil litigation matters, with a focus on civil rights, class actions, and commercial litigation.



Mr. Siri has successfully litigated numerous civil rights cases, prosecuted class actions against large corporations resulting in payments to hundreds of thousands of Americans, and has acted as counsel to clients in multiple commercial disputes exceeding one billion dollars, including regarding Oracle Team's challenge for the America's Cup and the collapse of the World Trade Center.

Prior to founding Siri & Glimstad, Mr. Siri was a litigation attorney at Latham & Watkins for over five years. Before Latham, Mr. Siri clerked for the Chief Justice of the Supreme Court of Israel from 2004-2005 where he advised the Chief Justice of relevant American, English (including Commonwealth Countries), and International Law precedents for cases of first impression.

Mr. Siri has also been involved in various pro-bono matters, including representation of asylum applicants, housing discrimination victims, and non-profit organizations in tenant-landlord disputes, as well as being chosen as a Frank C. Newman delegate to present a paper he authored before the United Nations Human Rights Sub-Commission.

Mr. Siri earned his law degree at the University of California, Berkeley School of Law where he received four Prosser Prizes and ten High Honors. He was also the Editor-in-Chief and founder of the Berkeley Business Law Journal, which he developed into a nationally recognized publication, and was ranked as the leading commercial law journal in the country.

Prior to law school, Mr. Siri was an auditor at Arthur Andersen LLP, where he examined internal controls and audited corporate documents for private and public micro-cap technology companies. Mr. Siri is a Certified Public Accountant and an attorney admitted in federal and state courts across the country.

Mr. Siri is regularly interviewed on national television for his expertise regarding certain legal issues. He has also been published in the Washington Post, Stat News, and Bloomberg.



# Mason A. Barney
*Partner*



Mason A. Barney is an experienced trial attorney who for nineteen years has represented both individuals and corporations in complex litigations. Mr. Barney received his J.D., *summa cum laude* from Brooklyn Law School, in 2005, where he graduated second in his class of nearly 500 students, and received numerous academic honors, in addition to being an editor on the Brooklyn Law Review. He then served as a law clerk to the Honorable Judge David G. Trager in the U.S. District Court for the Eastern District of New York. After clerking, he joined the litigation department at Latham & Watkins LLP, and later joined Olshan Frome Wolosky LLP a large established New York City law firm. Before law school, Mr. Barney earned his B.A. from Bowdoin College, where he double majored in Computer Science and Studio Art, and after college he served as a lead database developer for three years at a successful Internet start-up in Washington D.C.

Mr. Barney focuses his practice on class actions and representing individuals in complex litigations. In this practice he has won tens of millions of dollars for his clients. Among other matters, Mr. Barney has fought to stop companies from illegally spamming consumers with unwanted phone calls, has worked to stop companies from illegally obtaining their customers' biometric information (e.g., facial scans and fingerprints), and obtained recovery for numerous victims of data breaches.

Mr. Barney is recognized by the New York Legal Aid Society for his outstanding pro bono work representing indigent individuals in matters concerning prisoners' rights, immigration, and special education.

Mr. Barney has published a number of articles concerning a variety of legal issues. These include authoring or co-authoring: *The FBI vs. Apple: What Does the Law Actually Say?,* Inc. Magazine (February 2016); *Can Lawyers Be Compelled to Produce Data They Compile? An Emerging Front in the Trenches of e-Discovery Battles*, Bloomberg BNA (May 2015); *Legal Landscape for Cybersecurity Risk is Changing as Federal Government and SEC Take Action*, Inside Counsel Magazine (May 2015); *Tellabs v. Makor, One Year Later*, Securities Law 360 (July 2008); *Not as Bad as We Thought: The Legacy of Geier v. American Honda Motor Co.in Product Liability Actions,* 70 Brooklyn L. Rev. 949 (Spring 2005). Mr. Barney serves as an adjunct professor at Brooklyn College in New York, teaching Education Law in its graduate studies program, and separately has presented continuing legal education instruction regarding the Foreign Corrupt Practices Act.



## Elizabeth Brehm
*Partner*



Elizabeth Brehm graduated from Boston University with a Bachelor of Science and earned her master's degree from Long Island University at C.W. Post. She attended Hofstra Law School and obtained a Juris Doctorate, graduating magna cum laude, in 2008.

After law school, Ms. Brehm spent a year at Winston & Strawn LLP where she focused on products liability litigation. For nine years prior to joining Siri & Glimstad, Ms. Brehm worked for a New York law firm where she focused on antitrust class action lawsuits, health care fraud, and qui tam and whistleblower litigations.

Ms. Brehm has been an attorney at Siri & Glimstad for over two years and has handled numerous complex litigation matters, including class action matters.

## Walker Moller
*Partner*



Before law school, Walker Moller worked and volunteered for three years in 15 countries throughout Southeast Asia, Oceania, and Africa. While at Mississippi College School of Law, Walker clerked at the Mississippi Supreme Court and was on the Law Review. He graduated summa cum laude in 2014 and earned the highest grade in eight courses. After graduation, Walker clerked for a federal judge at the United States District Court, Western District of Louisiana, where he gained exposure to a large volume of employment discrimination matters, products liability cases, and constitutional litigation.

Walker then worked for the U.S. Army Corps of Engineers from 2015 to 2021, where his practice focused on federal contracts and civil litigation in various administrative courts. Immediately before joining Siri & Glimstad, Walker achieved full dismissal of a lawsuit against the Corps of Engineers that implicated $68M worth of federal contracts.

## Lisa Considine
*Partner*



Lisa R. Considine is counsel at Siri & Glimstad LLP and has broad litigation experience, having successfully litigated various class action cases involving violations of State and Federal consumer protection laws, including representing consumers against many of the world's largest companies.



Ms. Considine graduated from Rutgers College with a Bachelor of Arts and attended Seton Hall University School of Law and obtained her J.D., with Honors, in 2004.

Prior to joining Siri & Glimstad, Ms. Considine was a founding member of her own practice that focused exclusively on consumer class actions and individual matters against major auto rental companies, banks, mortgage lenders, auto finance companies, payday lenders and other consumer finance companies in litigation involving the Consumer Fraud Act, Electronic Fund Transfer Act, Truth in Lending Act, Real Estate Settlement Procedures Act, Fair Credit Reporting Act, Fair and Accurate Credit Transaction Act, Truth-in-Consumer Contract, Warranty and Notice Act, predatory lending, loan origination and servicing, banking operations and consumer fraud claims.

Ms. Considine serves on the Board of Directors of the Consumer League of New Jersey and is also Co-Chair of the New Jersey State Bar Association's Class Actions Special Committee. Ms. Considine also serves at the pleasure of the New Jersey Supreme Court on the District IIB Ethics Committee and is President of the Worrall F. Mountain Inn of Court. Ms. Considine is a member of the National Association of Consumer Advocates, the Complex Litigation e-Discovery Form (CLEF), and the New Jersey State Bar Association's Consumer Protection Committee.


## David DiSabato
*Partner*

David J. DiSabato is counsel at Siri & Glimstad LLP and focuses his practice on complex class actions and consumer protection law. With over two decades of class action experience, Mr. DiSabato has led successful class actions against many of the country's largest financial institutions, retailers, service providers and employers. In addition, Mr. DiSabato has extensive experience handling patients' rights class actions and civil rights claims.



Mr. DiSabato graduated from Tufts University and received his J.D. from Boston University School of Law. Named to the New Jersey Super Lawyers List in 2022 and 2023, Mr. DiSabato



is the New Jersey Chair of the National Association of Consumer Advocates and sits on NACA's Judicial Nominations Committee.  He also is a member of both the American Association for Justice and the New Jersey Association for Justice (Civil Rights Committee), and sits on the Board of Directors of the Consumer League of New Jersey, where he serves as the Director of Litigation.  Mr. DiSabato is also a member of the Class Actions Special Committee and the Consumer Protection Law Committee of the New Jersey State Bar Association, as well as the Complex Litigation e-Discovery Forum (CLEF).  He also serves as the Vice Chair of the Land Use Board of the Borough of Peapack and Gladstone.

In addition, Mr. DiSabato regularly lobbies in both Washington D.C. and Trenton, New Jersey on consumer issues such as predatory lending, manufactured housing and forced arbitration, and is a frequent speaker on Constitutional issues, class action practice and consumer rights.

Prior to joining Siri & Glimstad, Mr. DiSabato was a founding member of his own practice where he represented consumers, workers, tenants, patients and other individuals in complex class actions.

## Tyler J. Bean
*Attorney*

Tyler J. Bean graduated from the University of Oklahoma's Michael F. Price College of Business in 2015 and obtained a Juris Doctorate from the University of Oklahoma in 2019, where he served as editor for the Oil and Gas, Natural Resources, and Energy Law Review Journal. Mr. Bean also received numerous academic honors as a law student, including being named to the Faculty Honor Roll and Dean's List.



After graduating law school and serving as in-house counsel for a large, multi-billion-dollar retail organization, Mr. Bean turned his focus to complex civil litigation and consumer class actions, with a particular emphasis on data breach and privacy matters. He has years of experience as a data breach and privacy lawyer, having played a significant role as class counsel in successfully litigating numerous data breach and privacy class actions from inception through discovery and court approved settlements, recovering millions of dollars for hundreds of thousands of consumers, patients, students, and employees across the country who have been victims of negligent data security and privacy practices.

## Kyle McLean
*Attorney*



Kyle McLean obtained his J.D. in 2019 from the University of California, Hastings College of the Law, with an emphasis in Civil Litigation and Alternative Dispute Resolution. He was selected to participate in the Hastings Appellate Program, where he was one of only two students chosen to represent a pro bono client before the Ninth Circuit Court of Appeals and deliver oral and written argument before the Court. He received his B.A. in History and Economics from California Polytechnic University, Pomona in 2015. Prior to joining Siri & Glimstad, Mr. McLean defended a wide variety of complex civil matters.



Mr. McLean presently represents individuals in complex class action privacy litigations, including claims for illegally spamming consumers with unwanted telephone advertisements, unlawful requests for employees' genetic information (e.g., family medical history), and numerous victims of data breaches.

## Oren Faircloth
*Attorney*

Oren Faircloth graduated from McGill University in 2009 with a Bachelor of Arts degree in Political Science. Before attending law school, he served in the armed forces from 2010 to 2011. Mr. Faircloth graduated from Quinnipiac University School of Law, magna cum laude, in 2016.



Prior to joining Siri & Glimstad, Mr. Faircloth worked for a boutique law firm where he spearheaded ERISA class action lawsuits against Fortune 500 companies, including: Huntington Ingalls, Rockwell Automation, Raytheon, UPS, U.S. Bancorp, Delta Air Lines, and Sprint. Mr. Faircloth was involved in the prosecution of numerous successful class actions in which over $100 million dollars have been recovered for tens of thousands of employees around the country. In 2022, Mr. Faircloth was recognized by Super Lawyers magazine as a Rising Star in the field of class action.

Mr. Faircloth focuses his practice on class actions and representing individuals in complex litigations. He presently represents individuals who have been denied reimbursement for work-related expenses from their employers, denied sufficient lactation accommodations in the workplace, and denied actuarially equivalent pension benefits. Mr. Faircloth has also represented several individuals on a pro bono basis, negotiating favorable settlements for violations of their constitutional rights.

## Wendy Cox
*Attorney*





Prior to joining Siri & Glimstad, Ms. Cox served for 21 years in the United States Army as an Army Nurse Corps officer and as an Army Judge Advocate. As a nurse corps officer, Ms. Cox worked in several clinical settings to include a pediatric unit, a specialty surgical unit, and an orthopedic surgical unit. During her last year as an Army Nurse Corps officer, she taught Army medics in basic life saving skills before being selected by the Army to attend law school. After graduating law school in 2005, Ms. Cox prosecuted soldiers, advised on operational law issues, taught Constitutional Law at West Point, and advised senior leaders on a variety of legal issues. Following her retirement from the United States Army in 2018, she went on to continue serving soldiers as an attorney for the Office of Soldiers' Counsel.

Wendy Cox graduated cum laude from the State University at Buffalo Law School in New York and summa cum laude from Norwich University with a Bachelor of Science in Nursing. She went on to get her Master of Laws (L.L.M.) degree in Military Law in 2008.

## Catherine Cline
*Attorney*



Catherine Cline has extensive experience in a wide range of civil law, including constitutional, administrative, employment, and election law. Prior to joining Siri & Glimstad, Ms. Cline served as a judicial law clerk for judges in the U.S. District Court for the Middle District of Pennsylvania, the Commonwealth Court of Pennsylvania, and the Supreme Court of Pennsylvania.

Ms. Cline attended law school on a full tuition scholarship, during which time she served as the Editor-in-Chief of the law review and as intern for a U.S. District Court Judge in the Middle District of Florida. Before attending law school, Ms. Cline received her Bachelor of Arts in Economics with a Minor in Business and the Liberal Arts from Penn State University and worked in the Tax Credit Division of the Pennsylvania Department of Community and Economic Development.

## Dana Smith
*Attorney*

Siri | Glimstad

www.sirillp.com



Dana Smith is a seasoned litigator. Prior to joining Siri & Glimstad, Ms. Smith focused most of her legal career on personal injury litigation, including representing individuals harmed due to corporate negligence. Ms. Smith is also experienced in various domestic areas of practice, including divorce, high-conflict custody disputes, and child welfare law.



Ms. Smith graduated cum laude from the North Carolina Central University School of Law. Additionally, she received her Bachelor of Arts in Romance Languages from the University of North Carolina at Chapel Hill.

## Sonal Jain
*Attorney*

Sonal Jain has experience in complex commercial litigations as well as class actions. Ms. Jain graduated from the New York University School of Law with an LLM in International Business Regulation, Litigation and Arbitration in 2020 where she gained experience with international dispute resolution. She received her first degree in law (B.A. LL.B.) from ILS Law College, Pune, a prime legal education institution in India. Prior to joining Siri & Glimstad, Ms. Jain held various internships with top-tier law firms in India where she specialized in complex dispute resolution ranging from consumer and corporate litigation to domestic arbitrations.



## Jack Spitz
*Attorney*

Jack R. Spitz is a graduate of Rutgers School of Law where he was a member of the Rutgers Law Record Journal and interned with the Essex County Public Defender's Office. Following law school, he served as Law Clerk for two judges at the Middlesex County Superior Court in New Brunswick, New Jersey. Subsequently, Mr. Spitz defended a wide variety of personal injury and property damage matters, as well as represented Plaintiffs in employment litigation matters. Prior to law school, Mr. Spitz graduated from Clemson University in South Carolina.



## Siri | Glimstad

www.sirillp.com



## Gabrielle Williams
*Attorney*

Ms. Williams obtained her J.D. from the University of Maryland Francis King Carey School of Law. During her time in law school, she represented clients in state court through the Justice for Victims of Crime Clinical Law Program. She also served as an Associate Editor on the Journal of Healthcare Law and Policy, Executive Board Member of the Black Law Students Association, and Class Representative for the Student Bar Association. Prior to joining Siri and Glimstad, Ms. Williams served as a Judicial Law Clerk on the Appellate Court of Maryland.



## Neil Williams
*Attorney*

With a robust background in data breach litigation, Mr. Williams is a seasoned legal professional dedicated to protecting the interests of clients in the digital age. Leveraging his extensive experience in cybersecurity law and privacy regulations, he has successfully represented numerous individuals in complex data breach cases. Mr. Williams meticulously navigates the intricate legal landscape surrounding data breaches, providing strategic counsel and vigorous advocacy to achieve favorable outcomes for his clients.



During law school, Mr. Williams was awarded CALI Awards on two occasions for the top grade in his class. He also worked alongside several South Carolina Pro Bono Services to ensure that competent legal representation was reaching the most at need populations in the area.



# Notable Class Actions Handled
# By Siri & Glimstad LLP

**Buchanan v. Sirius XM Radio, Inc.**
Case No. 3:17-cv-00728 (N.D. Tex.)
Appointed co-lead class counsel in a case alleging violations of the TCPA, which resulted in a settlement of $25,000,000, plus free satellite radio service, to a class of 14.4 million members.

**Thomas v. Dun & Bradstreet Credibility Corp**.
Case No. 15-cv-3194 (S.D. Cal.)
Appointed co-lead class counsel in a case alleging violations of the TCPA which resulted in a settlement of $10,500,000.

**Gatto v. Sentry Services, Inc., et al.**
Case No. 13 CIV 05721 (S.D. N.Y.)
Appointed co-lead class counsel in a case involving ERISA claims relating to an ESOP which resulted in a settlement of $11,138,938.

**Kindle v. Dejana**
Case No. 14-cv-06784 (E.D. N.Y.)
Appointed co-lead class for plaintiffs in an ERISA matter filed as a class action involving breaches of fiduciary duty related to the management and termination of an ESOP, which settled after the beginning of trial for $1,080,000 for the class.

**Herff Jones Data Breach Litigation**
Case No. 1:21-cv-01329 (S.D. Ind.)
Obtained preliminary approval of a class settlement that includes a settlement fund of $4,350,000 and, separate from the settlement fund, requires the defendant to pay for data security.

**California Pizza Kitchen Data Breach Litigation**
Case No. 8:21-cv-01928 (C.D. Cal.)
Appointed co-lead class counsel for plaintiffs in a data breach class action where the district court granted final approval to a settlement that provided $2.1 millions in value to over 100,000 class members, subject to current appeal.

**Carter, et al. v. Vivendi Ticketing US LLC d/b/a See Tickets**
Case No. 8:22-cv-01981 (C.D. Cal.)
Final approval granted, appointing firm as settlement class counsel, in a data breach class action settlement involving 437,310 class members and a $3,000,000 non-reversionary settlement fund.



**Armstrong et al. v. Gas South, LLC**
Case No. 22106661 (Ga. Sup. Ct., Cobb Cty.)
Obtained final approval of a class settlement involving roughly 40,000 class members and valued at over $9 million.

**Medina v. Albertsons Companies, Inc.**
Case No. 1:23-cv-00480 (D. Del.)
Obtained final approval of a class settlement involving 33,000 class members and a $750,000 non-reversionary settlement fund.

**In re Sovos Compliance Data Security Incident Litigation**
Case No. 1:23-cv-12100-AK (D. Mass.)
Obtained preliminary approval of a class settlement that includes a non-reversionary settlement fund of $3,534,128.50 involving 490,000 and, separate from the settlement fund, requires the defendant to pay for data security improvements.